UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff-Appellee<br><br>v.<br><br>DAVID ZINNEL,<br><br>        Claimant-Appellee,<br><br>v.<br><br>STEVEN ZINNEL,<br><br>        Defendant-Appellant. | No. 22-16128<br><br>D.C. No. 2:21-mc-00098-TLN-AC<br>Eastern District of California,<br>Sacramento |

MOTION FOR SUBSTITUTION OR OTHER APPROPRIATE RELIEF OF
JENNIFER ZINNEL [Fed. R. App. P. 43(a)(1)]

K. Greg Peterson, Esq. (SBN: 118287)
K. GREG PETERSON, a Professional
Law Corporation
455 Capitol Mall, Suite 325
Sacramento, California 95814
Telephone:    (916) 443-3010
Facsimile:    (916) 492-2680
Email:   greg@kgregpeterson.com

Attorney for JENNIFER ZINNEL,
Personal Representative of Appellee,
DAVID ZINNEL, Trustee of The Castana
Trust and Residuary Beneficiary

In accordance with this Court's Order filed on April 10, 2023, and Fed. Rules. App. Proc., rule 43(a)(1), 28 U.S.C., JENNIFER ZINNEL makes the following motion for substitution or other appropriate relief and submits the following.

1.    Notice of Death.

On or about October 14, 2022, and after Steven Zinnel filed an appeal in the above-entitled matter was filed, DAVID ZINNEL, a third-party claimant and interested party to the lower court proceedings, was tragically killed in a motorcycle accident. Jennifer Zinnel was David Zinnel's wife at the time of his death.

2.    Nature of David Zinnel's Interest in the Underlying Proceedings.

David Zinnel was never a party to the underlying criminal proceeding [Criminal Case No. 2:11-cr-00234-TLN]. Moving party does not believe the Trustee of the Castana Trust nor the personal representative of David Zinnel's probate estate has any interest in an appeal of the final judgment in Steven Zinnel's criminal case.

The nature of David Zinnel's interest in the underlying garnishment proceedings [D.C. Case No.: 2:21-mc-00098-TLN-AC] is as follows. The subject of the garnishment proceeding was a certain IRA investment account (*0163) in the amount of $1,329,976.29 held by TD Ameritrade that the United States sought to garnish in order to satisfy certain unpaid restitution Steven Zinnel was ordered to pay as part of his original criminal conviction, in the total amount of $3,315,723.40.

The original owner of the IRA account, ARDITH FERRIS, who was the mother of both Steven and David Zinnel, died on September 21, 2016. David Zinnel filed a third-party claim in the USA's garnishment proceeding.[1] David Zinnel claimed and Steven Zinnel later admitted that the beneficiary designation on the IRA account naming Steven Zinnel as the primary beneficiary on the death of the account holder had been completed by Steven Zinnel, but it was disputed as to whether or not that act was ever authorized by Ardith Ferris. David Zinnel claimed that it was unauthorized, and that the TD Ameritrade account proceeds should be determined to be an asset of the Castana Trust, a trust established by Ardith Ferris in 2009. Steven Zinnel claimed Ardith Ferris had authorized him to complete the IRA account application on her behalf. The USA claimed the IRA account belonged to Steven Zinnel and thus was fully subject to garnishment.

On June 3, 2022, in connection with a settlement conference held in the garnishment action before Hon. Kendall J. Newman, Chief Magistrate Judge, the USA, Steven Zinnel and David Zinnel reached a binding settlement.[2] The basic terms of the settlement provide, among other things, that David Zinnel will withdraw his Third-Party Claim, that the USA will garnish and levy upon the TD Ameritrade

---

[1] Third-Party Claim of David Zinnel, dated May 3, 2021, D.C. Case No.: 2:21-mc-00098-TLN-AC ("**Case No. 00098**"), a true and correct copy of which is attached hereto as **Exhibit 1**.

[2] Transcript of Proceedings, Settlement Conference, June 3, 2022, Case No. 00098, a true and correct copy of which is attached hereto as **Exhibit 2**.

IRA account (*0163) but only in the amount of $1,163,056 and in full satisfaction of all unpaid restitution owed by Steven Zinnel, and as between Steven Zinnel and David Zinnel it is agreed that the any remaining amounts held by TD Ameritrade in IRA account (*0163) are deemed to be an asset of the Castana Trust and following satisfaction of the USA's claim are to released by TD Ameritrade to David Zinnel in his capacity as successor trustee of that trust. David Zinnel immediately thereafter released his Third Party Claim and TD Ameritrade was ordered by the District Court to pay the USA the sum of $1,162,047 per the settlement, but the remaining funds were ordered to remain held by TD Ameritrade "pending further order of the Court."[3]

On July 6, 2022, David Zinnel filed a Motion to Enforce Settlement[4] but Steven Zinnel filed his appeal in this matter on July 26, 2022, and the District Court has not taken any further action on David Zinnel's motion.

3. <u>Proceedings to Legally Establish Michael Brumbaugh's Status As David Zinnel's Personal Representative</u>.

David Zinnel is survived by his wife, Jennifer Zinnel, and two minor children. Following the death of her husband, Jennifer Zinnel initiated legal proceedings that

---

[3] Order Adopting Findings and Recommendations for Final Order of Garnishment, dated July 18, 2022, Case No. 00098, a true and correct copy of which is attached hereto as **Exhibit 3**.

[4] Memorandum of Points and Authorities in Support of Motion to Enforce Settlement Agreement and for Money and Sanctions, dated July 6, 2022, Case No. 00098, a true and correct copy of which is attached hereto as **Exhibit 4**.

are now pending in the Sacramento Superior Court, Probate Division, to have that court issue orders establishing MICHAEL BRUMBAUGH as both the successor trustee of the Castana Trust, and as the Special Administrator of the intestate probate estate of David Zinnel. Michael Brumbaugh is a California licensed professional fiduciary. Through her Petition for Letters of Administration Jennifer Zinnel seeks to have Michael Brumbaugh appointed Special Administrator of David Zinnel's intestate probate estate. This matter is set to be heard on *August 15, 2023*, at 9:00 AM in Department 129 of the same court.[5] Jennifer Zinnel's Petition to Appoint Successor Trustee seeks to have Michael Brumbaugh appointed to serve as the successor trustee of the Castana Trust, and is set to be heard on *August 30, 2023,* at 9:00 AM in Department 129 of the Sacramento Probate Court.[6] Steven Zinnel has stipulated to the appointment of Michael Brumbaugh as successor trustee of the Castana Trust.[7]

/ / /

---

[5] Petition for Letters of Administration, Authorization to Administer Under the Independent Administration of Estates Act, dated March 23, 2023, Sacramento Superior Court Case No. 34-2023-00336772, a true and correct copy of which is attached hereto as **Exhibit 5**.

[6] Petition to Appoint Successor Trustee of The Castana Trust Dated March 4, 2009, dated March 29, 2003, Sacramento Superior Court Case No. 34-2016-00200990, a true and correct copy of which is attached hereto as **Exhibit 6**.

[7] Stipulation Re: Appointment of Successor Trustee of The Castana Trust Dated March 4, 2009, dated March 18, 2023, Sacramento Superior Court Case No. 34-2016-00200990, a true and correct copy of which is attached hereto as **Exhibit 7**.

4.     Nature of David Zinnel's Interest in the Pending Appeal.

Moving party's understanding of Steven Zinnel's appeal is that it relates primarily to the underlying judgment in the criminal case in which Steven Zinnel takes issue not only with the USA's restitution judgment and criminal penalties assessed against him, but also the offset he claims he should have been entitled to as a result of various seizures/forfeitures of his property that occurred and, he claims, should have operated as a credit against any amount he nevertheless owed in connection with his criminal case.

To the extent that Steven Zinnel's appeal relates to the garnishment case, Jennifer Zinnel contends his appeal is moot for several reasons. First, Steven Zinnel has entered into a voluntary and binding settlement with the USA and David Zinnel which settlement essentially forms the basis of the Order from which Steven Zinnel now appeals. Second, Steven Zinnel never requested a stay of execution nor did he file a bond, and the USA has since proceeded to not only levy upon and collect the monies voluntarily agreed to be paid from the IRA account by Steven Zinnel in the settlement, but it is moving party's understanding that those monies have also since been distributed to the third-party victims identified in the original restitution judgement. The remaining funds which are believed to be in the approximate amount of ~$300,000.00, Steven Zinnel has agreed as part of the settlement to turn over to David Zinnel as trustee of the Castana Trust, but those funds remain in the possession

6

of TD Ameritrade subject to further court order. The only matters Steven Zinnel has given any indication of his intention to appeal relate to "jurisdiction and venue"[8] apparently relating to the USA's original garnishment action. The moving party take no position on those issues except to the extent that moving party contends they cannot be unwound by Steven Zinnel after the fact given Steven Zinnel's knowing and voluntary settlement with the United States of American and David Zinnel.

    5.    <u>Relief Requested by Jennifer Zinnel</u>.

Moving party Jennifer Zinnel has every reason to believe that by August 30, 2023, Michael Brumbaugh will be appointed successor trustee of the Castana Trust and as the personal representative of David Zinnel in connection with the probate of his personal estate. Jennifer Zinnel requests that to the extent this Court believes the personal representative of David Zinnel in either capacity has any stake in the pending appeal filed by Steven Zinnel (1) that any briefing schedule be delayed for a reasonable period of time after the August 30, 2023, hearing referenced above in the Castana Trust matter, (2) that to the extent Michael Brumbaugh is appointed by the Sacramento Probate Court as the personal representative of David Zinnel (in either or both capacities) that he shall assume the position of David Zinnel in regards to this appeal, and (3) that to the extent the Sacramento Probate Court Proceedings

---

[8] Settlement Transcript, 17:3-4. Exhibit 2.

do not result in the appointment of Michael Brumbaugh as the personal representative of David Zinnel (in either or both capacities) that by not later than September 15, 2023, Jennifer Zinnel shall file a status report with this Court concerning the Sacramento Probate Court proceedings concerning their status, rulings made, further necessary hearings (if any) and anticipated outcomes.

Dated: May 1, 2023                              Respectfully submitted,

K. GREG PETERSON, a Professional
Law Corporation

/s/ K. Greg Peterson
By:_____
K. Greg Peterson, Esq., Attorney
for JENNIFER ZINNEL, Personal
Representative of Appellee DAVID
ZINNEL, Trustee of The Castana Trust and
Residuary Beneficiary

CERTIFICATE OF SERVICE

I certify that I served on the person(s) listed below, either by mail, email or hand delivery a copy of the within MOTION FOR SUBSTITUTION OR OTHER APPROPRIATE RELIEF OF JENNIFER ZINNEL.

Lynn Trinka Ernce
United States Attorneys Office
Eastern District of California
501 I Street, Suite 10-100
Sacramento, CA 95814

Lynn.trinka.ernce@usdoj.gov

Steven Zinnel
11 Verdin Lane
Aliso Viejo, CA 92656

firsthalfsteve@gmail.com

Christopher.stecher@kyl.com

Christopher A. Stecher, Esq.
Keesal, Young & Logan
450 Pacific Avenue
San Francisco, CA 94111

Dated: May 8, 2023

/s/ Karen Traugh
_____
Karen Traugh

1  K. Greg Peterson, Esq. (SBN: 118287)
   K. GREG PETERSON, A PROFESSIONAL LAW CORPORATION
2  455 Capitol Mall, Suite 325
3  Sacramento, California 95814
   Telephone:   (916) 443-3010
4  Facsimile:   (916) 492-2680
   Email:        greg@kgregpeterson.com
5
6  Attorney for Third-Party Claimant DAVID ZINNEL

7              IN THE UNITED STATES DISTRICT COURT
8              EASTERN DISTRICT OF CALIFORNIA
9

10  UNITED STATES OF AMERICA            )   Case No.: 2:21-mc-00098-WBS-AC
                                        )
11          Plaintiff,                  )
                                        )   THIRD-PARTY CLAIM OF DAVID
12  v.                                  )   ZINNEL [Cal. Code Civ. Proc. §§
                                        )   710.110, 720.130, 720.230]
13                                      )
14  STEVEN ZINNEL                       )   Criminal Case No.: 2-11-cf-00234-TLN
                                        )
15          Defendant and Judgment      )
            Debtor.                     )
16                                      )
                                        )
17  ─────────────────────────────      )
                                        )
18  TD AMERITRADE CLEARING, INC.,       )
    (and its Successors and Assigns),   )
19                                      )
            Garnishee.                  )
20                                      )

21
22      I, DAVID ZINNEL, declare as follows:
23          1.    I am not a party to the above-captioned action, but I have an interest in the
24  personal property that is the subject of the garnishment proceedings commenced by
25  Judgment Creditor, UNITED STATES OF AMERICA, in this matter.
26          2.    I am represented by legal counsel, K Greg Peterson Esq., and can be
27  reached through his office as indicated in the caption of this document.
28          3.    I have an interest in the following described property:

                                   -1-
                   THIRD-PARTY CLAIM OF DAVID ZINNEL
              [Cal. Code Civ. Proc. §§ 710.110, 720.130, 720.230]



K. GREG PETERSON
A PROFESSIONAL LAW CORPORATION

**EXHIBIT 1**

1        a.     TD AMERITRADE Account ending in *0613 (the "Account")

2  consisting of securities and/or funds in the amount of one half of the Account value

3  of $1,329,976.29 (as of February 2021).

4      4.    I have an ownership interest in the above-described property by virtue of

5  the following facts:

6        a.     The TD Ameritrade Account Agreement for Account *0613 (attached

7  as **Exhibit A**) dated August 12, 2005, designating Steve Zinnel as the Primary

8  Beneficiary in the event of the death of the Account Owner (Ardith L. Ferris) was

9  not signed by Ardith Ferris but instead appears to have been forged by Steven

10  Zinnel;

11       b.    Ardith Ferris is my mother and I recognize her signature.  The

12  signature on Page 3 of the Account Agreement for Account *0613 is not her

13  signature;

14       c.     I have attached as **Exhibit B** multiple other exemplars of the

15  signatures of Ardith Ferris, and they are clearly dissimilar to that of the signature

16  appearing on the Account Agreement for Account *0613;

17       d.    I am also familiar with the handwriting of my brother, Steve Zinnel,

18  and the handwriting and signature on Page 3 of the TD Ameritrade Account

19  Agreement is that of my brother, Steve Zinnel;

20       e.     The TD Ameritrade Account *0613 appears to have been set up by

21  Steve Zinnel. The contact information for the Account refers to Steve Zinnel's

22  telephone number, email address and street/employer addresses for all

23  communications concerning the Account with TD Ameritrade.

24       f.     On March 4, 2009, Ardith Ferris created a trust and a will (copies of

25  the Castana Trust and her Will are included with the documents attached as

26  Exhibit B). Under her trust (Sec. 5.4(a)) and her will (Sec. 3.1) Ardith Ferris

27  indicated her intent to leave the residue of her estate to be split between her two

28  sons, myself and Steve Zinnel; and

-2-



**THIRD-PARTY CLAIM OF DAVID ZINNEL**
**[Cal. Code Civ. Proc. §§ 710.110, 720.130, 720.230]**

1       g.    Although the TD Ameritrade Account was apparently set up by Steve

2   Zinnel on or about August 12, 2005, according to an email dated November 30,

3   2009 (attached as **Exhibit C**), it appears it was not until then that Steve Zinnel

4   informed Ardith Ferris for the first time of the Account number, username and

5   password for Account *0613.

6       5.    The estimated market value of my above-described property interest is:

7   $664,988.15 (based on a February 2021 Account value).

8       6.    Attached are true and correct copies of the documents I have referenced

9   herein that support my claim.

10       I declare under penalty of perjury under the laws of the United States of America

11   and the State of California that the foregoing is true and correct, and that this THIRD-

12   PARTY CLAIM was signed at Sacramento, California, this ___ day of April, 2021.

13

14

15   
                    DAVID ZINNEL

16

17

18

19

20

21

22

23

24

25

26

27

28



K.GREG PETERSON
A PROFESSIONAL LAW CORPORATION

-3-
**THIRD-PARTY CLAIM OF DAVID ZINNEL**
**[Cal. Code Civ. Proc. §§ 710.110, 720.130, 720.230]**

# EXHIBIT A

B (Page 3 of 8)
Open Your Account 2:21-mc-00098-TLN-AC    Document 11-1    Filed 05/03/21    Page 2 of 45    Page 1 of 3
Case 2:11-cr-00234-TLN    Document 670-1    Filed 03/24/21    Page 4 of 22

5
0
2
5

BEGIN FORM - Terms and Conditions Effective: Tue Jul 19 09:32:49 CDT 2005



**AMERITRADE**

|  | For Internal Use Only |
|---|---|
| Account Number: | 0613 |
| Type: | Rollover (Non-Contributory) IRA |
| Registration: | Cash |
| Referrer: | direct |
| Ad Code: | web |

**Mailing Address**
Standard Delivery:
Overnight Delivery:
Fax:

PO Box 2760, Omaha, NE 68103-2760
1005 N. Ameritrade Place, Bellevue, NE 68005
816-243-3769

**New Account Information**
Type:
Registration:
Receive Corp. Communications:
Email Address:
Account Statement:
Trade Confirmation:
Funding:
Contribution Tax Year:
Type of Deposit:

Rollover (Non-Contributory) IRA
Cash
Yes
szinnel@
Monthly Electronic
Electronic
Transfer

Direct Transfer

DOCUMENT    11609805

**Primary Account Owner**
Name:
Street Address:

ARDITH L FERRIS

GOLD RIVER, CA 95670
UNITED STATES OF AMERICA

Marital Status:
Home Phone:
Social Security Number:
Date of Birth:
Mother's Maiden Name:
Citizenship:
Employment Status:
Employer:
Employer Address:

Divorced
(916) 402-
7239
1945
Dethlefs
US Citizen
Self Employed
Ardith Ferris

Gold River, CA 95670
UNITED STATES OF AMERICA

Corporate Affiliation:
NASD Affiliation:

No
No

**Financial Questionnaire**
Income:
Networth:
Liquid Networth:
**Primary Beneficiary**
Name:
Percentage:
Social Security Number:
Date of Birth:
Relationship:
Mailing Address:

$
$
$

Steve Zinnel
100%
073
963
Son

GOLD RIVER, CA 95670
UNITED STATES OF AMERICA

Open Your Account

## PRIMARY BENEFICIARY SPOUSAL AGREEMENT

If the participant's spouse is not designated as the sole primary beneficiary, the spouse must sign the following consent. "I hereby consent to the above beneficiary designation and, if a resident of a community property or marital property state, I give the account holder any interest in the funds deposited in this account."

Date: _____   x _____

Signature of Spouse

Account Number: ▮▮▮▮0613

## IRA CASH AGREEMENT

I am establishing an Individual Retirement Account Plan under the Ameritrade Clearing, Division of Ameritrade, Inc. (Custodian) Prototype Individual Retirement Plan and Custodial Agreement, which is incorporated by reference. I understand that the account is subject to rules and regulations of the United States Internal Revenue Service, and that the funding of the account may have significant tax and financial consequences. I accept responsibility for the information contained in this application and affirm such information is true and correct. I agree to indemnify and hold harmless Ameritrade and Ameritrade Clearing, Division of Ameritrade, Inc. from any and all liability and claims for damages resulting from any action taken pursuant to this Agreement

I designate Ameritrade Clearing, Division of Ameritrade, Inc. as Custodian and make the following declaration:

I understand that the Custodian will invest and reinvest my account assets only with written direction from me or from a properly appointed Investment Manager. This document constitutes my authority to execute all trades for my IRA. Confirmations and statements will verify such instructions. All securities, dividends and proceeds will be held at Ameritrade Clearing, Division of Ameritrade, Inc. unless otherwise instructed.

**For Individual (Contributory) IRAs:** I direct Ameritrade Clearing, Division of Ameritrade, Inc. to maintain my deductible, rollover, and direct rollover contribution(s) in a contributory Individual Retirement Account.

**For Rollover (Non-Contributory) IRAs:** I understand that if I make any contributions to this account, which holds funds rolled over from an employee benefit plan, or otherwise commingle rollover amounts, I cannot roll the funds over to another employee benefit plan at a later date. Upon my contribution to this account, I understand my account will be automatically changed to an Individual Contributory IRA.

Under penalties of perjury, I certify (1) that the Social Security Number shown on this form is my correct taxpayer identification number and (2) that I am not subject to backup withholding and (3) I am a U.S. person (including a resident alien); provided, however, if I am a non-resident alien as disclosed in this application, I do not certify that I am a U.S. person. If I have been notified by the IRS that I am subject to backup withholding as a result of dividend or interest underreporting, I must cross out (2) in this certification.

If I am a non-resident alien, I declare that I have "earned income" within the United States. "Earned income" does not include, among other things, money earned from property, interest or dividend income, money received from a pension or annuity, money received as deferred compensation or as a deferred incentive award.

I understand this Designation of Beneficiary will be effective on the date received by the Custodian. This Designation of Beneficiary will remain in full force and effect until such time as the Custodian is in actual receipt of a written revocation or change of beneficiary signed by me and in such form and substance as the Custodian deems necessary. If I change the beneficiaries, all previously designated beneficiaries no longer have the right to receive benefits under this Agreement.

This application provides for the deposit of funds or securities into the account. I understand that the funding of this account is subject to the rules and regulations of the United States Internal Revenue Service and that my failure to abide by such rules and regulations may have important and possibly irrevocable tax and financial consequences. I attest that the funding information provided is true and correct, authorize Ameritrade Clearing, Division of Ameritrade, Inc. to deposit the funds or securities according to the funding instructions, and assume full responsibility for this funding transaction. I release and agree to indemnify and hold harmless Ameritrade Clearing, Division of Ameritrade, Inc. from any and all liability and claims for

damages for any adverse consequences that may result.

I have received and read the Terms and Conditions that will govern my account. I understand that the Terms and Conditions contain pre-dispute arbitration clauses. I agree to be bound by these terms and conditions as amended from time to time. I hereby request an IRA account to be opened in the name set forth below.

**This Brokerage Account Agreement contains pre-dispute arbitration clauses in the Terms and Conditions section.**

I understand that investments purchased through Ameritrade are not insured by the FDIC (Federal Deposit Insurance Corporation), are not obligations of or guaranteed by any financial institution and are subject to investment risk and loss that may exceed the principal invested.

Important information about procedures for opening a new account:
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

What this means for you: When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also utilize a third-party information provider for verification purposes and/or ask for a copy of your driver's license or other identifying documents.

---

Account Owner(s) must sign.

8/12/05
Date

X _____
ARDITH L FERRIS
Account Number: [redacted]0613

---

For Introducing Broker use only

_____
R.R. - Gen. Prin.

_____
Date

---

Accepted and Approved by *Ameritrade Clearing*
By: _____

Date: _____

---

Account Number: [redacted]0613

END FORM - Terms and Conditions Effective: Tue Jul 19 09:32:49 CDT 2005

EXHIBIT B

RECORDING REQUESTED BY
Ardith Ferris

AND WHEN RECORDED MAIL TO

Name                Ardith Ferris
Street              2428 Glenfaire Dr.
City/State          Rancho Cordova, CA 95670

## GRANT DEED

THIS UNDERSIGNED GRANTOR DECLARES
City of Rancho Cordova

Conveyance Tax is $0.00
Parcel No. 058-0206-011

Documentary Transfer Tax is $0.00
Transfer under Revenue & Taxation Section 11930
Grantee is a Trust for the benefit of the Grantor

_____
Declarant or Agent Determining Tax

I, ARDITH FERRIS, formerly known as Ardith Zinnel, an unmarried woman, grants to ARDITH LOUISE FERRIS, AS TRUSTEE OF THE CASTANA TRUST initially established March 4, 2009, that certain real property situated in the County of Sacramento, State of California, described as follows:

2428 Glenfaire Dr., Rancho Cordova, CA 95670 (APN 058-0206-011), as more particularly described as Lot 510, as shown on the "Plat of Glenfaire Unit No. 5", recorded in the office of the County recorder of Sacramento county, on July 18, 1963 in Book 72 of Maps, Map No. 8.

Executed on March 4, 2009, at Gold River, California.

_____
Ardith Ferris

**MAIL TAX DOCUMENTS TO PARTY DIRECTED ABOVE IN TOP LEFT CORNER OF INSTRUMENT**

**California All-Purpose Acknowledgment**

State of California    )

                        ) *SS*

County of Calaveras )

On March 4, 2009, before me, Jayleyne Goltz, a notary public in and for the State of California, personally appeared Ardith Ferris, personally who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public

> J. JAYLEYNE GOLTZ
> COMM. # 1831925
> NOTARY PUBLIC • CALIFORNIA
> CALAVERAS COUNTY
> COMM. EXPIRES JAN. 18, 2011

**COUNTY OF SACRAMENTO, OFFICE OF THE ASSESSOR**
**KENNETH D. STIEGER, ASSESSOR**
**KATHLEEN KELLEHER, ASSISTANT ASSESSOR**
**PROPERTY TRANSFER DIVISION**
  1 Power Inn Rd., Suite 3000, Sacramento, CA, 95826-4329
  www.assessor.saccounty.net

PRELIMINARY CHANGE OF OWNERSHIP REPORT

FOR ASSISTANCE
PHONE: (916)875-0750 9 a.m. – 4 p.m.

| ASSESSOR'S USE ONLY. |
|---|
| Sal. Pr. _____ |
| Rel. Cd. _____ |
| Sal. Ty. _____ |
| C.E. _____ |
| Cond. _____ |

[To be completed by transferee (buyer) prior to transfer of subject property in accordance with Section 480.3 of the Revenue and Taxation Code.]
A Preliminary Change of Ownership Report must be filed with each conveyance in the County Recorder's Office for the county where the property is located; this particular form must be used in all 58 counties of California.

**THIS REPORT IS NOT A PUBLIC DOCUMENT**

Seller/Transferor ARDITH FERRIS                                Mail Tax Information to:

Buyer/Transferee ARDITH LOUISE FERRIS As TRUSTEE OF       Name 2428 GLENFAIRD Dr
                                                           CRETANA
Assessor's Parcel Number (s)  058-0206-011               TRUS Address RANCHO CORDOVA, CA

Property Address or Location  2428 GLENFAIRD DR, RANCHO CORDOVA, CA    95670

NOTICE: A lien for property taxes applies to your property on January 1 of each year for the taxes owing in the following fiscal year, July 1 through June 30. One-half of these taxes is due November 1, and one-half is due February 1. The first installment becomes delinquent on December 10, and the second installment becomes delinquent on April 10. One tax bill is mailed before November 1 to the owner of record. YOU MAY BE RESPONSIBLE FOR THE CURRENT OR UPCOMING PROPERTY TAXES EVEN IF YOU DO NOT RECEIVE THE TAX BILL.
*The property which you acquired may be subject to a supplemental assessment in an amount to be determined by the Sacramento County Assessor. For further information on your supplemental roll obligation, please call the Sacramento County Assessor at 875-0700.*

**PART I: TRANSFER INFORMATION** *(please answer all questions)*

YES NO
☐ ☑ A. Is this transfer solely between husband and wife (Addition of a spouse, death of a spouse, divorce settlement, etc.)?
☐ ☑ B. Is this transaction only a correction of the name(s) of the person(s) holding title to the property (For example, a name change upon marriage?) Please explain _____
☐ ☑ C. Is this document recorded to create, terminate, or reconvey a lender's interest in the property?
☐ ☑ D. Is this transaction recorded only as a requirement for financing purposes or to create, terminate, or reconvey a security interest (e.g. cosigner)? Please explain _____
  ☐ ☐ E. Is this document recorded to substitute a trustee of a trust, mortgage, or other similar document?
☐ ☑ F. Did this transfer result in the creation of a joint tenancy in which the seller (transferor) remains as one of the joint tenants?
☐ ☑ G. Does this transfer return property to the person who created the joint tenancy (original transferor)?
☐ ☑ H. Is this transfer of property:
☐ ☑   1. to a revocable trust that may be revoked by the transferor and is for the benefit of the ☐ transferor ☐ transferor's spouse?
☐ ☑   2. to a trust that may be revoked by the Creator/Grantor who is also a joint tenant, and which names the other joint tenant(s) as beneficiaries when the Creator/Grantor dies?
☐ ☑   3. to an irrevocable trust for the benefit of the ☐ Creator/Grantor and/or ☐ Grantor's spouse?
☐ ☑   4. to an irrevocable trust from which the property reverts to the Creator/Grantor within 12 years?
☐ ☑ I. If this property is subject to a lease, is the remaining lease term 35 years or more including written options?
☐ ☑ J. IS THIS TRANSFER BETWEEN ☐ PARENT(S) AND CHILD(REN) OR ☐ FROM GRANDPARENT(S) TO GRANDCHILD(REN)?
☐ ☑ K. Is this transaction to replace a principal residence by a person 55 years of age or older?
      Within the same County? ☐ Yes   ☐ No
☐ ☑ L. Is this transaction to replace a principal residence by a person who is severely disabled as defined by Revenue and Taxation Code Section 69.5? Within the same County? ☐ Yes   ☐ No
☐ ☑ M. Is this transfer solely between domestic partners currently registered with the California Secretary of State?
*If you checked yes to J, K, or L, you may qualify for a property tax reassessment exclusion, which may result in lower taxes on your property. IF YOU DO NOT FILE A CLAIM, YOUR PROPERTY WILL BE REASSESSED.*
Please provide any other information that would help the Assessor to understand the nature of the transfer.
If the conveying document constitutes an exclusion from a change in ownership as defined in section 62 of the Revenue and Taxation Code for any reason other than those listed above, set forth the specific exclusions claimed: _____

*Please answer all questions in each section. If a question does not apply, indicate with "N/A." Sign and date at bottom of second page.*

**PART II: OTHER TRANSFER INFORMATION**

A. Date of transfer if other than recording date _____
B. Type of transfer. Please check appropriate box.
   ☐ Purchase   ☐ Foreclosure   ☐ Gift   ☐ Trade or Exchange   ☐ Merger, Stock, or Partnership Acquisition
   ☐ Contract of Sale – Date of Contract _____
   ☐ Inheritance –Date of Death _____   ☐ Other: Please explain: _____
   ☐ Creation of Lease   ☐ Assignment of Lease   ☐ Termination of Lease   ☐ Sale/Leaseback
   ☐ Date Lease Began _____
   ☐ Original term in years (including written options) _____
   ☐ Remaining in years (including written options) _____
   Monthly Payment _____   Remaining Term _____
C. Was only a partial interest in the property transferred? ☐ Yes   ☐ No
   If yes, indicate the percentage transferred _____ %.

BOE-502-A (Front) Rev.10 (8-07)

Please write Assessor's Parcel Number(s): 058-0206-011

Please answer, to the best of your knowledge, all applicable questions, then sign and date. If a question does not apply, indicate with "N/A".

## PART III:   PURCHASE PRICE AND TERMS OF SALE

A.   CASH DOWN PAYMENT OR value of trade or exchange (excluding closing costs)   Amount $_____

FIRST DEED OF TRUST @ ____% interest for ____ years. Pymts./Mo=$_____ (Prin & int only)   Amount $_____
- ☐ FHA (__ Discount Points)   ☐ Fixed Rate   ☐ New Loan
- ☐ Conventional   ☐ Variable Rate   ☐ Assumed Existing Loan Balance
- ☐ VA (__ Discount Points)   ☐ All Inclusive D.T. ($_____ Wrapped)   ☐ Bank or Savings & Loan
- ☐ Cal-Vet   ☐ Loan Carried by Seller   ☐ Finance Company
- Balloon Payment   ☐ Yes   ☐ No   Due Date_____   Amount $_____

C.   SECOND DEED OF TRUST @ ____% interest for ____ years. Pymts./Mo=$_____ (Prin & int only)   Amount $_____
- ☐ Bank or Savings & Loan   ☐ Fixed Rate   ☐ New Loan
- ☐ Loan Carried by Seller   ☐ Variable Rate   ☐ Assumed Existing Loan Balance
- Balloon Payment   ☐ Yes   ☐ No   Due Date_____   Amount $_____

D.   OTHER FINANCING: Is other financing involved not covered in (b) or (c) above?   ☐ Yes   ☐ No   Amount $_____
- Type ____ @ ____% interest for ____ years. Pymts./Mo=$_____ (Prin & int only)
- ☐ Bank or Savings & Loan   ☐ Fixed Rate   ☐ New Loan
- ☐ Loan Carried by Seller   ☐ Variable Rate   ☐ Assumed Existing Loan Balance
- Balloon Payment   ☐ Yes   ☐ No   Due Date_____   Amount $_____

E.   Was an Improvement Bond assumed by the Buyer?   ☐ Yes   ☐ No   Outstanding Balance:   Amount $_____

F.   TOTAL PURCHASE PRICE (or acquisition price, if traded or exchanged, include real estate commission if paid.)

| | | TOTAL ITEMS A THROUGH E | $ |
|---|---|---|---|

G.   PROPERTY PURCHASED   ☐ Through a Broker   ☐ Direct from Seller   ☐ From a family member   ☐ Other (please explain)
- If purchased through a broker, provide broker's name and phone number:_____
- Please explain any special terms, seller concessions, or financing and any other information that would help the Assessor understand the purchase price and terms of sale._____

## PART IV:   PROPERTY INFORMATION

A.   TYPE OF PROPERTY TRANSFERRED:
- ☑ Single-Family Residence   ☐ Agricultural   ☐ Timeshare
- ☐ Multiple-family residence (no. of units:____)   ☐ Co-op/Own-your own   ☐ Manufactured Home
- ☐ Commercial/Industrial   ☐ Condominium   ☐ Unimproved lot
- ☐ Other (Description: _____

B.   IS THIS PROPERTY INTENDED AS YOUR PRINCIPAL RESIDENCE?   ☑ YES   ☐ NO
- If yes, enter date of occupancy ALREADY OCCUPIED or intended occupancy ___/___/20___
  (month) (day) (year)   (month) (day) (year)

C.   IS PERSONAL/BUSINESS PROPERTY INCLUDED IN PURCHASE PRICE (i.e. furniture, farm equipment, machinery, etc.)
- (other than a manufactured home subject to local property tax)?   ☐ Yes   ☐ No
- If yes, enter the value of the personal/business property included in the purchase price $_____ (Must attach itemized list.)

D.   IS A MANUFACTURED HOME INCLUDED IN PURCHASE PRICE?   ☐ Yes   ☐ No
- If yes, how much of the purchase price is allocated to the manufactured home? $_____
- Is the manufactured home subject to local property tax?   ☐ Yes   ☐ No   What is the decal number?_____

E.   DOES THE PROPERTY PRODUCE INCOME?   ☐ Yes   ☐ No , Is the income from:
- ☐ Lease/Rent   ☐ Contract   ☐ Mineral Rights   ☐ Other (please explain):_____

F.   WHAT WAS THE CONDITION OF THE PROPERTY AT THE TIME OF SALE?
- ☐ Good   ☐ Average   ☐ Fair   ☐ Poor
- Please explain the physical condition of the property and provide any other information (such as restrictions, etc.) that would assist the Assessor in determining the value of the property.

## CERTIFICATION

OWNERSHIP TYPE (✔)
- Proprietorship ☑
- Partnership ☐
- Corporation ☐
- Other ☐

*I certify that the foregoing is true, correct and complete to the best of my knowledge and belief. This declaration is binding on each and every co-owner and/or partner.*

NAME OF NEW OWNER / CORPORATE OFFICER: ARDITH LOUISE FERRIS AS TRUSTEE OF CASTANA HOUSE
TITLE: TRUSTEE   DATE: 3/4/09

SIGNATURE OF NEW OWNER / CORPORATE OFFICER: [signature]   DATE: 3/4/09   FEDERAL EMPLOYER ID NUMBER:

NAME OF ENTITY (typed or printed): ARDITH FERRIS

ADDRESS (typed or printed): 2420 GLENFIELD DR   RANCHO CORDOVA, CA 95670
TELEPHONE NUMBER (8 a.m. - 5 p.m.): 916-335-0424   E-MAIL ADDRESS (optional):

(Note: The Assessor may contact you for further information.)
If a document evidencing a change of ownership is presented to the recorder for recordation without the concurrent filing of a preliminary change of ownership report, the recorder may charge an additional recording fee of twenty dollars ($20).

BOE-502-A (BACK) Rev. 10 (8-07)

# CASTANA TRUST

## ARTICLE ONE

### CREATION OF TRUST

1.1. <u>Parties.</u> This trust agreement is made by Ardith Louise Ferris (the "settlor" and "trustee") of Sacramento County, California. The settlor hereby transfers and assigns to the trustee certain property (the "trust estate"), in trust, to be held, administered, and distributed as provided in this instrument.

1.2. <u>Names of Trusts</u>. The trusts created by this instrument shall be known collectively as the <u>Castana Trust,</u> and each separate trust created under this instrument shall be referred to by adding the name or designation of that separate trust as it appears in the appropriate section of this instrument.

1.3. <u>Effective Date.</u> This agreement shall be effective immediately on execution by all the parties.

1.4. <u>Marital Status.</u> The settlor is unmarried.

1.5. <u>Identification of Living Children.</u> The settlor has two living children:

| Name | Date of Birth |
|------|---------------|
| Steve K. Zinnel | 12/31/63 |
| David P. Zinnel | 2/18/70 |

1.6. <u>No Deceased Children.</u> The settlor has no deceased children.

1.7. <u>Definitions of Child, Children, and Issue.</u> As used in this instrument, the terms "child" and "children" refer to all persons referred to in California *Probate Code* § 26, as in effect at the time of execution of this instrument, and the term "issue" refers to all persons referred to in California *Probate Code* § 50, as in effect at the time of execution of this instrument.

### ARTICLE TWO

### TRUST ESTATE

2.1. <u>Definition of Trust Estate.</u> All property subject to this instrument from time to time is referred to as the "trust estate" and shall be held, administered, and distributed as provided in this instrument. The trustee shall hold, administer, and distribute the property described in any schedules of property (which are attached hereto and made a part of this trust instrument), any other property that may be hereafter subject to this trust, and the income and proceeds attributable to all such property, in accordance with the provisions of this instrument.

2.2. <u>Additions to Trust.</u> From time to time, the trustee may accept additions to this trust from any source. All such additions shall become part of the trust estate and shall be held, administered, and distributed in accordance with the terms of this instrument. That additional property shall become part of the trust estate on written acceptance of it by the trustee. Any additions to the trust shall be made by designating in writing the property to be added. However, the titling of any account, deed, or similar asset in the name of the trustee, as trustee of this trust, or any alternate or successor trustee acting under this instrument, shall be deemed to be a transfer to this trust. Any designation by a third

party, whether by will, deed, account title designation, or similar transfer, shall also be a transfer to the trust estate.

## ARTICLE THREE
## RIGHTS AND POWERS OF SETTLOR

3.1. Power of Revocation and Amendment. Any trust created by this instrument may be amended, revoked, or terminated by the settlor, in whole or in part, at any time during her lifetime. After the settlor's death, any trust created by this instrument shall be irrevocable and not subject to amendment.

3.2. Method of Revocation or Amendment. Any amendment, revocation, or termination of any trust created by this instrument shall be made by written instrument signed by the settlor and delivered to the trustee. An exercise of the power of amendment substantially affecting the duties, rights, and liabilities of the trustee shall be effective only if agreed to by the trustee in writing.

3.3. Delivery of Property After Revocation. After any revocation or termination, the trustee shall promptly deliver the designated property to the settlor.

3.4. Trustee's Retention of Assets on Revocation. In the event of any revocation of all or part of the trust, the trustee shall be entitled to retain sufficient assets to reasonably secure the payment of liabilities the trustee has lawfully incurred in administering the trust and any fees that have been earned by the trustee, until such time as those liabilities have been discharged and fees paid, unless the settlor indemnifies the trustee against loss or expense.

3.5. Settlor's Power to Borrow From Trust Estate. Notwithstanding any other provision in this instrument, during the settlor's lifetime, the settlor may borrow from the income or principal of the trust estate, with or without security, such amounts on such terms as the

CASTANA TRUST

05 03 2017 1200_1046426_1366

settlor specifies in a signed writing filed with the trustee.

3.6. No Exercise of Rights and Powers of Settlor By Others. The rights and powers of the settlor as provided in this instrument, including any power to amend, revoke, or terminate any trust created by this instrument, are personal to the settlor and may not be exercised by any other person or entity.

## ARTICLE FOUR

## DISTRIBUTIONS DURING SETTLOR'S LIFE

4.1. Payment of Income During Settlor's Life. So long as the settlor is living, the trustee shall pay to or apply for the benefit of the settlor all of the net income of the trust, in monthly or other convenient installments (but not less often than annually) as the settlor and the trustee may agree on from time to time.

4.2. Distributions of Principal During Settlor's Lifetime. From time to time during the settlor's lifetime, the trustee shall distribute to or apply for the benefit of the settlor as much of the principal of the trust as the trustee, in the trustee's discretion, deems proper for the settlor's comfort, welfare, and happiness. In exercising discretion, the trustee shall give the consideration that the trustee deems proper to all other income and resources then readily available to the settlor for use for these purposes and that are then known to the trustee. All decisions of the trustee regarding payments under this section, if any, are within the trustee's discretion and shall be final and incontestable by anyone.

4.3. Distributions of Principal at Request of Settlor. During the settlor's lifetime, the trustee shall distribute to the settlor such amounts from the principal of the trust, up to the whole thereof, as the settlor may from time to time request of the trustee in writing.

4.4. Requests in Behalf of the Settlor Unable to Do So Personally. If, at any time, the settlor is unable personally to make a request of the trustee to withdraw principal of the trust, the

Page 4

CASTANA TRUST

settlor's right to make the request may be exercised for or in her behalf by an attorney in fact who, at the time of the exercise, is duly appointed and acting for the settlor under a valid and enforceable durable power of attorney executed by the settlor under the Uniform Durable Power of Attorney Act, or any successor statute. If there is no such attorney in fact, then the trustee shall have the discretion to make any principal distribution to or for the benefit of the settlor that the settlor could have requested personally if she were able to do so. In making any principal distribution under this section (whether pursuant to a request by an attorney in fact or not), the trustee shall pay as much of the principal as the trustee, in the trustee's discretion, deems necessary for the settlor's health, education, support, and maintenance. The trustee shall have discretion to determine when the settlor is unable personally to request principal payments from the trustee for purposes of this section.

4.5. <u>Trustee's Power to Make Gifts at Direction of Settlor.</u> During the settlor's lifetime, the trustee shall distribute such sums of trust principal to such person or persons who are the natural objects of the settlor's bounty, as the settlor may direct in writing. In the event that the settlor is unable to direct the trustee in writing under this section due to incapacity, such direction may be made on the settlor's behalf by a duly authorized attorney in fact acting under a valid durable power of attorney executed by the settlor under the Uniform Durable Power of Attorney Act (or successor statute); provided, however, that the amount of such gifts pursuant to the direction of an attorney in fact to any one person in any one year shall not exceed the annual amount excluded from gift tax under Section 2503(b) of the Internal Revenue Code (or successor statute).

## ARTICLE FIVE

## DISTRIBUTIONS AFTER SETTLOR'S DEATH

5.1 <u>Payment of Death Taxes, Debts, and Expenses on Statement From Personal Representative.</u>
After the settlor's death, on receipt by the trustee of a written statement from the personal
representative of the settlor's estate requesting that the trustee pay death taxes, debts, and
expenses (as defined in Article Eight), with respect to any property in the settlor's estate,
the trustee shall pay, either directly or to the personal representative, any amounts
requested by the personal representative for those purposes, in the manner specified below.
The trustee may rely on the personal representative's statement and shall not be liable for
any act or omission by the personal representative in protesting or failing to protest the
legality, propriety, or amount of the death taxes, debts, or expenses. If there is no
personal representative, the trustee shall make the payments directly. Payments of debts
and expenses shall be made by the trustee from the trust estate. All death taxes payable
by reason of the settlor's death shall also be paid by the trustee from the trust estate.

5.2. <u>Trustee's Power to Defer Division or Distribution.</u> Whenever the trustee is directed to
divide any part of the trust estate or distribute trust assets on the death of the settlor,
the trustee may, in the trustee's discretion, defer actual division or distribution for such
reasonable period of time as is needed to effectively identify, take possession of, value,
divide, and distribute the assets of the trust. During this time of deferral, the trustee
may manage the trust assets through a single administrative trust. The ability of the
trustee to delay division or distribution shall not affect the vesting of interests, which
shall be as of the date of death.

5.3. Distribution of specific trust assets. On the settlor's death, the trustee is directed to distrib the following specific assets:

See Exhibit 1 attached hereto.

Exhibit 1 attached hereto, which may be amended from time to time at the Settlor's sole discretion. To be effective and operative, the attached "Exhibit" 1 must be signed and dated by Ardith Ferris as the Settlor and Trustee. In the event of a conflict, the most recently signed and dated "Exhibit 1" is operative.

5.4 Disposition of Remaining Trust Estate. On the settlor's death, the remaining trust estate shall be disposed of:

(a) If any children of the settlor survive her, the trustee shall divide the trust property into as many shares of equal market value as are necessary to create one share for each of the settlor's children who survive her and one share for each of the settlor's children who predecease her but who leave issue surviving her, as limited by subparagraph (f) below.

(b) Each share created for a deceased child shall be distributed to the then-living issue of that deceased child in the manner provided in California *Probate Code* § 246. If an individual issue of a deceased child has reached the age of 25 years at the death of the settlor, the trustee shall distribute that issue's share outright to that issue; if an individual issue of a deceased child has not reached the age of 25 years at the death of the settlor, the trustee shall continue to hold, administer, and distribute that issue's share in a separate trust for that issue according to the terms set forth in Article Six applicable to the Separate Share Trust for Issue.

(c) If none of the children of the settlor survive her, but the settlor leaves issue surviving, the trustee shall distribute the trust property to those issue, who are to take that property in the manner provided in California *Probate Code* § 246. If an individual issue has reached the age of 25 years at the death of the settlor, the trustee shall distribute that issue's share outright to that issue; if an individual issue has not reached the age of 25 years at the death of the settlor, the trustee shall continue to hold, administer, and distribute that issue's share in a separate trust for that issue according to the terms set forth in Article Six applicable to the Separate Share Trust for Issue.

(d) If none of the issue of the settlor survive her, the trust property shall be distributed outright to the settlor's heirs.

(e) Any business owned by settlor, regardless of the form of the business (i.e., sole proprietorship, Corporations, Limited Liability Companies) shall be immediately distributed free of trust to Settlor's heirs.

## ARTICLE SIX
## DISPOSITIVE PROVISIONS OF TRUST CREATED
## AFTER SETTLOR'S DEATH

6.1. Spendthrift Clause: The interests of the beneficiaries under this instrument are not transferable by voluntary or involuntary assignment or by operation of law, and shall be free from the claims of creditors and from attachment, execution, bankruptcy, and other

Page 8

CASTANA TRUST

legal process, to the maximum extent permitted by law. If any such transfer is made or attempted by or against any beneficiary, all further trust payments of income or principal or both to that beneficiary (and any right of that beneficiary to such payments) shall be suspended for a period of time or indefinitely (but in no case for longer than the term of the trust) as the trustee determines. In lieu of payments to that beneficiary, the trustee may apply so much of the trust income or principal or both to which the beneficiary would otherwise be entitled as the trustee deems necessary for the beneficiary's education and support. All trust income (to which the beneficiary would otherwise be entitled) not so applied shall in the discretion of the trustee be accumulated and added to trust at such time or times as the trustee deems proper.

**ARTICLE SEVEN**

**TRUSTEE**

7.1. <u>Settlor's Power to Designate Successor Trustees.</u> Initially, Settlor designates Steve A. Zinnel, Settlor's son as her Successor Trustee.  However, at any time, the settlor may designate any suitable person or entity to act as a successor trustee if the trustee dies, becomes incapacitated, or is otherwise unable or unwilling to continue to act as trustee or co-trustee. Any designation under this section shall be made by a signed writing delivered to the person or entity designated as successor trustee or co-trustee. If more than one designation is made under this section, only the most recent designation shall be valid.

7.2. <u>Not Used.</u>

7.3. <u>Successor Trustees.</u> If the office of trustee becomes vacant by reason of death, incapacity, or any other reason, and no successor trustee or co-trustees have been designated under any

other provision of this trust instrument, a new trustee or co-trustee shall be appointed by
the court.

7.4. Definition of Trustee. Reference in this instrument to "the trustee" shall be deemed a
reference to whoever is serving as trustee or co-trustees, and shall include alternate
or successor trustees or co-trustees, unless the context requires otherwise.

7.5. Removal and Replacement of Trustee by Settlor. The settlor shall have the power, at any
time and for any reason, with or without cause, to remove any trustee acting under this
instrument, and notwithstanding any other provision of this instrument, designate another
trustee to replace the removed trustee. Removal shall be effected by giving a written notice
of removal to the trustee to be removed and to the designated successor. The removal
shall become effective on the delivery to the settlor of a written acceptance of the trust by
the successor trustee, and the settlor shall promptly notify the trustee being removed of the
receipt of that acceptance.

7.6. Waiver of Bond. No bond or undertaking shall be required of any individual who
serves as a trustee under this instrument.

7.7. Procedure for Resignation. Any trustee may resign at any time, without giving a reason
for the resignation, by giving written notice, at least ninety (90) days before the time the
resignation is to take effect, to the settlor, if living, to any other trustee then acting, to any
persons authorized to designate a successor trustee, to all trust beneficiaries known to the
trustee (or, in the case of a minor beneficiary, to the parent or guardian of that beneficiary)
and to the successor trustee. A resignation shall be effective on written acceptance of
the trust by the successor trustee.

7.8. General Powers of Trustee. To carry out the purposes of the trusts created under this
instrument, and subject to any limitations stated elsewhere in this instrument, the trustee

**CASTANA TRUST**

shall have all of the following powers, in addition to all of the powers now or hereafter conferred on trustees by law:

(a)   With or without court authorization, sell (for cash or on deferred payments, and with or without security), convey, exchange, partition, and divide trust property; grant options for the sale or exchange of trust property for any purpose, whether the contract is to be performed or the option is to be exercised within or beyond the term of the trust; and lease trust property for any purpose, for terms within or extending beyond the expiration of the trust, regardless of whether the leased property is commercial or residential and regardless of the number of units leased.

(b)   Engage in any transactions with the personal representative of the estate of the settlor that are in the best interest of any trusts created in this instrument.

(c)   Manage, control, improve, and maintain all real and personal trust property.

(d)   Subdivide or develop land; make or obtain the vacation of plats and adjust boundaries, or adjust differences in valuation on exchange or partition by giving or receiving consideration; and dedicate land or easements to public use with or without consideration.

(e)   Make ordinary or extraordinary repairs or alterations in buildings or other trust property, demolish any improvements, raze existing party walls or buildings, and erect new party walls or buildings, as the trustee deems advisable.

(f)   Employ and discharge agents and employees, including but not limited to attorneys, accountants, investment and other advisers, custodians of assets, property managers, real estate agents and brokers, and appraisers, to advise and assist the trustee in the management of any trusts created under this trust instrument, and compensate them from the trust property.

(g)   With respect to securities held in trust, exercise all the rights, powers, and privileges of an owner, including, but not limited to, the power to vote, give proxies, and pay assessments and other sums deemed by the trustee necessary for the protection of the trust property; participate in voting trusts, pooling agreements, foreclosures, reorganizations, consolidations, mergers, and liquidations, and, in connection therewith, deposit securities with and transfer title to any protective or other committee under such terms as the trustee deems advisable; exercise or sell stock subscription or conversion rights; and accept and retain as investments of the trust any securities or other property received through the exercise of any of the foregoing powers.

(h)   Hold securities or other trust property in the trustee's own name or in the name of a nominee, with or without disclosure of the trust, or in unregistered form, so that title **may pass by delivery.**

(i)   Deposit securities in a securities depository that is either licensed or exempt from licensing.

(j)   Borrow money for any trust purpose from any person or entity, including one acting as trustee hereunder, on such terms and conditions as the trustee deems advisable, and . obligate the trust for repayment; encumber any trust property by mortgage, deed of trust, pledge, or otherwise, whether for terms within or extending beyond the term of the trust, as the trustee deems advisable, to secure repayment of any such loan; replace, renew, and extend any such loan or encumbrance; and pay loans or other obligations of the trust deemed advisable by the trustee.

(k)   Procure and carry, at the expense of the trust, insurance in such forms and in such

amounts as the trustee deems advisable to protect the trust property against damage or loss, and to protect the trustee against liability with respect to third persons.

(l)   Enforce any obligation owing to the trust, including any obligation secured by a deed of trust, mortgage, or pledge held as trust property, and purchase any property subject to a security instrument held as trust property at any sale under the instrument.

(m)   Extend the time for payment of any note or other obligation held as an asset of, and owing to, the trust, including accrued or future interest, and extend the time for repayment beyond the term of the trust.

(n)   Pay or contest any claim against the trust; release or prosecute any claim in favor of the trust; or, in lieu of payment, contest, release, or prosecution, adjust, compromise, or settle any such claim, in whole or in part, and with or without consideration.

(o)   At trust expense, prosecute or defend actions, claims, or proceedings of whatever kind for the protection of the trust property and of the trustee in the performance of the trustee's duties, and employ and compensate attorneys, advisers, and other agents as the trustee deems advisable.

7.9. Power to Retain Trust Property. The trustee shall have the power to retain property received into the trust at its inception or later added to the trust, as long as the trustee considers that retention in the best interests of the trust or in furtherance of the goals of the settlor in creating the trust, as determined from this trust instrument, but subject to the standards of the prudent investor rule as set forth in the California *Uniform Prudent Investor Act*, as amended from time to time.

---

7.10. Trustee's Power to Invest Property. Subject to the standards of the prudent investor rule as stated in the California Uniform Prudent Investor Act, as amended from time to time, the trustee shall have the power to invest and manage the trust assets as a prudent investor would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust.

7.11. Power Over Unproductive Property. The trustee shall have the power to retain or acquire unproductive or underproductive property.

7.12. Power to Operate Business. The trustee shall have the power to hold and operate any business or enterprise that is or becomes trust property, on such terms and for such a time as the trustee, in the trustee's discretion, deems advisable; to purchase, acquire, invest in, or otherwise participate in, any business or other enterprise on behalf of the trust; or to sell, dissolve, liquidate, or terminate any such business. The trustee shall also have the power to incorporate, reorganize, or otherwise change the form of a business or enterprise that is part of the trust, through merger or consolidation of two or more enterprises or otherwise, and to participate in that business or enterprise as a sole proprietor, as a general or limited partner, as a shareholder, or in any other capacity. Any operation, sale, purchase, acquisition, investment in, or dissolution or liquidation of a business interest, in good faith, shall be at the risk of the trust, and without liability on the part of the trustee for any resulting losses. The trustee shall also have the power to contribute capital or loan money to the business or enterprise on such terms and conditions as the trustee deems advisable.

7.13. Power to Operate Farm or Ranch. The trustee shall have the power to continue to hold, operate, sell, purchase, acquire, invest in, or liquidate any farming or ranch property, or any interest in farming or ranching property, whether organized as a sole proprietorship,

CASTANA TRUST

general or limited partnership, corporation, or otherwise, on such terms and for such time as the trustee, in the trustee's discretion, deems advisable. Any such operation, sale, purchase, acquisition, investment, or liquidation, in good faith, shall be at the risk of the trust and without liability on the part of the trustee for any resulting losses. The trustee shall have all powers necessary or appropriate to carry out the management of such farming and ranching property. The trustee shall also have the power to incorporate any farming or ranching property, or any interest therein, and to hold the stock as a trust asset; to borrow money for any purpose related to the operation, or the acquisition or disposition, of any such farming or ranching interests; and to employ agents in the management and operation of that property. The net profits and losses from the farming and ranching operations conducted by the trust shall be computed in accordance with recognized methods of accounting for comparable activities. The net profits from these activities shall become trust income. The net losses from these activities shall not reduce other trust income for the fiscal or calendar year during which they occur, but shall be carried into subsequent fiscal or calendar years and reduce the net profits of the business for those years.

7.14. <u>Power to Combine Trust Assets.</u> Each trust created under this instrument shall constitute a separate trust and be administered accordingly; however, the assets of all of the trusts may be combined for bookkeeping purposes and held for the trust beneficiaries without physical division into separate trusts until time of distribution.

7.15. <u>Early Termination of Trusts.</u> The trustee shall have the power, in the trustee's discretion, to terminate any trust created under this trust instrument whenever the fair market value of the trust falls below twenty-five thousand dollars ($25,000), or becomes so small in relation to the costs of administration as to make continuing

administration uneconomical. Continuing administration shall be uneconomical if the trustee determines that, with reference to the trust fee schedules then in effect for corporate fiduciaries in the area in which the trust is being administered, the trust would be subject to the minimum trust administration fees of those fiduciaries, regardless of the value of the trust. On termination, the trustee shall distribute the principal and any accrued or undistributed net income to the income beneficiaries in proportion to their shares of the income. If no fixed amount of income is payable to specific beneficiaries, the trustee shall distribute the principal and any accrued or undistributed net income in equal shares to those beneficiaries who would then be entitled to income payments from the trust.

7.16. <u>Division or Distribution in Cash or Kind.</u> In order to satisfy a pecuniary gift or to distribute or divide trust assets into shares or partial shares, the trustee may distribute or divide those assets in kind, or divide undivided interests in those assets, or sell all or any part of those assets and distribute or divide the property in cash, in kind, or partly in cash and partly in kind. Property distributed to satisfy a pecuniary gift under this instrument shall be valued at its fair market value at the time of distribution.

7.17. <u>Payments to Legally Incapacitated Persons.</u> If at any time any trust beneficiary is a minor, or it appears to the trustee that any trust beneficiary is incapacitated, incompetent, or for any other reason not able to receive payments or make intelligent or responsible use of the payments, then the trustee, in lieu of making direct payments to the trust beneficiary, may make payments to the beneficiary's conservator or guardian; to the beneficiary's custodian under the Uniform Gifts to Minors Act or Uniform Transfers to Minors Act of any state; to one or more suitable persons as the trustee deems proper, such as a relative of or a person residing with the beneficiary, to be used for the beneficiary's benefit; to any other person, firm, or agency for services rendered or to be rendered for

the beneficiary's assistance or benefit; or to accounts in the beneficiary's name with financial institutions. The receipt of payments by any of the foregoing shall constitute a sufficient acquittance of the trustee for all purposes.

7.18. <u>Trustee's Liability.</u> No trustee shall be liable to any interested party for acts or omissions of that trustee, except those resulting from that trustee's willful misconduct or gross negligence. This standard shall also apply regarding a trustee's liability for the acts or affected by that event.

7.19. <u>Written Notice to Trustee.</u> Until the trustee receives written notice of any death other event on which the right to payments from any trust may depend, the trustee shall incur no liability for disbursements made in good faith to persons whose interests may have been omissions of any co-trustee, predecessor trustee, or agent employed by the trustee.

7.20. <u>Duty to Account.</u> The trustee shall render accounts at least annually, at the termination of a trust, and on a change of trustees, to the persons and in the manner **required** by law.

### ARTICLE EIGHT

### CONCLUDING PROVISIONS

8.1. <u>Perpetuities Savings Clause.</u> Notwithstanding any other provision of this instrument, every trust created by this instrument shall terminate no later than twenty-one (21) years after the death of the last survivor of the Settlor's issue who are alive at the creation of the trust. For purposes of this perpetuities savings clause, a trust shall be deemed to have been created on the date the trust becomes irrevocable or the date of the death of the settlor, · whichever occurs first. If a trust is terminated under this section, the trustee shall

Page 17

CASTANA TRUST

distribute all of the principal and undistributed income of the trust to the income beneficiaries of the trust in the proportion in which they are entitled (or eligible, in the case of discretionary payments) to receive income immediately before the termination. If that proportion is not fixed by the terms of the trust, the trustee shall distribute all of the trust property to the persons then entitled or eligible to receive income from the trust outright in a manner that, in the trustee's opinion, will give effect to the intent of the settlor in creating the trust. The trustee's decision is to be final and incontestable by anyone.

8.2. Simultaneous Death. If any beneficiary under this instrument and the settlor die under circumstances in which the order of their deaths cannot be established by clear and convincing evidence, the settlor shall be deemed to have survived the beneficiary, and the provisions of this instrument shall be construed accordingly.

8.3. Survivorship Requirement. For the purposes of this instrument, a beneficiary shall be deemed not to have survived the settlor if that beneficiary dies within six months after the settlor's death.

8.4. No-Contest Clause. If any beneficiary under this instrument, singularly or in combination with any other person or persons, directly or indirectly contests this instrument, any amendment to this instrument, or the will of the settlor in whole or in part, or opposes, objects to, or seeks to invalidate any of the provisions of this instrument or the will of the settlor, or seeks to succeed to any part of the estate of the settlor other than in the manner specified in this instrument or in the will of the settlor, then the right of that person to take any interest given to him or her by this instrument or any amendment to this instrument shall be void, and any gift or other interest in the trust property to which the beneficiary would otherwise have been entitled shall pass as if he or she had predeceased the settlor without issue. Settlor specifically exempts petitions under

Page 18

CASTANA TRUST

California *Probate Code* §s 9860, 17200 or 17200.1 from the effect of this clause.

8.5. <u>Definitions of Death Taxes, Debts, and Expenses.</u> As used in this instrument, the following definitions apply:

(a)   The term "death taxes" shall mean all inheritance, estate, succession, and other similar taxes that are payable by any person on account of that person's interest in the estate of the settlor or by reason of the settlor's death, including penalties and interest, but excluding the following: (i) any additional tax that may be assessed under Internal Revenue Code Section 2032A; and (ii) any federal or state tax imposed on any generation-skipping transfer, as that term is defined in the federal tax laws, unless that generation-skipping transfer tax is payable directly out of the assets of a trust created by this instrument.

(b)   The term "debts and expenses" shall include the following: (i) all costs, expenses of litigation, counsel fees, or other charges that the trustee incurs in connection with the determination of the amount of the death taxes, interest, or penalties referred to in subsection (a) of this section; and (ii) legally enforceable debts, funeral expenses, expenses of last illness, and administration and property expenses.

8.6. <u>Definition of Incapacity.</u> As used in this instrument, "incapacity" or "incapacitated" means a person operating under a legal disability such as a duly established conservatorship, or a person who is unable to do either of the following:

(a)   Provide properly for that person's own needs for physical health, food, clothing, or shelter; or

(b)   Manage substantially that person's own financial resources, or resist fraud or undue

CASTANA TRUST

influence.

8.7. Definition of Education. As used in this instrument, the term "education" refers to the following:

(a)   Education at public or private elementary, junior high, middle, or high schools, including boarding schools;

(b)   Undergraduate, graduate, and postgraduate study in any field, whether or not of a professional character, in colleges, universities, or other institutions of higher learning;

(c)   Specialized formal or informal training in music, the stage, the handicrafts, or the arts, whether by private instruction or otherwise; and

(d)   Formal or informal vocational or technical training, whether through programs or institutions devoted solely to vocational or technical training, or otherwise.

8.8. Captions. The captions appearing in this instrument are for convenience of reference only, and shall be disregarded in determining the meaning and effect of the provisions of this instrument.

8.9. Severability Clause. If any provision of this instrument is invalid, that provision shall be disregarded, and the remainder of this instrument shall be construed as if the invalid provision had not been included.

8.10. California Law to Apply. All questions concerning the validity, interpretation, and administration of this instrument, including any trusts created under this instrument, shall be governed by the laws of the State of California, regardless of the domicile of any trustee or beneficiary.

8.11. Distribution to Issue. If a division of property is to be made under this instrument among the issue of an individual, who is referred to in this section as the Designated Ancestor,

that division shall be made in the manner set forth in California *Probate Code* § 246. Accordingly, that division shall be made at the generation of the Designated Ancestor's children, regardless of whether any of those children survive the Designated Ancestor. The property shall be divided into as many equal shares as there are children of the Designated Ancestor who survive the Designated Ancestor (if any) plus deceased children of the Designated Ancestor who leave issue who survive the Designated Ancestor. Each child of the Designated Ancestor who survives the Designated Ancestor shall receive one such equal share. The equal share of each deceased child of the Designated Ancestor who leaves issue who survive the Designated Ancestor shall in turn be divided among that deceased child's issue who survive the designated ancestor in the manner described in this section as if the deceased child were the Designated Ancestor as to that share.

8.12. Gifts to Heirs. For any gift to "heirs" of the settlor that is made in this instrument, those heirs shall be determined as if the settlor had died intestate at the time for distribution prescribed in this instrument, and the identity and shares of those heirs shall be determined according to the California laws of succession that concern separate property not acquired from a previously deceased spouse and that are in effect at the time the settlor is deemed to have died.


## ARTICLE NINE

### SIGNATURE AND EXECUTION

9.1. Execution. I certify that I have read the foregoing trust agreement and that it correctly states the terms and conditions under which the trust estate is to be held, administered, and

distributed. The settlor approves this trust agreement in all particulars. The trustee approves and accepts the trusts provided for in this trust agreement.

Executed on March 4, 2009 at Gold River, California.

SETTLOR

Ardith Louise Ferris, Settlor

TRUSTEE

Ardith Louise Ferris, Trustee

Page 22

CASTANA TRUST

05.03.2017 1200 1046426 1385

### California All-Purpose Acknowledgment

State of California    )

                ) *SS*

County of Calaveras )

On March 4, 2009, before me, Jayleyne Goltz, a notary public in and for the State of California, personally appeared Ardith Louise Ferris, personally who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public

J. JAYLEYNE GOLTZ
COMM. # 1831925
NOTARY PUBLIC - CALIFORNIA
CALAVERAS COUNTY
COMM. EXPIRES JAN. 18, 2013

## EXHIBIT 1

### DISTRIBUTION OF SPECIFIC TRUST ASSETS OF
### CASTANA TRUST

Pursuant to paragraph 5.3 of the Total Trust, initially established on March 4, 2009, on the settlor's death, the trustee is directed to distribute the following specific assets:

None at this time.

I certify that this "Exhibit 1", distributing specific assets, shall be effective immediately on execution by me and that any former "Exhibit 1" distributing specific assets are hereby expressly revoked.

Executed on March 4, 2009 at Gold River, California.

**SETTLOR**

Ardith Louise Ferris, Settlor

**TRUSTEE**

Ardith Louise Ferris, Trustee

---

# LAST WILL AND TESTAMENT OF

# ARDITH LOUISE FERRIS

I, ARDITH LOUISE FERRIS, formerly known as Ardith Louise Zinnel, residing in the County of Sacramento, State of California, hereby make, publish, and declare this to be my Last Will and Testament. I hereby expressly revoke any and all former Wills, Codicils, and Trusts that I have previously made.

## ARTICLE ONE

### INTRODUCTORY PROVISIONS

1.1    Marital Status. I am not currently married.

1.2    Identification of Living Children.    I have two living children, as follows:

| Names | Date of Birth |
|---|---|
| Steve K. Zinnel | 12/31/63 |
| David P. Zinnel | 2/18/70 |

1.3    No Deceased Children. I have no deceased children.

## ARTICLE TWO

### GIFT OF THE ENTIRE ESTATE

2.1.    Gift of Entire Estate. I give all of my property to the trustees of the Castana Trust, created under the trust agreement executed on the same date as, but immediately before, the execution of this will, by Ardith Louise Ferris, as Settlor. The trustee of that trust shall add the property disposed of under this will to the trust principal and hold, administer, and distribute the property in accordance with the provisions of that trust agreement, including any amendments of that trust agreement that have been made before or after execution of this will.

LAST WILL AND TESTAMENT OF ARDITH LOUISE FERRIS

## ARTICLE THREE

## RESIDUARY PROVISIONS

3.1. Disposition of Residue. If the Castana Trust has been revoked, terminated, or declared invalid for any reason, I give the residue of my estate to the executor of this will, as trustee, who shall hold, administer, and distribute the property under a testamentary trust, the terms of which shall be identical to the terms of the Castana Trust that are in effect on the date of execution of this will or such later date on which this will is republished.

## ARTICLE FOUR

## EXECUTOR

4.1.   Nomination of Executor. I nominate Steve K. Zinnel of 11966 Old Eureka Way, Gold River, California 95670, whose telephone number is (916) 402-2640, as executor of this will.

4.2.   Successor Executors. If Steve K. Zinnel is unable (by reason of death, incapacity, or any other reason) or unwilling to serve as executor, or if at any time the office of executor becomes vacant, by reason of death, incapacity, or any other reason, and no successor executor or coexecutors have been designated under any other provision of this will, then I nominate David P. Zinnel, my son, as successor executor. If David P. Zinnel is unwilling or unable to serve as successor executor, a new executor or coexecutors shall be appointed by the Court.

4.3. Waiver of Bond. No bond or undertaking shall be required of any executor nominated in this will.

LAST WILL AND TESTAMENT OF ARDITH LOUISE FERRIS

4.4. <u>General Powers of Executor.</u> The executor shall have full authority to administer my estate under the California *Independent Administration of Estates Act*. The executor shall have all powers now or hereafter conferred on executors by law, except as otherwise specifically provided in this will, including any powers enumerated in this will.

4.5. <u>Power to Invest.</u> The executor shall have the power to invest estate funds in any kind of real or personal property, as the executor deems advisable.

4.6. <u>Division or Distribution in Cash or in Kind.</u> In order to satisfy a pecuniary gift or to distribute or divide estate assets into shares or partial shares, the executor may distribute or divide those assets in kind, or divide undivided interests in those assets, or sell all or any part of those assets and distribute or divide the property in cash, in kind, or partly in cash and partly in kind. Property distributed to satisfy a pecuniary gift under this will shall be valued at its fair market value at the time of distribution. This section shall apply only to the extent that it does not conflict with the provisions of the Castana Trust.

4.7. <u>Power to Sell, Lease, and Grant Options to Purchase Property.</u> The executor shall have the power to sell, at either public or private sale and with or without notice, lease, and grant options to purchase any real or personal property belonging to my estate, on such terms and conditions as the executor determines to be in the best interest of my estate.

4.8. <u>Payments to Legally Incapacitated Persons.</u> If at any time any beneficiary under this will is a minor or it appears to the executor that any beneficiary is incapacitated,

LAST WILL AND TESTAMENT OF ARDITH LOUISE FERRIS

incompetent, or for any other reason not able to receive payments or make intelligent or responsible use of the payments, then the executor, in lieu of making direct payments to the beneficiary, may make payments to the beneficiary's conservator or guardian; to the beneficiary's custodian under the *Uniform Gifts to Minors Act* or *Uniform Transfers to Minors Act* of any state; to one or more suitable persons, as the executor deems proper, such as a relative or a person residing with the beneficiary, to be used for the benefit of the beneficiary; to any other person, firm, or agency for services rendered or to be rendered for the beneficiary's assistance or benefit; or to accounts in the beneficiary's name with financial institutions. The receipt of payments by any of the foregoing shall constitute a sufficient acquittance of the executor for all purposes.

### ARTICLE FIVE

### CONCLUDING PROVISIONS

5.1. Definition of Death Taxes. The term "death taxes," as used in this will, shall mean all inheritance, estate, succession, and other similar taxes that are payable by any person on account of that person's interest in my estate or by reason of my death, including penalties and interest, but excluding the following:

(a) Any additional tax that may be assessed under *Internal Revenue Code* § 2032A.

(b) Any federal or state tax imposed on a "generation-skipping transfer," as that term is defined in the federal tax laws, unless the applicable tax statutes provide that the generation-skipping transfer tax on that transfer is payable directly out of the assets of my gross estate.

5.2. Payment of Death Taxes. Pursuant to the trust agreement executed on the same

LAST WILL AND TESTAMENT OF ARDITH LOUISE FERRIS

date as, but immediately before, the execution of this will by Ardith Louise Ferris, as Settlor, all death taxes, whether or not attributable to property inventoried in my probate estate, shall be paid by the trustee from that trust. If that trust does not exist at the time of my death, or if the assets of that trust are insufficient to pay the death taxes in full, I direct the executor to pay any death taxes, whether or not attributable to property inventoried in my probate estate, that cannot be paid by the trustee, by prorating and apportioning those taxes among the persons interested in my estate, as provided in the *California Probate Code.*

5.3. <u>Simultaneous Death.</u> If any beneficiary under this will and I die simultaneously, or if it cannot be established by clear and convincing evidence whether that beneficiary or I died first, I shall be deemed to have survived that beneficiary, and this will shall **be construed accordingly.**

5.4. <u>Period of Survivorship.</u> For the purposes of this will, a beneficiary shall not be deemed to have survived me if that beneficiary dies within six months after my **death.**

5.5. <u>Intentional Omission of Children Born or Adopted After Execution of Will.</u> Except as otherwise provided in this will, I have intentionally failed to provide in this will for any children born to or adopted by me after the execution of this will.

5.6. <u>No-Contest Clause.</u> If any person, directly or indirectly, contests the validity of this will in whole or in part, or opposes, objects to, or seeks to invalidate any of its provisions, or the validity of any contract, agreement (including any Trust Agreement), declaration of trust, beneficiary designation, or other document executed by me (or for my benefit) that is a part of my integrated estate plan, or

seeks to succeed to any part of my estate otherwise than in the manner specified in this will, any gift or other interest given to that person under this will shall be revoked and shall be disposed of as if he or she had predeceased me without issue. I specifically exempt petitions under California *Probate Code* §§ 9860, 17200 or 17200.1 from the effect of this clause.

5.7. <u>Definition of Incapacity.</u> As used in this will, "incapacity" or "incapacitated" means a person operating under a legal disability such as a duly established conservatorship, or a person who is unable to do either of the following:

    (a)  Provide properly for that person's own needs for physical health, food, clothing, or shelter; or

    (b)  Manage substantially that person's own financial resources, or resist fraud or undue influence.

5.8. <u>Captions.</u> The captions appearing in this will are for convenience of reference only, and shall be disregarded in determining the meaning and effect of the provisions of this will.

5.9. <u>Severability Clause.</u> If any provision of this will is invalid, that provision shall be disregarded, and the remainder of this will shall be construed as if the invalid provision had not been included.

5.10. <u>California Law to Apply.</u> All questions concerning the validity and interpretation of this will, including any trusts created by this will, shall be governed by the laws of the State of California in effect at the time this will is executed.

LAST WILL AND TESTAMENT OF ARDITH LOUISE FERRIS

Executed on March 4, 2009, at Gold River, California.

Ardith Louise Ferris

On the date written above, we, the undersigned, each being present at the same time, witnessed the signing of this instrument by Ardith Louise Ferris. At that time, Ardith Louise Ferris appeared to us to be of sound mind and memory and, to the best of our knowledge, was not acting under fraud, duress, menace, or undue influence. Understanding this instrument, which consists of nine (9) pages, including the pages on which the signature of Ardith Louise Ferris and our signatures appear, to be the will of Ardith Louise Ferris, we subscribe our names as witnesses thereto.

We declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 9, 2009, at Gold River, California.

Jayleyne Goltz
Witness

6295 Thornicroft Dr.
Valley Springs, CA  95252
T. 209-607-7251

Executed on March 9, 2009, at Gold River, California.

Steve K. Zinnel
Witness

11966 Old Eureka Way
Gold River, CA  95670
T. 916-402-2640

Page 9

LAST WILL AND TESTAMENT OF ARDITH LOUISE FERRIS

EXHIBIT C

**Ardith Ferris**

**From:** Steve Zinnel [stevezinnel@gmail.com]
**Sent:** Monday, November 30, 2009 8:01 PM
**To:** a.ferris@comcast.net
**Subject:** Ameritrade Info

11/30/09

Mom,

Below is your TD Ameritrade IRA account number along with the address.

Love Steve

Ardith Ferris IRA
Account number 782830613

Web site : www.tdameritrade.com
User name: CASTANA1
Pswd: Iowa1156

**TD AMERITRADE**
PO Box 2760
Omaha, NE 68103-2760

*Pin*

*549988*

*Dep/Withdraw*
*Bank Setup*
*verify*

1



Member FINRA/SIPC

TD AMERITRADE CLEARING INC
PO BOX 2209
OMAHA, NE 68103-2209

ARDITH L FERRIS ROLLOVER IRA
TD AMERITRADE CLEARING INC CUSTODIAN
2428 GLENFAIRE DR
RANCHO CORDOVA, CA 95670-3948

| 2016  Form 1099-R | Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. |
|---|---|
| | OMB No. 1545-0119 |

Copy C: For Recipient's Records
This information is being furnished to the Internal Revenue Service.

Date: 01/23/2017                    Document ID: HWNA B44 FM1D
Account number: 782630613

RECIPIENT'S identification number:                    XXX-XX-7239
Recipient: ARDITH L FERRIS ROLLOVER IRA
TD AMERITRADE CLEARING INC CUSTODIAN
2428 GLENFAIRE DR
RANCHO CORDOVA, CA 95670-3948

PAYER's federal identification number:                    47-0533629
Customer Service: 800-669-3900
Payer: TD AMERITRADE CLEARING INC
PO BOX 2209
OMAHA, NE 68103-2209

FATCA filing requirement

| | | | | | |
|---|---|---|---|---|---|
| 1 | Gross distribution | $6,000.00 | 8 | Other amount | |
| 2a | Taxable amount | $6,000.00 | | Other amount percentage | % |
| 2b | Taxable amount not determined | (X) | 9a | Your percentage of total distribution | % |
| | Total distribution | ( ) | 9b | Total employee contributions | |
| 3 | Capital gain (included on line 2a) | | 10 | Amount allocable to IRR within 5 years | |
| 4 | Federal income tax withheld | | 11 | 1st year of desig. Roth contrib. | |
| 5 | Employee contributions/Designated Roth contributions or insurance premiums | | 12 | State tax withheld | |
| 6 | Net unrealized appreciation - employer's securities | | 13 | State | |
| | | | | Payer's state number | |
| | | | 14 | State distribution | |
| 7 | Distribution code(s) | 7 | 15 | Local tax withheld | |
| | IRA/SEP/SIMPLE | (X) | 16 | Name of locality | |
| | | | 17 | Local distribution | |

1

```
1                IN THE UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF CALIFORNIA
2

3      UNITED STATES,
               Plaintiff,
4                                    Sacramento, California
       vs.                           No. 2:21-mc-00098-TLN-AC
5                                    Friday, June 3, 2022
       ZINNEL,                       12:50 p.m.
6              Defendants.
       _____/
7

8

9                     TRANSCRIPT OF PROCEEDINGS
                        SETTLEMENT CONFERENCE
10     BEFORE THE HONORABLE KENDALL J. NEWMAN, CHIEF MAGISTRATE JUDGE
                  (Proceedings held via videoconference.)
11                          ---oOo---

12     APPEARANCES:

13       For the Government:         UNITED STATES ATTORNEY'S
                                     OFFICE
14                                   501 I Street, Suite 10-100
                                     Sacramento, CA  95814
15                                   By:  LYNN TRINKA ERNCE
                                     Assistant U.S. Attorney
16

17       For the Defendants:         STEVEN ZINNEL, PRO SE
                                     420 S. Center Street
18                                   Orange, CA  92866

19
       (Appearances continued on following page)
20
         Official Court Reporter:    Thresha Spencer,
21                                    CSR, RPR
                                      501 I Street
22                                    Sacramento, CA 95814

23

24
         Proceedings recorded by mechanical stenography, transcript
25     produced by computer-aided transcription
```

**EXHIBIT 2**

2

1                          APPEARANCES CONTINUED

2     For David Zinnel:              K. GREG PETERSON
                                     455 Capitol Mall, Suite 325
3                                    Sacramento, CA  95814
                                     By: KENNETH GREGORY PETERSON
4                                    Attorney at Law

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1    SACRAMENTO, CALIFORNIA, Friday, June 3, 2022, 12:50 p.m.

2                            --o0o--

3    (Proceedings were held via the Zoom application.)

4         THE CLERK:  Please come to order, this court is now

5    in session.  The United States Chief Magistrate Judge Kendall

6    J. Newman presiding.

7      Calling miscellaneous case number 21-mc-0098; United States

8    versus Zinnel.  This matter is on for settlement conference,

9    your Honor.

10        THE COURT:  And good afternoon.  I am Judge Newman.

11   The parties have reached an agreement -- not a complete

12   resolution of this case -- but an agreement on a path forward,

13   and we're here to put the terms of that path forward on the

14   record; make sure everyone understands and agrees.

15     So if I could get appearances for the record, starting with

16   government's counsel.

17        MS. ERNCE:  Good afternoon, your Honor.  Assistant

18   United States Attorney Lynn Ernce for the United States.

19        THE COURT:  Okay, good afternoon.

20     And defendant?

21        MR. STEVE ZINNEL:  Good morning, your Honor, and the

22   parties.  Steve Zinnel, defendant and alleged judgment creditor

23   in this action.

24        THE COURT:  Mr. Zinnel, good afternoon.  I'm going to

25   say Steven Zinnel, though.  Again, I don't confuse people here.

4

```
 1           MR. STEVE ZINNEL:  That would be fine, your Honor.

 2           THE COURT:  And a third party here, if I could get

 3    appearances, please.

 4           MR. PETERSON:  Greg Peterson for David Zinnel, who is

 5    with me.  And he is both the successor and trustee of the

 6    Castana Trust and a third party, beneficiary.

 7           THE COURT:  And again, Mr. Peterson, good afternoon

 8    to you.

 9       David Zinnel, good afternoon to you.

10       So what I'm going to do is I'm going to take a crack at

11    stating the material terms; what I understand everyone has

12    agreed to today.

13       I will ask each of you to please correct any misstatements

14    I make or omissions I make about the material terms.  And then

15    once we have all those laid out, I'm going to ask everyone if

16    they understand and agree to those terms.

17       I do want to make clear that while none of us are in the

18    courthouse right now, for all practical purposes, it's as if we

19    were in the courthouse.  I am wearing my robe, we have a court

20    reporter, we are now on the record.

21       So in this case Mr. Zinnel -- I'm sorry -- Steven Zinnel

22    continues to take the position -- and it's been David's

23    position -- that it was their mother's desire to leave all of

24    her assets equally to her two boys and through a trust, but

25    there is a recognition that that may not have been fully
```

5

1    accomplished when setting up the Ameritrade account.

2        But recognition that that is really an issue between Steven

3    and the government as a result of his criminal conviction and

4    the amounts that the government asserts he owes for

5    restitution, fine, and litigation surcharge.

6        So David Zinnel agrees to dismiss any third party claims he

7    has in this case and withdraw any claims asserting undue

8    influence, fraud, anything else -- or any claims essentially as

9    to the amount the government is seeking from Steve Zinnel out

10   of the Ameritrade account and saying "That is between

11   Mr. Zinnel and the government."

12       Steve Zinnel agrees that any amount that goes to satisfy

13   the government is his responsibility and not David's, so Steve

14   Zinnel doesn't agree he owes the government any additional

15   money, he believes that that may have already been satisfied.

16       Or if there is any money owed, it may be for a fine but not

17   for any restitution.  But that is for him to litigate with the

18   government.

19       And he agrees that any amount necessary to satisfy the

20   government is solely his obligation and not an obligation of

21   the trust or to be partially shared by David.

22       And one of the most simple math examples I gave is if there

23   were a million dollars of trust assets -- apart from the

24   Ameritrade account -- and a million dollars in the Ameritrade

25   account and the government was entitled to the entire million

6

1    dollars in the Ameritrade account, the entire million dollars

2    remaining in the trust account would go to David because there

3    was a total of $2 million in assets, Steven's one half million

4    dollars went fully to the government and David would be

5    entitled to everything that remains.  So that will be between

6    Steven and the government moving forward.

7        There was -- there is -- the government asserts a maximum

8    exposure from the Ameritrade account of $513,056 in

9    restitution, $500,000 in fine.

10       The government was seeking a litigation surcharge of

11   $301,429, but as part of the agreement here today and the

12   resolution, the government agrees the maximum exposure for

13   Steven Zinnel on that Ameritrade account, they're reducing

14   their litigation surcharge to $150,000.

15       So the total exposure is $1,163,056.  Again, no agreement

16   by Steve Zinnel that the government is entitled to that amount,

17   and the government agrees that would be the maximum they're

18   seeking from the Ameritrade account.

19       And the parties then agree that whatever remains from the

20   Ameritrade account, whether it's all of that, whether it's the

21   government gets part of it or all of it, whatever remains is

22   then an asset of the Castana Trust.

23       And the parties will agree on the record today that any

24   remaining amounts as well as if there's any documentation that

25   needs to be done.  And, you know, the government agrees that

7

1    they really don't have a dog in that fight once their issue

2    with Steve Zinnel has been resolved, but the parties agreed

3    that this transcript could be sent to Ameritrade.

4        And if there's any documentation that needs to be done,

5    that no one will be seeking any assets from the Ameritrade

6    account, Ameritrade is not to distribute any assets until it

7    gets an order from the federal court as to what, if anything,

8    the federal government is entitled to.

9        From that, Ameritrade can satisfy that federal court

10   judgment.  And the balance then gets sent to the Castana Trust.

11   And, in fact, the Ameritrade account can be converted to a

12   Castana Trust account.

13       The government is not at this point dismissing its action

14   against the Castana Trust.  There is an action in federal

15   court, 21-mc-143, but the government agrees to stay any

16   proceedings in that action until this case involving the

17   Ameritrade account has been resolved.

18       And if that fully satisfies the government's judgment

19   against Mr. Zinnel, they will then move to promptly dismiss any

20   claim the government has asserted in the Castana Trust as well

21   as remove any liens against any real property.

22       Someone informed me that the most recent look at the

23   Ameritrade account, it's actually gone up in value, up to about

24   a million 5.  At one point it was a million 8, then it went

25   down to a million 4.

THRESHA SPENCER, OFFICIAL COURT REPORTER, USDC

8

1    I do want to mention a worse case situation possibility if

2  it was to go below the $1,163,000, the government could then

3  assert a claim in the Castana Trust for whatever wasn't

4  satisfied to their action against the Ameritrade account, but

5  everyone is hoping the market doesn't take that bad of a

6  downturn.

7    Additionally, Steven Zinnel agrees that he is entitled to

8  accounting from the Castana Trust, agrees not to file any

9  petitions, he's not seeking to have any distributions from the

10  Castana Trust, any liquidations of any real property or

11  anything else, again, until this entire matter involving the

12  Ameritrade account is resolved.

13    Mr. Steven Zinnel also agrees that the Court and the

14  parties have authority to enter into these agreements and

15  stipulations on the record today, but wants to make clear by

16  doing so he's not waiving any arguments he has, and has

17  inserted the venue over this matter is more appropriately in a

18  different federal court.

19    Let me start -- I'm hoping that's everything, but let me

20  ask each of the parties.

21    Let me start with Ms. Ernce.  Did I accurately state the

22  material terms as you understand the material terms?

23    MS. ERNCE:  Yes, your Honor.  Just a couple of

24  clarifications.  I want to confirm and ask that you have David

25  Zinnel confirm on the record that he'll dismiss his entire

THRESHA SPENCER, OFFICIAL COURT REPORTER, USDC

9

1   third party claim and that he'll file a notice of dismissal as

2   soon as possible.

3          THE COURT:  Correct.

4          MS. ERNCE:  Second, with respect to what happened to

5   any remainder of the account after the United States is fully

6   satisfied, we prefer not to agree it is an asset of the Castana

7   Trust based on what the probate court said.  I'd be comfortable

8   saying that the money should be transferred to the probate

9   court to be determined by the probate court as to what happens

10  to that money.

11         THE COURT:  Well, and I think I want to make clear

12  that, and that's also why I mentioned that it is the

13  government's position -- it is the government's position that

14  once its action is satisfied with regard to Steven Zinnel, it's

15  up to Steven and David and other courts as to whether or not

16  that is a trust asset, whether or not it has to go to probate.

17    The government is just not taking a position on that.  The

18  government is fine, if otherwise agreed, that it is a trust

19  asset.

20    But we're going to get David and Steven to agree today that

21  it is a Castana Trust asset.

22         MS. ERNCE:  That's fine.  The United States won't

23  agree that it is a trust asset, but that is between the

24  brothers.  And agree that we have no claim to it as -- once the

25  United States is paid in full.

THRESHA SPENCER, OFFICIAL COURT REPORTER, USDC

10

1        THE COURT:  Correct.  And that's what I'm saying.

2   Because at that point the government has no interest in that

3   money whether it is set up as a trust asset or not a trust

4   asset.  Correct, Ms. Ernce?

5        MS. ERNCE:  Yes, correct.

6        THE COURT:  What else, Ms. Ernce?

7        MS. ERNCE:  I believe that's it, your Honor.

8        THE COURT:  Mr. Peterson, any corrections,

9   misstatements, anything else, sir?

10       MR. PETERSON:  Well, the part about the payments from

11  the IRA.  Assuming that is done upon resolution of the disputes

12  between the U.S. and Steve Zinnel would apply as a credit

13  against any interest Steve Zinnel has as a beneficiary under

14  the trust, and that he agrees to that.

15       And I'm assuming that the stay in action 143 assumes that

16  the resolution of the government's position against Steve

17  Zinnel is limited to the agreements that we're making as to the

18  amount of the IRA recovery in the existing 1098, and that the

19  number is not going to change because there is a separate

20  action or something like that.

21       In other words, the resolution of the government's claim is

22  limited to what we agreed to today that will come from the IRA,

23  and that needs to be confirmed.

24       THE COURT:  Well, I'm --

25       MR. PETERSON:  I assume you were going to resolve

THRESHA SPENCER, OFFICIAL COURT REPORTER, USDC

11

1    both cases.  Now I'm hearing 143 is going to stay in limbo out

2    there, and I don't want to agree to settle on a specific

3    figure, leave a second action that is sort of open, and then

4    all of a sudden we've got a new conversation going about,

5    "Well, there is more money owed over here in the second case."

6             THE COURT:  Well, I guess I was trying to make it

7    clear -- which is I think Ms. Ernce is agreeing -- that if --

8    if the government recovers its $1,163,056 in this Ameritrade

9    action, that will completely resolve the government's claim.

10   Even if they've asserted larger amounts in the Castana Trust or

11   in 143, they're not going to be pursuing any difference.

12       Ms. Ernce and the government is agreeing that a

13   satisfaction of that $1,163,056 would fully satisfy the

14   government's claims against Mr. Zinnel as well as any liens

15   they've asserted against the trust or otherwise.

16       Am I correct about that, Ms. Ernce?

17            MS. ERNCE:  That is correct.  But if the United

18   States doesn't get the full 1.1, then, yes, the United States

19   will pursue the Castana Trust for whatever the shortfall is.

20            MR. PETERSON:  And the last part is the -- I think

21   you addressed this in your comments, your Honor, but I'm

22   looking for as soon as the United States has received

23   resolution, has been paid the full amount agreed to, it no

24   longer has an interest in any of the remaining IRA funds, and

25   at that point the remaining parties -- so now there is, the

12

1  brothers would agree, that's characterized in trust assets, and

2  that the Court will issue an order to TD Ameritrade that the

3  entitlement is such so that the account is held for David

4  Zinnel, that it doesn't go to the Castana Trust as to whatever

5  remaining balance is there.

6        THE COURT:  And part of what -- I agree with part of

7  what you said but not the latter part.  The Court will be

8  issuing that order if the parties -- but it would include that

9  Steven and David Zinnel, putting on the record today that that

10  is their agreement.

11      And also I'm happy that if the parties, the two brothers,

12  if the stipulation on the record today by them, including

13  ordering a transcript isn't sufficient, if they want to put

14  together a stipulation that says, "Could you please agree to

15  this, Judge, you know, here is the transcript attached so we

16  have something to send to Ameritrade," that's fine, I'm happy

17  to do that.

18      But I'm not going to otherwise be issuing an order saying,

19  "Yes, it becomes an asset of the trust."  That's subject to the

20  brother's agreement, and I'm fine with that as long as the two

21  brothers agree to that regard.

22      And I think the government's position, that's between the

23  brothers, Ameritrade, and whether or not a probate court then

24  accepts that.

25        MR. PETERSON:  And the money does not come out of the

13

1   TD Ameritrade account absent a court order.

2           THE COURT:  Yeah.  Either a court order or an

3   agreement of the trustee if once the two brothers have agreed

4   this is now a trust asset, correct.

5       You know probate or the resolution of the trust account

6   better than I do or Ms. Ernce does, but nothing is coming out

7   of that account until there is a court order in this federal

8   court action as to what proceeds get paid to the government or

9   not.

10      And then the two brothers are agreeing it then becomes a

11  trust asset.  And working with Ameritrade you can even rename

12  the account if this transcript of this on the record isn't

13  sufficient with both of them agreeing to that.  And then I

14  don't know enough about trust account distributions and

15  payouts, whether that's a court order or an order from David --

16          MR. PETERSON:  We're simply talking about this asset,

17  what happens with it when the government satisfies what they

18  are seeking --

19          THE COURT:  Correct.

20          MR. PETERSON:  -- and then that balance would stay in

21  the account absent a court order or a stipulation that would

22  allow for their moneys to be moved into the Zinnel Trust.

23      But we're going to agree between David and Steven today as

24  part of the settlement that at that point it would be a trust

25  asset.

14

1          THE COURT:  Correct.

2          MR. PETERSON:  Okay.

3          THE COURT:  And the only reason I -- I don't know if

4     you need a court order, is if Steven and David both sign

5     documents and then say it is a trust, and they both sign

6     something saying it is now paid to put this into the trust.

7     You know better than I do whether you need a court order.  At

8     that point --

9          MR. PETERSON:  Court order is always the gold

10    standard.

11         THE COURT:  Okay.  That's fine.

12         MS. ERNCE:  Well, I guess my two cents on this is --

13    well, the concerns that any order of this Court providing that

14    that's an asset of the trust would be a determination of --

15    that might be better suited for the probate court.

16       The way I envisioned this is that money would go to the

17    United States, and then the other money would go to the probate

18    court for a determination.

19       And the brothers can assert and take the position in the

20    probate court that that is a trust asset and they can do

21    whatever they want with the document.

22         MR. PETERSON:  We're not going to agree to a

23    settlement to reserve that fight for later, and after the

24    United States has been paid, it does not have a dog in this

25    fight at that point.

THRESHA SPENCER, OFFICIAL COURT REPORTER, USDC

15

1            THE COURT:  Wait, wait, stop.  I want to make clear

2      two things.  Number one of which, the government is not

3      agreeing today that the Ameritrade account is a trust asset.

4      It is the government's position that it wasn't set in the

5      trust, and that's not set up that way.

6            Instead, it is my understanding that Steve Zinnel and David

7      Zinnel don't have a disagreement amongst the two of them that

8      it was their mother's desire to have money paid into a trust.

9      There's even a pour-over provision, and that's where assets get

10     distributed from.

11           And so it is -- to be clear, when you talked about a court

12     order and the standard, I don't know whether you're talking

13     about an order from this court, the probate court, what you're

14     talking about.

15           What it's making clear is once the government's claim

16     against Steve Zinnel has been satisfied from the Ameritrade

17     account, they no longer have any claim to the remainder of the

18     money; no dog in that fight.

19           If Steven and David want to say that that's a trust asset,

20     that's between them, as far as the government is concerned.  If

21     they want to say it's part of Elvis Presley's estate, the

22     government doesn't care, that's between them.

23           I just want to make clear here that to avoid later

24     disputes, while we're here on the record, Steven and David will

25     both, on the record in front of a federal court, agree that the

16

1  remainder, once the government has been satisfied, will be a

2  trust asset and will do whatever paperwork is necessary to

3  effectuate that.

4      If it's an order from a probate court, fine.  If it is the

5  two of them just signing something with Ameritrade saying,

6  "Please rename this account," but that's between them, the

7  government is not involved in this, this Court is not making a

8  determination whether or not it is a trust asset, just that the

9  brothers are agreeing that that's what it is once the

10  government is satisfied.

11     Does that make it clear?  I see a yes from Ms. Ernce.

12         MS. ERNCE:  Yes, your Honor.

13         THE COURT:  Mr. Peterson?

14         MR. PETERSON:  Yes.  How about Mr. Zinnel?

15         THE COURT:  I'm going to get to him on that, but I

16  just want to make -- Mr. Peterson, one of the things that I

17  misstated or need clarification.

18     Mr. Peterson, anything else?

19         MR. PETERSON:  No.

20         THE COURT:  Steven Zinnel, anything I've misstated or

21  need clarification before we agree to all of this on the

22  record?

23         MR. STEVEN ZINNEL:  Three things, your Honor,

24  quickly.  Again, I just want to clarify.  I agree -- I'm

25  stipulating that the Court has jurisdiction -- limited

17

1  jurisdiction to make this settlement, but I strongly dispute

2  that the Eastern District has jurisdiction, and I will continue

3  to litigate that by me consenting today, I am not consenting

4  and waiving my jurisdictional and venue argument.

5       THE COURT:  Wait, wait, wait.  Let's just stop each

6  one, and I understood.  I thought I had stated that, but I

7  agree, Ms. Ernce, do you recognize and agree with that as well?

8  You're not agreeing the venue is somewhere else, but you're

9  agreeing he's not giving up his venue argument by entering into

10 this agreement today?

11      MS. ERNCE:  I agree that he's not giving up his venue

12 argument.  But, I mean, the Court will have jurisdiction to

13 adjudicate the TD Ameritrade garnishment so we can bring this

14 to a close.

15      THE COURT:  Well, that's between -- Mr. Zinnel can

16 continue to make his argument if the Court doesn't have

17 jurisdiction to do that.  Yeah, okay.

18      MR. STEVEN ZINNEL:  That's correct, your Honor, and I

19 intend to.

20      THE COURT:  Go ahead, next.

21      MR. STEVEN ZINNEL:  If I win on this, then this is

22 for nothing.

23      THE COURT:  No, no, not necessarily.  No, and I want

24 to make clear.  Because wait, wait, wait.  I think it was

25 Orange, if I wasn't mistaken.  At some point you said the

18

1  jurisdiction is more appropriate. Let's assume I'm picking

2  Orange.

3              MR. STEVEN ZINNEL: That's where I am.

4              THE COURT: All right. Well, you're down in Central

5  District. Everything that's been agreed here is still part of

6  the court justice and will go to the Central District and would

7  still be enforceable there just as much as it is here. Even if

8  you say, "Well, the rest of the case should be adjudicated

9  there," everything agreed to here is still enforceable.

10     Do you understand that?

11             MR. STEVEN ZINNEL: I agree, your Honor.

12             THE COURT: Okay. Point number two, Mr. Zinnel.

13             MR. STEVEN ZINNEL: Okay. Not only do I want an

14  accounting from David Zinnel, but I want an accounting from the

15  government.

16             THE COURT: And that's a separate issue that we

17  purposefully haven't gotten into. That is still your right in

18  the action against the government, and I'm sure that is part of

19  agreed bone of contention. To be ultimately decided by Judge

20  Claire is the evidence and issues sufficient, and ultimately

21  Judge Nunley is --

22             MR. STEVEN ZINNEL: I think the goal is --

23             THE COURT: I get that, and you're not giving up -- I

24  understand that. I'm sorry, what?

25             MR. STEVEN ZINNEL: I believe under the law the

19

1    government owes me an accounting.

2              THE COURT:  And that, again, I'm not deciding that

3    legal issue right now.

4              MR. STEVEN ZINNEL:  Okay.

5              THE COURT:  I'm sorry.  I don't agree whether or

6    not you are or are not entitled.  I agree that's an issue for

7    another day for you and Ms. Ernce to litigate and decide, let

8    Judge Claire and Judge Nunley decide.

9              MR. STEVEN ZINNEL:  Thank you.  The third thing I

10   want to clarify is the government's statement that if they get

11   there -- I'm just rounding your number up.  What was the final

12   number between 513, 500,000, and 150 on the surcharge?

13             THE COURT:  Well, it's $1,163,056.

14             MR. STEVEN ZINNEL:  Okay.  The government said that

15   if they get that $1,163,056, that the 0143 case goes away.

16   That's what I understood that she said, okay?

17             THE COURT:  Wait, wait, let me stop.  Wait, wait.

18   Stop, stop, stop, stop.

19      Ms. Ernce, is that -- am I correct about that?  If you

20   satisfy this total amount through this action, through this

21   Ameritrade money, you'll be dismissing -- the government will

22   be dismissing any claim or dismissing the 21-mc-143?

23             MS. ERNCE:  Yes.  Because there will be no more fine,

24   restitution, or litigation surcharge owed.

25             THE COURT:  Correct.

20

1  MR. STEVEN ZINNEL: No, thank you, your Honor. So

2  here is the clarification point. Conversely, if I am correct,

3  which I strongly can assert I am. If the government gets zero

4  in this case, they also have to dismiss 143. They don't get a

5  second bite of the apple.

6  THE COURT: And I didn't talk to you about this. I

7  actually talked to Mr. Peterson and your brother about this.

8  It depends on what the circumstances are.

9  And the reason I say that. If, as a matter of law, Judge

10 Claire/Judge Nunley determines that the government is not

11 entitled to any other money, they've been fully satisfied,

12 then, again, as a matter of law, that's called res judicata, I

13 don't think they'd have a leg to stand on in the 143.

14 If for some reason the government -- the Court just says,

15 "Hey, we're not going there. We think this is an asset of the

16 trust." The government should be pursuing any actions it's got

17 against the trust even though they technically didn't get any

18 money from the Ameritrade account, there was also no

19 determination that they weren't entitled to any money, then the

20 143 may still be going forward.

21 Do you see those two distinctions?

22 MR. STEVEN ZINNEL: Your Honor, I agree with that. I

23 agree with that.

24 THE COURT: Well, that's all I wanted to clarify so

25 people didn't have a misunderstanding.

21

1        What else, Mr. Zinnel?

2            MR. STEVEN ZINNEL:  That's it.

3            THE COURT:  All right.

4        Let me start with you, Steven.

5        So do you understand everything that's being agreed to here

6    today?

7            MR. STEVEN ZINNEL:  I do, your Honor.

8            THE COURT:  And do you understand that I am now

9    wearing my robe, there is a court reporter, we are on the

10   record before a federal court so everything that's agreed to

11   here is binding in this action, in any actions going forward,

12   whether that includes trust, accountings, whether that's

13   probate, whether your action gets transferred to the Central

14   District.  All of the agreements by the parties here are

15   binding.

16       Do you understand that?

17           MR. STEVEN ZINNEL:  I do, your Honor.

18           THE COURT:  And are you currently taking any drugs or

19   medication, whether over-the-counter, illegal, prescription, or

20   otherwise, that affect your ability to think clearly or

21   understand what's happening here today?

22           MR. STEVEN ZINNEL:  I am not, your Honor.

23           THE COURT:  Any reason why the parties shouldn't go

24   forward with these agreements here today?

25           MR. STEVEN ZINNEL:  Not that I'm aware of, your

22

1   Honor.

2           THE COURT:  And you understand that the terms laid

3   out in this agreement -- and the parties can get a

4   transcript -- will be binding, but if there are documents

5   necessary to effectuate this?

6       For example, if down the road there is a document necessary

7   to make sure that the Ameritrade -- the remainder of the

8   Ameritrade account becomes an asset of the trust, you'll agree

9   to sign whatever is necessary to effectuate that, it is not a

10  basis to refuse to sign that or to later try and set aside and

11  agree to here today, or because you've had second thoughts or

12  you thought, "No, I should have never agreed to all of this."

13  No, we'll have an agreement as of today.

14      Do you understand all of that?

15          MR. STEVEN ZINNEL:  I do, your Honor.

16          THE COURT:  And with all that said, do you agree with

17  everything that we have laid out on the record here today?

18          MR. STEVEN ZINNEL:  Yes, your Honor.

19          THE COURT:  Mr. Peterson, do you understand the

20  material terms of the settlement?

21          MR. PETERSON:  I believe so, your Honor.

22          THE COURT:  And you understand, sir, and I want to

23  make clear today --

24          MR. PETERSON:  Hold on, your Honor.  May I?

25          THE COURT:  Sure.  And you can mute if you want to

23

1    talk to him for a moment.

2              MR. DAVID ZINNEL:  Your Honor, I need to clarify.

3              THE COURT:  No, no.  But I think it is a point worth

4    making.  And I know it is the government's position, it is not

5    a trust asset.  And it may have been the parties' desire, but

6    it is the government's position as a matter of law, it wasn't

7    set up that way.

8         But am I correct between you and your brother and the

9    trust, that you would agree that this ultimately becomes a

10   trust asset, even if you're successful at prevailing against

11   the government?

12             MR. DAVID ZINNEL:  Yes, your Honor.

13             THE COURT:  Okay.  Very good.

14        All right.  Mr. Peterson, do you understand all of the

15   material terms that have been laid out on the record?

16             MR. PETERSON:  Yes, your Honor.

17             THE COURT:  And you understand that there are no --

18   each side, between you and Steve Zinnel and the government,

19   each side is responsible for its own attorney's fees and costs?

20             MR. PETERSON:  Oh, yes.

21             THE COURT:  And to the extent that you would have

22   your claim -- your own claim for attorney's fees and costs, and

23   to the extent that David Zinnel and the trust have sought your

24   advice and recommendation, do you both agree to and recommend

25   the terms of the settlement?

24

```
1              MR. PETERSON:  Yes.

2              THE COURT:  All right.  David Zinnel, do you

3    understand the material terms of the settlement?

4              MR. DAVID ZINNEL:  Yes.

5              THE COURT:  And both as an individual and as a

6    successor trustee for the Castana Trust, have you had enough

7    time to talk to Mr. Peterson about what is being agreed to here

8    today?

9              MR. DAVID ZINNEL:  Yes.  I just do have one more

10   question.  Can we mute real quick?

11             MR. PETERSON:  Sure.  Can you excuse us for just one

12   minute?

13             THE COURT:  Go ahead and mute.  Go ahead.

14        (Break.)

15             MR. PETERSON:  Your Honor, I'm back.  That

16   clarification with regard to the attorney's fees, each party is

17   bearing their own fees in connection with the federal court

18   action, but that does not have anything to do with how they're

19   characterized in the probate court proceeding.

20             THE COURT:  Correct.  And the government takes no

21   position at this point whether or not that is an appropriate

22   charge for David Zinnel individually versus --

23             MR. PETERSON:  Right.

24             THE COURT:  -- a charge against --

25             MS. ERNCE:  Agreed, your Honor.
```

25

1      THE COURT:  David Zinnel, are you currently taking

2  any drugs, medications, over-the-counter, illegal, otherwise,

3  that affect your ability to think clearly or understand what's

4  happening here today?

5      MR. DAVID ZINNEL:  No.

6      THE COURT:  Any reason we shouldn't go forward with

7  agreeing to all of these terms on the record here today?

8      MR. DAVID ZINNEL:  No.

9      THE COURT:  And with all of that said, do you agree

10  to all of these terms?

11      MR. DAVID ZINNEL:  Yes.

12      THE COURT:  Ms. Ernce, do you understand the material

13  terms of the settlement?

14      MS. ERNCE:  Yes, your Honor.

15      THE COURT:  To the extent your office would have its

16  own claims for attorney's fees and costs and to the extent you

17  can bind the government to the terms, do you agree to the terms

18  in this case?

19      MS. ERNCE:  Yes, your Honor.

20      THE COURT:  Very good.  All right.  Folks, we have an

21  agreement.  I think that helps with a path forward.  You can

22  contact my courtroom deputy in terms of ordering a transcript

23  of today's proceedings.

24    You can also let me know if there is any documentation that

25  otherwise needs to be done.

26

1     Mr. Peterson, am I correct you are going to promptly file

2    whatever is necessary to dismiss any claims that your client is

3    asserting in the 21-mc-098-TLN-AC, as well as to make clear

4    that between Steve Zinnel and the government, your client is

5    not asserting any claims to any of those proceeds, correct?

6           MR. PETERSON:  Yes.

7           THE COURT:  Okay.  And when do you envision being

8    able to file the necessary documentation?

9           MR. PETERSON:  Monday.

10         THE COURT:  Okay, excellent.  I don't know -- one

11   thing I wanted to make clear while we're still on the record,

12   and this is important for Steven Zinnel to understand as well

13   and Ms. Ernce.  Which is, Mr. Peterson, if you want to send any

14   documents to Steven Zinnel to have him sign for Ameritrade

15   purposes, clarifying that once the government's action is

16   resolved between the government and Steven Zinnel, that the

17   account would then be converted to a Castana Trust account, you

18   are welcome to do so.

19     But I also want to make clear for Steven Zinnel, that was

20   in furtherance of a settlement and as part of these terms that

21   have been laid out today.  And even if there is such a signed

22   document between you and your brother, it's not something that

23   can be introduced in the action against the government that

24   says, "Oh, see, see, this account is really intended to be a

25   Castana Trust, and we've now signed documents converting it to

27

1  a trust."

2      Again, that conversion is only effective once your action

3  is resolved between the government.

4      Steven Zinnel, do you understand that, sir?

5          MR. STEVEN ZINNEL:  I do, your Honor.

6          THE COURT:  Okay.  And that's the only reason.  If

7  you want to send him documents now, you can't submit those to

8  Ameritrade at this point.  But then you've got them signed and

9  dated and stuff once the actions resolve between Ms. Ernce and

10  Steven Zinnel.

11          MR. PETERSON:  And is the 143 action stayed for all

12  purposes?  And I assume that means no discovery or anything

13  that my client --

14          THE COURT:  Correct.  And I will have a -- my

15  courtroom deputy issue a minute order that's saying that the

16  parties agreed to a number of material terms in this case,

17  21-mc-098-TLN-AC, which help set forth a path forward between

18  government and defendant Steven Zinnel.

19      As part of that third party, claimant will promptly file a

20  dismissal of any claim or assertion to entitlement to those

21  proceeds in that case.  And the case of 21-mc-143 is hereby

22  stayed and all dates vacated until a resolution of case

23  21-mc-098.

24      Does that sound appropriate?

25          MS. ERNCE:  Your Honor, can I just say one thing?

28

```
1              THE COURT:  Certainly.
2              MS. ERNCE:  I don't envision that there's any
3   discovery that's going to be necessary to resolve the TD
4   Ameritrade account, but I don't want to be excluded from
5   seeking discovery from Mr. Zinnel -- David Zinnel in that case
6   if for some reason it is.
7        Just because the Castana Trust case is stayed, it doesn't
8   mean that the United States can't seek any appropriate
9   discovery in the TD Ameritrade case.
10             THE COURT:  Nothing is stayed in the Ameritrade case.
11  And, yes, so there still could be discovery in that.
12             MS. ERNCE:  Uh-huh.
13             THE COURT:  I'd ask to have the parties cooperate.
14  "Oh, David is a third party" -- I mean -- "yes, an uninvolved
15  third party, you're not entitled to discovery."
16        No, I assume you all will cooperate, and if you need me to
17  get involved, let me know that.
18             MS. ERNCE:  Thank you, your Honor.
19             THE COURT:  Mr. Peterson, that's all agreeable?
20             MR. PETERSON:  The concept of more discovery isn't,
21  but I understand the reason.
22             THE COURT:  Right.
23             MR. PETERSON:  We'll see what shakes out.
24             THE COURT:  Okay.  Any other documentation,
25  Ms. Ernce, that you can think of necessary to effectuate all of
```

29

1    these terms?

2         MS. ERNCE:  No, your Honor, not at the moment.  We'll

3    be proceeding to seek our final order of garnishment, and that

4    will tee everything up.

5         THE COURT:  Mr. Peterson, any other documentation you

6    can think is necessary at this point?

7         MR. PETERSON:  No.

8         THE COURT:  Mr. Steven Zinnel, anything else you can

9    think of at this point?  I know you want an accounting, but,

10   again, that's for you to file in the 21 -- and I think you

11   already had certain of those accounts.  21-mc-098, if and when

12   Ms. Ernce files for order to final.  That would be nice, I

13   think you're welcome to file something saying final

14   garnishment.  That's when you can then say, "Oh, you can't do

15   that until I get a final accounting."

16      Again, that's between you, Judge Claire, and Judge Nunley.

17      But anything else --

18        MR. STEVEN ZINNEL:  Yes.

19        THE COURT:  -- to further these terms, sir?

20        MR. STEVEN ZINNEL:  Nothing to further these terms.

21   But one thing since everybody is here.  I have the means to

22   file electronically now.  I have the means and ability to

23   receive service.  There has been a huge problem of me timely

24   receiving service in both the 098 case and the 143 case.

25      Local Rule 133(b) allows me to have the Court allow me to

30

1   use the CM/ECF system.  It refers to that the parties are

2   supposed to stipulate, and I intend to file the motion, but I'm

3   asking that the parties stipulate to let me electronically file

4   and receive notice by electronic file both in the 098 case and

5   in the 143 case.

6       I have gotten documents way after orders are issued, and

7   neither Mr. Peterson nor the government counsel can claim any

8   prejudice because they get electronic -- every time my stuff is

9   scanned, they get it electronically anyway.  So I'm asking the

10  Court --

11          THE COURT:  Here's my suggestion going forward for

12  that, which is the one thing you just touched on, which is what

13  you should promptly do is file a request in the action or

14  actions asking for authority to do electronic filing and citing

15  the local order.

16      At which point, again, I doubt that Mr. Peterson files

17  something -- he probably doesn't have much of a dog in that

18  fight.

19      Ms. Ernce can file either a statement of non-opposition or

20  why she thinks it's not appropriate.  Typically, it's left to

21  the judge, and what I don't know, and I haven't looked at

22  enough of this is, as a judge who often decides these issues,

23  what I look at is what a person has filed previously.

24      And I will pick just one example of something that could

25  hurt you in that request.  The settlement statement I got from

31

1   you, and this is in plaintiff's side of the settlement, but the

2   settlement statement I got from you when a whole bunch of

3   issues when we went to settlement, and it started off with a --

4   "Have the government leave us the F alone."

5       It's the kind of thing that causes the judge to go, "Nah,

6   I'm not going to give this authorization to file things."

7       It's when you have shown the Court, "Hey, I get it.  I'm

8   filing only what's necessary.  I'm not inundating you with

9   stuff."  But so that's why -- I'm not putting someone on the

10  spot at this point.  I think you file your request, and then

11  Ms. Ernce and/or Mr. Peterson can submit.

12          MR. PETERSON:  Hopefully, file something so you can

13  say, "Hey, no opposition, or here is why it has been abused,"

14  yeah.

15          MR. STEVEN ZINNEL:  So two things, and I'll say this

16  and we can move on.

17          THE COURT:  Sure.

18          MR. STEVEN ZINNEL:  Number one, no matter what I put

19  in paper filings, that gets filed.  So your first concern is I

20  don't quite understand, and the court clerk has to file

21  whatever I submit in paper form.  And then the rule says --

22          THE COURT:  Wait, I'll answer that for you.  Because

23  we have found it's a reason pro ses were not included in this.

24  We found that the easier it is for somebody -- and they don't

25  even have to print or mail things -- the more they sometimes

32

1    abuse the system.  That's why.

2              MR. STEVEN ZINNEL:  Okay.  Well, between the criminal

3    case 098 and 143, it is obvious I have the ability to file

4    paper, okay?  And now I have a word processor and unlimited

5    printing so I can really file paper.

6              THE COURT:  And, Mr. Zinnel, you and I have gotten --

7    go ahead.

8              MR. STEVEN ZINNEL:  Let me say one last thing, your

9    Honor --

10             THE COURT:  Sure.

11             MR. STEVEN ZINNEL:  -- while you're here just because

12   I'm letting them know what's coming.

13       The Local Rule says you cannot submit that request to the

14   Court first, you have to seek a stipulation and order from the

15   parties first, okay?

16       So I've already drafted that, and I'm going to send it to

17   counsel.  But if we can stipulate now, then it eliminates that

18   step.

19       But I am going to do -- I'm going to follow the Local Rule

20   133(b) that states that before you file the request with the

21   Court, you have to seek a stipulation of the parties.  And I

22   can see no way that the parties are prejudiced.  They'd

23   probably throw away my paper.  The court clerk rules say that

24   once they scan my papers, they throw them away.  It is a

25   complete waste of trees.  But, believe me, postage will not

33

1   stop me from filing this, so...

2          THE COURT:  Thresha, we can go off the record.  You

3   don't have to take all this down.

4          (Proceedings adjourned:  1:35 p.m.)

5                        ---o0o---

6   I certify that the foregoing is a correct transcript from the

7   record of proceedings in the above-entitled matter.

8

9                        /s/ Thresha Spencer
                         THRESHA SPENCER
10                       CSR No. 11788, RPR

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN ZINNEL,<br><br>Debtor. | Case No. 2:21-mc-00098-TLN-AC<br><br>**ORDER ADOPTING FINDINGS AND RECOMMENDATIONS FOR FINAL ORDER OF GARNISHMENT**<br><br>Criminal Case No. 2:11-cr-00234-TLN |
| TD AMERITRADE CLEARING, INC., (and its Successors and Assignees)<br><br>Garnishee. | |

Defendant-debtor Steven Zinnel ("Defendant") proceeds in this action pro se.  The matter was referred to a United States Magistrate Judge pursuant to Local Rule 302(c)(21).

On June 13, 2022, the magistrate judge filed findings and recommendations for a final order of garnishment herein which were served on the parties and which contained notice to the parties that any objections to the findings and recommendations were to be filed within fourteen days.  (ECF No. 137.) Defendant filed objections to the findings and recommendations on June 30, 2022.  (ECF No. 138.)  On July 11, 2022, the United States filed a response to Defendant's objections.  (ECF No. 147.)

///

ORDER ADOPTING FINDINGS AND RECOMMENDATIONS FOR FINAL ORDER OF GARNISHMENT

1

**EXHIBIT 3**

1    The Court has reviewed the file and concludes that the findings and recommendations are

2  supported by the record and by the magistrate judge's analysis.

3    Accordingly, IT IS HEREBY ORDERED THAT:

4    1.    Defendant's objections (ECF No. 138) are OVERRULED and the Findings and

5  Recommendations for Final Order of Garnishment (ECF No. 137) are ADOPTED IN FULL;

6    2.    TD Ameritrade Clearing, Inc. ("Garnishee") shall pay the Clerk of the United States

7  District Court $1,012,047.08 of the funds held by Garnishee within fifteen (15) days of the filing of this

8  Order.  Payment shall be made in the form of a cashier's check, money order, or company draft, made

9  payable to the "Clerk of the Court", and delivered to:

10    Office of the Clerk
     501 I St., Rm. 4-200
11    Sacramento, CA 95814

12  The criminal docket number (2:11-cr-00234-TLN) shall be stated on the payment instrument;

13    3.    The United States shall recover a $150,000.00 litigation surcharge pursuant to 28 U.S.C.

14  § 3011(a) and the United States' agreement to reduce its litigation surcharge to $150,000;

15    4.    Garnishee shall pay $150,000.00 to the United States Department of Justice via a single

16  payment within fifteen (15) days of the filing of this Order and send the payment in the form of a

17  cashier's check, money order, or company draft made payable to "United States Department of Justice"

18  and delivered to:

19    U.S. Department of Justice
     Nationwide Central Intake Facility
20    P.O. Box 790363
     St. Louis, MO 63179-0363
21

22  "CDCS Number 2015A03982" shall be stated on the face of the payment instrument;

23    5.    Garnishee shall hold any remaining funds after full payment of $1,162,047.08 has been

24  made to the Clerk and the United States as set forth in paragraphs 2-4 above, pending further order of

25  the Court;

26    6.    The Court shall retain jurisdiction to resolve matters through ancillary proceedings in the

27  case, if necessary; and

28  ///

ORDER ADOPTING FINDINGS AND RECOMMENDATIONS    2
FOR FINAL ORDER OF GARNISHMENT

7.      The garnishment shall terminate when Garnishee has paid the $1,162,047.08 as directed in paragraphs 2-4 above.

IT IS SO ORDERED.

**DATED:  July 15, 2022**

Troy L. Nunley
United States District Judge

1   K. Greg Peterson, Esq. (SBN: 118287)
    K. GREG PETERSON, a Professional Law Corporation
2   455 Capitol Mall, Suite 325
    Sacramento, California 95814
3   Telephone:   (916) 443-3010
    Facsimile:   (916) 492-2680
4   Email:       greg@kgregpeterson.com
5
    Attorney for DAVID ZINNEL, Successor Trustee of
6   The Castana Trust, Dated March 4, 2009
7
8
                IN THE UNITED STATES DISTRICT COURT
9
                EASTERN DISTRICT OF CALIFORNIA
10

| 11 | UNITED STATES OF AMERICA | ) | Case No.: 2:21-mc-00098 TLN AC |
|----|--------------------------|---|--------------------------------|
| 12 | Plaintiff, | ) ) | **MEMORANDUM OF POINTS AND** |
| 13 | v. | ) ) ) | **AUTHORITIES IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT AND** |
| 14 | STEVEN ZINNEL | ) ) | **FOR MONETARY SANCTIONS** |
| 15 | Defendant and Judgment Debtor. | ) ) | Case No.: 2:21-mc-00143-TLN-AC |
| 16 | | ) | (Related Case) |
| 17 | | ) ) | Date:        August 9, 2022 |
| 18 | DAVID ZINNEL, SUCCESSOR TRUSTEE OF THE CASTANA TRUST, | ) ) | Time:        10:00 a.m. Courtroom:   26 |
| 19 | DATED MARCH 4, 2009, | ) ) | (Hon. Allison Claire) |
| 20 | Garnishee. | ) | |
| 21 | | | |

22        DAVID ZINNEL, SUCCESSOR TRUSTEE OF THE CASTANA TRUST, DATED

23   MARCH 4, 2009 (**"David Zinnel"**) submits the following Memorandum of Points and

24   Authorities in support of his Motion to Enforce Settlement Agreement and for Monetary

25   Sanctions.

26                          <u>BACKGROUND FACTS</u>

27        1.    This action involves an Application for Writ of Garnishment filed on April 2,

28   2021, by Plaintiff UNITED STATES OF AMERICA (**"USA"**) in connection with criminal



-1-

EXHIBIT 4

1 monetary penalties totaling $3,014,294 assessed against Debtor STEVEN ZINNEL

2 (**"Steven Zinnel"**) in criminal case number 2:11–CR–00234–TLN.

3     2.    The Garnishee, TD AMERITRADE CLEARING, INC. (**"TD Ameritrade"**),

4 responded in this action by disclosing its possession of Rollover IRA Accounts 787–

5 727536 and 72–830613 (together, the **"TD Ameritrade IRA"**) in which it claims Steven

6 Zinnel has an interest.

7     3.    David Zinnel who was served with a copy of the USA's Application for Writ

8 of Garnishment responded in his capacity as Successor Trustee of The Castana Trust,

9 Dated March 4, 2009 (the **"Castana Trust"**) and in his capacity as a 50% beneficiary of

10 the Castana Trust by claiming an interest in the entirety of the TD Ameritrade IRA as an

11 asset of the Castana Trust.

12     4.    On June 3, 2022, Steven Zinnel and David Zinnel entered into a settlement

13 agreement with Plaintiff USA that was placed on the record before Chief Magistrate

14 Judge Kendall J. Newman. As a material part of that settlement agreement Steven

15 Zinnel and David Zinnel have agreed as follows:

16     a.    David Zinnel agreed to dismiss his third-party claims and withdraw

17 any claims of fraud or undue influence in the USA's Application for Writ of Garnishment

18 proceedings, in exchange for the following:

19     i.    Assuming it prevails in this garnishment action, the USA

20 agreed to limit the total amount of its criminal monetary penalties owed by Steven Zinnel

21 to $1,013,056.06 ($513,056.06 restitution. $500,000.00 penalty) and its litigation

22 surcharge to $150,000.00, for a total amount of $1,163,056.06 (the **"Agreed Amount"**)

23 which the USA shall seek to recover from the TD Ameritrade IRA account [Transcript

24 6:15][1].

25

26 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

27 [1] All references to Transcript are to the Transcript of Proceedings of the Settlement
Conference held on June 3, 2022, before the Hon. Kendall J Newman, Chief Magistrate

28 Judge in this matter and as transcribed Thresha Spencer, CSR (**ECF 134**). A true and

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF  MOTION TO ENFORCE
SETTLEMENT AGREEMENT AND FOR MONETARY SANCTIONS

KGP
C. GREG PETERSON
A PROFESSIONAL LAW CORPORATION

ii.      Assuming the USA is able to recover the Agreed Amount from the TD Ameritrade IRA, David Zinnel is then entitled to everything that remains in the TD Ameritrade IRA [Transcript 5:22-6:5] as an asset of the Castana Trust [Transcript 6:19-22, 9:20-21], and any balance remaining is to be sent to the Castana Trust [Transcript 7:10] or the account may be converted to a Castana Trust account [Transcript 7:11-12]. Steven Zinnel and David Zinnel agreed that any remaining balance of the TD Ameritrade IRA will be a Castana Trust asset and that they will agree to execute whatever paperwork is necessary to effectuate their agreement.

iii.      Steven Zinnel agreed that any and all amounts paid from the TD Ameritrade IRA which are paid to the USA in satisfaction of the Agreed Amount pursuant to the terms of the settlement in this matter are Steven Zinnel's sole responsibility and not David Zinnel's [Transcript 5:12-13, 5:19-21].

iv.      After payment of any amounts from the TD Ameritrade IRA to the USA pursuant to the terms of the settlement, all such amounts paid to the USA are to apply as a credit against any interest Steven Zinnel has as a beneficiary under the Castana Trust [Transcript 10:10-14].

5.      Steven Zinnel agreed to all matters stated on the record in the transcript of settlement proceedings [Transcript 21:3-17, 22:16-18], including the execution of any documents to assure any remaining balance of the TD Ameritrade IRA account is transferred to and becomes an asset of the Castana Trust [Transcript 22:6-15].

6.      David Zinnel agreed to all terms stated on the record [Transcript 25:9-11].

7.      The USA agreed to all terms stated on the record [Transcript 25:15-19].

8.      TD Ameritrade is not to distribute any proceeds from the TD Ameritrade IRA until it gets an order from the federal court as to what the federal government is entitled to collect under the terms of the settlement [Transcript 7:6-8] and following the

correct copy of the Transcript is attached as **Exhibit A** to the Declaration of K. Greg Peterson, Esq. ("**Peterson Declaration**"), served and filed concurrently herewith.



1   satisfaction of payment to the USA of the Agreed Amount from the TD Ameritrade IRA,

2   any remaining funds shall not be distributed by TD Ameritrade absent a court order or

3   further agreement of Steven Zinnel and David Zinnel [Transcript 12:25-13:4, 13:6-13,

4   13:20-14:1].

5        9.    The USA agreed to a stay of the related action (2021-mc-00143) involving

6   garnishment of Steven's interest in any assets of the Castana Trust [Transcript 7:14-17]

7   and pending the determination of the USA's entitlement to fully satisfy the Agreed

8   Amount from the TD Ameritrade IRA.  The stay of the Related Action is for all purposes

9   including discovery, with all dates vacated [Transcript 27:11-23].  If the USA is able to

10  fully satisfy the Agreed Amount from the TD Ameritrade IRA account, the USA has

11  agreed this will fully resolve all of its claims against Steven, to dismiss the Castana Trust

12  action (2021-mc-00143) and to remove any and all liens from any Castana Trust real

13  property [Transcript 7:18-21, 11:6-17, 19:14-25].

14       10.   Notwithstanding his right to an accounting, and pending the resolution of

15  matters involving the USA's garnishment of the TD Ameritrade IRA, Steven Zinnel

16  agreed he will not file any petitions in the Probate Court seeking, among other things,

17  any distributions from the Castana Trust or liquidations of real or personal property

18  [Transcript 8:7-12].

19       11.   On June 6, 2022, and in reliance on the above-referenced agreements,

20  David Zinnel dismissed his third-party claims in this action.

21       12.   On June 22, 2022, counsel for David Zinnel sent Steven Zinnel via email a

22  draft Stipulation and Order regarding the disposition of the TD Ameritrade IRA Account.

23  (Peterson Declaration, Exhibits B and C). Steven Zinnel has indicated he refuses to sign

24  the Stipulation.

25       **13.   On June 30, 2022, Steven Zinnel filed Objections to Magistrate Judge's**

26  **Findings and Recommendations (ECF 138) that included language indicating the "never**

27  **agreed to a stipulation of any remaining funds after full payment of $1,163,056.06 has**

28

KGP

C.GREG PETERSON
A PROFESSIONAL LAW CORPORATION

1  been made to the United States." (Objection 17:11-12). David Zinnel considers this a

2  complete rejection of his settlement with Steven Zinnel.

POINTS AND AUTHORITIES

4         14.   Where an action remains pending and the federal court retains jurisdiction,

5  either party may move for an order to enforce a settlement agreement. *Golden v.*

6  *California Emergency Physicians Medical Group* (9th Cir 2015) 782 F 3rd 1083, 1088.

7         15.   There is no need for an evidentiary hearing where the parties have made

8  an oral settlement on the record in open court. The court may require the parties to

9  comply with their representations without holding a hearing. *Doi v. Halekulani Corp.* (9th

10  Cir 2002) 276 F.3d 1131, 1138. Here, a settlement between David Zinnel and Steven

11  Zinnel was clearly entered into on June 3, 2022, and placed on the record before Judge

12  Newman.

13         16.   Finally, a party may, on a noticed motion, be sanctioned for refusing to

14  sign a written settlement that embodies terms orally agreed to before the court: "An

15  agreement announced on the record becomes binding even if a party has a change of

16  heart after [he or she] agreed to its terms but before the terms are reduced to writing."

17  *Doi v. Halekulani*, *supra*. Here, Steven Zinnel has refused to sign a stipulation pertaining

18  to the Parties' agreement pertaining to the disposition of the TD Ameritrade IRA account,

19  and monetary sanctions against Steven Zinnel are therefore warranted. As set forth in

20  the Declaration of K Greg Peterson Esq., monetary sanctions in the amount of $1,600

21  represent the reasonable attorney's fees incurred in connection with the present motion

22  and are therefore appropriate.

CONCLUSION

24         WHEREFORE DAVID ZINNEL, Successor Trustee of the Castana Trust, dated

25  March 4, 2009, prays for an order or orders from this Court as follows:

26         1.   That this Court sign the attached Stipulation on behalf of Defendant and

27  Judgment Debtor, STEVEN ZINNEL to the settlement made in this matter on June 3,

28  2022, in open court before Chief Magistrate Judge Kendall J. Newman.



MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO ENFORCE
SETTLEMENT AGREEMENT AND FOR MONETARY SANCTIONS

2.      That monetary sanctions in the amount of $1,600 and representing the reasonable attorneys' fees of the other settling party, David Zinnel, are herewith imposed against Steven Zinnel for his refusal to sign the Stipulation notwithstanding his agreement as part of the above-referenced settlement to sign any documentation related thereto.

3.      Assuming the USA prevails in its garnishment action against Steven Zinnel, and only after the USA has so prevailed, any and all amounts paid in satisfaction of the USA's restitution judgment against Steven Zinnel, including criminal monetary penalties and litigation expenses which shall not exceed $1,013,056.06, are Steven Zinnel's sole personal responsibility and come from his personal interest in the TD Ameritrade IRA;

4.      Any and all amounts remaining in the TD Ameritrade IRA after the USA has recovered in this garnishment action against Steven Zinnel's personal interest shall become the property of David Zinnel in his capacity as trustee of the Castana Trust, and TD Ameritrade shall either convert the remaining balance in the existing TD Ameritrade IRA to an account held by David Zinnel in said capacity or TD Ameritrade shall transfer the balance of the account to another financial institution in care of "David Zinnel, Successor Trustee of the Castana Trust" and pursuant to written instructions provided by David Zinnel;

5.      Any and all amounts paid in satisfaction of the USA's restitution judgment against Steven Zinnel, including criminal monetary penalties and litigation expenses from the TD Ameritrade IRA, shall apply as a credit against any and all amounts Steven Zinnel has as a beneficiary of the Castana Trust and for purposes of final distribution of the assets of the Castana Trust;

6.      Assuming the USA prevails in its garnishment action in satisfaction its restitution judgment against Steven Zinnel, including criminal monetary penalties and litigation expenses which are not to exceed $1,013,056.06, TD Ameritrade, at the written direction of David Zinnel shall either convert the remaining balance in the existing TD



-6-

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF  MOTION TO ENFORCE
SETTLEMENT AGREEMENT AND FOR MONETARY SANCTIONS

1   Ameritrade IRA to an account held by "David Zinnel, Successor Trustee of the Castana

2   Trust" or TD Ameritrade will transfer the balance of the account to another financial

3   institution in care of "David Zinnel, Successor Trustee of the Castana Trust" and

4   pursuant to written instructions provided by David Zinnel; and

5       7.      Pending the resolution of the USA's garnishment action against Steven

6   Zinnel, and notwithstanding his right to an accounting, Steven Zinnel shall not file any

7   petitions in the Probate Court seeking or concerning, among other things, any

8   distributions from the Castana Trust or liquidations of real or personal property.

9

10  Dated: July 6, 2022                    K. GREG PETERSON, a Professional
                                           Law Corporation
11

12

13                                         By: _____
                                               K. Greg Peterson, Esq.
14                                             Attorney for DAVID ZINNEL, Successor
                                               Trustee of The Castana Trust, Dated March 4,
15                                             2009

16

17

18

19

20

21

22

23

24

25

26

27

28


K. GREG PETERSON
A PROFESSIONAL LAW CORPORATION

STIPULATION AND ORDER RE DISPOSITION OF REMAINING
BALANCE OF TD AMERITRADE IRA ACCOUNT (*0163)
PURSUANT TO SETTLEMENT AGREEMENT

1   K. Greg Peterson, Esq. (SBN: 118287)
    K. GREG PETERSON, a Professional Law Corporation
2   455 Capitol Mall, Suite 325
3   Sacramento, California 95814
    Telephone:   (916) 443-3010
4   Facsimile:   (916) 492-2680
    Email:       greg@kgregpeterson.com
5
6   Attorney for Third-Party Claimant  DAVID ZINNEL

7   Steven Zinnel
    420 S. Center Street
8   Orange, CA 92866
9   PRO SE

10              IN THE UNITED STATES DISTRICT COURT

11                EASTERN DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA          )   Case No.: 2:21-mc-00098 TLN AC
                                      )
13          Plaintiff,                )   **STIPULATION AND ORDER RE**
                                      )   **DISPOSITION OF REMAINING**
14  v.                                )   **BALANCE OF TD AMERITRADE IRA**
                                      )   **ACCOUNT (*0613) PURSUANT TO**
15  STEVEN ZINNEL                     )   **SETTLEMENT AGREEMENT**
                                      )
16          Defendant and Judgment Debtor.  )   Case No.: 2:21-mc-00143-TLN-AC
17                                    )   (Related Case)
                                      )
18  ─────────────────────────        )
                                      )
19  DAVID ZINNEL, SUCCESSOR           )
    TRUSTEE OF THE CASTANA TRUST,     )
20  DATED MARCH 4, 2009,              )
                                      )
21          Garnishee.                )
                                      )
22
23
24      IT IS HEREBY STIPULATED AND AGREED UPON by and between Third-Party

25  DAVID ZINNEL, by and through K. GREG PETERSON, ESQ., his attorney of record,

26  and Debtor STEVEN ZINNEL, appearing Pro Se, as follows:

27  / / /

28  / / /



-1-
STIPULATION AND ORDER RE DISPOSITION OF REMAINING BALANCE OF TD AMERITRADE IRA
ACCOUNT (*0613) PURSUANT TO SETTLEMENT AGREEMENT

RECITALS

1       This action involves an Application for Writ of Garnishment filed on April 2, 2021, by Plaintiff UNITED STATES OF AMERICA ("**USA**") in connection with criminal monetary penalties totaling $3,014,294 assessed against Debtor STEVEN ZINNEL ("**Steven**") in criminal case number 2:11–CR–00234–TLN;

       The Garnishee, TD AMERITRADE CLEARING, INC. ("**TD Ameritrade**"), responded in this action by disclosing its possession of Rollover IRA Accounts 787–727536 and 72–830613 (together, the "**TD Ameritrade IRA**") in which it claims Steven has an interest;

       Third Party Claimant DAVID ZINNEL ("**David**"), who was served with a copy of the USA's Application for Writ of Garnishment responded in his capacity as Successor Trustee of The Castana Trust, Dated March 4, 2009 (the "**Castana Trust**") and in his capacity as a 50% beneficiary of the Castana Trust by claiming an interest in the entirety of the TD Ameritrade IRA as an asset of the Castana Trust; and

       On June 3, 2022, Steven and David entered into a settlement agreement with Plaintiff USA that was placed on the record before Chief Magistrate Judge Kendall J. Newman.  As a material part of that settlement agreement Steven and David have agreed as follows:

       1.    David agreed to dismiss his third-party claims and withdraw any claims of fraud or undue influence in the USA's Application for Writ of Garnishment proceedings, in exchange for the following:

       A.    Assuming it prevails in this garnishment action, the USA agreed to limit the total amount of its criminal monetary penalties owed by Steven to $1,013,056.06 ($513,056.06 restitution; $500,000.00 penalty) and its litigation surcharge



-2-

STIPULATION AND ORDER RE DISPOSITION OF REMAINING BALANCE OF TD AMERITRADE IRA
ACCOUNT (*0613) PURSUANT TO SETTLEMENT AGREEMENT

1  to $150,000.00, for a total amount of $1,163,056.06 (the "**Agreed Amount**") which the

2  USA shall seek to recover from the TD Ameritrade IRA account [Transcript 6:15][1];

3        B.     Assuming the USA is able to recover the Agreed Amount from the

4  TD Ameritrade IRA, David is then entitled to everything that remains in the TD

5  Ameritrade IRA [Transcript 5:22-6:5] as an asset of the Castana Trust [Transcript 6:19-

6  22, 9:20-21], and any balance remaining is to be sent to the Castana Trust [Transcript

7  7:10] or the account may be converted to a Castana Trust account [Transcript 7:11-12].

8  Steven and David agreed that any remaining balance of the TD Ameritrade IRA will be a

9  Castana Trust asset and that they will agree to execute whatever paperwork is

10 necessary to effectuate their agreement [Transcript 15:23-16:3, 16:7-12, 26:13-18];

11       C.     Steven agreed that any and all amounts paid from the TD

12 Ameritrade IRA which are paid to the USA in satisfaction of the Agreed Amount pursuant

13 to the terms of the settlement in this matter are Steven's sole responsibility and not

14 David's [Transcript 5:12-13, 5:19-21]; and

15       D.     After payment of any amounts from the TD Ameritrade IRA to the

16 USA pursuant to the terms of the settlement, all such amounts paid to the USA are to

17 apply as a credit against any interest Steven has as a beneficiary under the Castana

18 Trust [Transcript 10:10-14];

19     2.     Steven agreed to all matters stated on the record in the transcript of

20 settlement proceedings [Transcript 21:3-17, 22:16-18], including the execution of any

21 documents to assure any remaining balance of the TD Ameritrade IRA account is

22 transferred to and becomes an asset of the Castana Trust [Transcript 22:6-15];

23     3.     David agreed to all terms stated on the record [Transcript 25:9-11];

24     4.     The USA agreed to all terms stated on the record [Transcript 25:15-19];

25

26 _____

27 [1] All references to Transcript are to the Transcript of Proceedings of the Settlement
Conference held on June 3, 2022, before the Hon. Kendall J Newman, Chief Magistrate

28 Judge in this matter and as transcribed Thresha Spencer, CSR (**ECF 134**).



KGP

C.GREG PETERSON

A PROFESSIONAL LAW CORPORATION

-3-

STIPULATION AND ORDER RE DISPOSITION OF REMAINING BALANCE OF TD AMERITRADE IRA
ACCOUNT (*0613) PURSUANT TO SETTLEMENT AGREEMENT

5.     TD Ameritrade is not to distribute any proceeds from the TD Ameritrade IRA until it gets an order from the federal court as to what the federal government is entitled to collect under the terms of the settlement [Transcript 7:6-8] and following the satisfaction of payment to the USA of the Agreed Amount from the TD Ameritrade IRA, any remaining funds shall not be distributed by TD Ameritrade absent a court order or further agreement of Steven and David [Transcript 12:25-13:4, 13:6-13, 13:20-14:1];

6.     The USA agreed to a stay of the related action (2021-mc-00143) involving garnishment of Steven's interest in any assets of the Castana Trust [Transcript 7:14-17] and pending the determination of the USA's entitlement to fully satisfy the Agreed Amount from the TD Ameritrade IRA.  The stay of the Related Action is for all purposes including discovery, with all dates vacated [Transcript 27:11-23].  If the USA is able to fully satisfy the Agreed Amount from the TD Ameritrade IRA account, the USA has agreed this will fully resolve all of its claims against Steven, to dismiss the Castana Trust action (2021-mc-00143) and to remove any and all liens from any Castana Trust real property [Transcript 7:18-21, 11:6-17, 19:14-25];

7.     That notwithstanding his right to an accounting, and pending the resolution of matters involving the USA's garnishment of the TD Ameritrade IRA, Steven agreed he will not file any petitions in the Probate Court seeking, among other things, any distributions from the Castana Trust or liquidations of real or personal property [Transcript 8:7-12]; and

8.     On June 6, 2022, and in reliance on the above-referenced agreements, David dismissed his third-party claims in this action.

STIPULATION

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED TO by Third-Party Claimant DAVID ZINNEL and Debtor STEVEN ZINNEL, Defendant, that

On the basis of their settlement agreement made and placed on the record before this Court in the above action, Steven and David agree to the entry of an order by this Court as follows:

-4-

STIPULATION AND ORDER RE DISPOSITION OF REMAINING BALANCE OF TD AMERITRADE IRA ACCOUNT (*0613) PURSUANT TO SETTLEMENT AGREEMENT

1.    Assuming the USA prevails in its garnishment action against Steven, and only after the USA has so prevailed, any and all amounts paid in satisfaction of the USA's restitution judgment against Steven, including criminal monetary penalties and litigation expenses which shall not exceed $1,013,056.06, are Steven's sole personal responsibility and come from his personal interest in the TD Ameritrade IRA;

2.    Any and all amounts remaining in the TD Ameritrade IRA after the USA has recovered in this garnishment action against Steven's personal interest shall become the property of David in his capacity as trustee of the Castana Trust, and TD Ameritrade shall either convert the remaining balance in the existing TD Ameritrade IRA to an account held by David in said capacity or TD Ameritrade shall transfer the balance of the account to another financial institution in care of "David Zinnel, Successor Trustee of the Castana Trust" and pursuant to written instructions provided by David;

3.    Any and all amounts paid in satisfaction of the USA's restitution judgment against Steven, including criminal monetary penalties and litigation expenses from the TD Ameritrade IRA, shall apply as a credit against any and all amounts Steven has as a beneficiary of the Castana Trust and for purposes of final distribution of the assets of the Castana Trust;

4.    Assuming the USA prevails in its garnishment action in satisfaction its restitution judgment against Steven, including criminal monetary penalties and litigation expenses which are not to exceed $1,013,056.06, TD Ameritrade, at the written direction of David shall either convert the remaining balance in the existing TD Ameritrade IRA to an account held by "David Zinnel, Successor Trustee of the Castana Trust" or TD Ameritrade will transfer the balance of the account to another financial institution in care of "David Zinnel, Successor Trustee of the Castana Trust" and pursuant to written instructions provided by David; and

5.    Pending the resolution of the USA's garnishment action against Steven, and notwithstanding his right to an accounting, Steven shall not file any petitions in the



STIPULATION AND ORDER RE DISPOSITION OF REMAINING BALANCE OF TD AMERITRADE IRA ACCOUNT (*0613) PURSUANT TO SETTLEMENT AGREEMENT

1  Probate Court seeking or concerning, among other things, any distributions from the

2  Castana Trust or liquidations of real or personal property.

3      IT IS SO STIPULATED.

4

5  Dated: June 27, 2022

6                                    _____
                                     DAVID ZINNEL, Third-Party Claimant,
7                                    Successor Trustee and Residuary Beneficiary

8  Dated: June ___, 2022

9                                    _____
                                     STEVEN ZINNEL, PRO SE
10

11 APPROVED AS TO FORM ONLY.

12 Dated: June 27th, 2022            K. GREG PETERSON, a Professional
                                     Law Corporation
13

14

15                                   By: _____
16                                       K. Greg Peterson, Esq.
                                     Attorney for DAVID ZINNEL, Third-Party
17                                   Claimant, Successor Trustee and Residuary
                                     Beneficiary
18

19                      **ORDER**

20      The Court, having received, read, and considered the stipulation of the Third-

21 Party Claimant DAVID ZINNEL and Debtor STEVEN ZINNEL (the "Parties"), and good

22 cause appearing, hereby adopts the stipulation of the Parties in its entirety as its order,

23 as follows:

24      1.     Assuming the USA prevails in its garnishment action against Defendant

25 STEVEN ZINNEL ("Steven"), and only after Plaintiff UNITED STATES OF AMERICA

26 ("USA") has so prevailed, any and all amounts paid in satisfaction of the USA's

27 restitution judgment against Steven, including criminal monetary penalties and litigation

28 expenses which shall not exceed $1,013,056.06, are Steven's sole personal

---



STIPULATION AND ORDER RE DISPOSITION OF REMAINING BALANCE OF TD AMERITRADE IRA
ACCOUNT (*0613) PURSUANT TO SETTLEMENT AGREEMENT

1  responsibility and come from his personal interest in TD Ameritrade Rollover IRA

2  Accounts 787–727536 and 72–830613 (together, the **"TD Ameritrade IRA"**);

3      2.    Any and all amounts remaining in the TD Ameritrade IRA after the USA

4  has recovered in this garnishment action against Steven Zinnel's personal interest shall

5  become the property of DAVID ZINNEL (**"David"**) in his capacity as Trustee of the

6  CASTANA TRUST, DATED MARCH 4, 2009 (the "**Castana Trust**"), and TD Ameritrade

7  shall either convert the remaining balance in the existing TD Ameritrade IRA to an

8  account held by David Zinnel in said capacity or TD Ameritrade shall transfer the

9  balance of the account to another financial institution in care of "David Zinnel, Successor

10  Trustee of the Castana Trust" and pursuant to written instructions provided by David;

11      3.    Any and all amounts paid in satisfaction of the USA's restitution judgment

12  against Steven, including criminal monetary penalties and litigation expenses from the

13  TD Ameritrade IRA, shall apply as a credit against any and all amounts Steven has as a

14  beneficiary of the Castana Trust and for purposes of final distribution of assets of the

15  Castana Trust;

16      4.    Assuming the USA prevails in its garnishment action in satisfaction its

17  restitution judgment against Steven,. including criminal monetary penalties and litigation

18  expenses which are not to exceed $1,013,056.06, TD Ameritrade, at the written direction

19  of David, shall either convert the remaining balance in the existing TD Ameritrade IRA to

20  an account held by "David Zinnel, Successor Trustee of the Castana Trust" or TD

21  Ameritrade will transfer the balance of the account to another financial institution in care

22  of "David Zinnel, successor trustee of the Castana Trust" and pursuant to written

23  instructions provided by David; and

24      5.    Pending the resolution of the USA's garnishment action against Steven, ,

25  and notwithstanding his right to an accounting, Steven shall not file any petitions in the

26  Probate Court seeking or concerning, among other things, any distributions from the

27  Castana Trust or liquidations of real or personal property.

28  / / /




STIPULATION AND ORDER RE DISPOSITION OF REMAINING BALANCE OF TD AMERITRADE IRA
ACCOUNT (*0613) PURSUANT TO SETTLEMENT AGREEMENT

1        IT IS SO ORDERED.

2

3   Dated: _____              _____

4                                          Troy L. Nunley
                                           United States District Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



-8-

STIPULATION AND ORDER RE DISPOSITION OF REMAINING BALANCE OF TD AMERITRADE IRA
ACCOUNT (*0613) PURSUANT TO SETTLEMENT AGREEMENT

1

## **PROOF OF SERVICE**

2

I, Karen Traugh, do certify and declare:

3

I am a resident of the State of California and over the age of eighteen years, and

4

not a party to the within action. My business address is 455 Capitol Mall, Suite 325,

5

Sacramento, California 95814.On July 6, 2022, I served the within documents:

6

**NOTICE OF MOTION AND MOTION FOR TO ENFORCE**

7

**SETTLEMENT AGREEMENT AND FOR MONETARY SANCTIONS**

8

X      **BY MAIL:** by placing the document(s) listed above in a sealed envelope

9

addressed to the person shown below and placing the envelope for
collection and mailing following our ordinary business practices. I am

10

readily familiar with this business's practice for collecting and processing
correspondence for mailing. On the same day that correspondence is

11

placed for collection and mailing, it is deposited in the ordinary course of
business with the United States Postal Service, in a sealed envelope with

12

postage prepaid.

13

Steven Zinnel                              Pro Se Defendant/Judgment Debtor

14

11 Verdin Lane

15

Aliso Viejo, CA 92656
firsthalfsteve@gmail.com

16

I declare under penalty of perjury under the laws of the United States that the

17

foregoing is true and correct. Executed on July 6, 2022, at Sacramento, California.

18

19

20

Karen Traugh

21

22

23

24

25

26

27

28

-8-

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF  MOTION TO ENFORCE
SETTLEMENT AGREEMENT AND FOR MONETARY SANCTIONS

KGP
C. GREG PETERSON
A PROFESSIONAL LAW CORPORATION

DE-111

| ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO.: 118287 | FOR COURT USE ONLY |
|---|---|

NAME: K. Greg Peterson, Esq.
FIRM NAME: K. Greg Peterson, A Professional Law Corporation
STREET ADDRESS: 455 Capitol Mall, Suite 325
CITY: Sacramento   STATE: CA   ZIP CODE: 95814
TELEPHONE NO.: 915-443-3010   FAX NO.: 916-492-2680
E-MAIL ADDRESS: greg@kgregpeterson.com
ATTORNEY FOR (name): Jennifer Zinnel, Petitioner

**FILED**
**Superior Court Of California**
**Sacramento**
**03/23/2023**
ndelrosario
By_____ , Deputy
**Case Number:**
**34-2023-00336772**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO
STREET ADDRESS: 3341 Power Inn Road
MAILING ADDRESS: 3341 Power Inn Road
CITY AND ZIP CODE: Sacramento, CA 95826
BRANCH NAME: William R. Ridgeway Family Relations Courthouse

ESTATE OF (name): David P. Zinnel
                                                            DECEDENT

| PETITION FOR | ☐ Probate of ☐ Lost Will and for Letters Testamentary | CASE NUMBER: |
|---|---|---|

☐ Probate of ☐ Lost Will and for Letters of Administration with Will Annexed
☒ Letters of Administration
☐ Letters of Special Administration ☐ with general powers
☒ Authorization to Administer Under the Independent Administration of Estates Act ☐ with limited authority

| HEARING DATE AND TIME: 8-15-2023 9:00 Am | DEPT.: 129 |
|---|---|

1. Publication will be in (specify name of newspaper): The Daily Recorder
   a. ☐ Publication requested.
   b. ☒ Publication to be arranged.

2. **Petitioner** (name each):
   Jennifer Zinnel

   **requests that**
   a. ☐ decedent's will and codicils, if any, be admitted to probate.
   b. (name): Michael Brumbaugh                                      be appointed
      (1) ☐ executor
      (2) ☐ administrator with will annexed
      (3) ☒ administrator
      (4) ☐ special administrator ☐ with general powers
      and Letters issue upon qualification.
   c. ☒ full ☐ limited authority   be granted to administer under the Independent Administration of Estates Act.
   d. (1) ☒ bond not be required for the reasons stated in item 3e.
      (2) ☐ $_____ bond be fixed. The bond will be furnished by an admitted surety insurer or as otherwise provided by law. (Specify reasons in Attachment 2 if the amount is different from the maximum required by Prob. Code, § 8482.)
      (3) ☐ $_____ in deposits in a blocked account be allowed. Receipts will be filed. (Specify institution and location):

3. a. Decedent died on (date): October 14, 2022   at (place): Citrus Heights, CA
      (1) ☒ a resident of the county named above.
      (2) ☐ a nonresident of California and left an estate in the county named above located at (specify location permitting publication in the newspaper named in item 1):

   b. ☐ Decedent was a citizen of a country other than the United States (specify country):

   c. Street address, city, and county of decedent's residence at time of death (specify):
      6939 Lisa Marie Way.
      Carmichael, CA 95608

Page 1 of 4

| Form Adopted for Mandatory Use | **PETITION FOR PROBATE** | Probate Code, §§ 8002, 10450; |
|---|---|---|
| Judicial Council of California | **(Probate—Decedents Estates)** | www.courts.ca.gov |
| DE-111 [Rev. July 1, 2017] | | |

**EXHIBIT 5**

**DE-111**

| ESTATE OF *(name)*: | David P. Zinnel | CASE NUMBER: |
|---|---|---|
| | DECEDENT | |

3. d. **Character and estimated value of the property of the estate** *(complete in all cases):*

    (1) Personal property:      $883,000

    (2) Annual gross income from

        (a) real property:        $

        (b) personal property:        $

    (3) **Subtotal** *(add (1) and (2)):*      $ 883,000

    (4) Gross fair market value of real property:      $ 595,100

    (5) (Less) Encumbrances:      ($ 400,000      )

    (6) Net value of real property:      $ 195,100

    (7) **Total** *(add (3) and (6)):*      $ 1,078,100

  e. (1) ☐ Will waives bond.   ☐ Special administrator is the named executor, and the will waives bond.

    (2) ☐ All beneficiaries are adults and have waived bond, and the will does not require a bond. *(Affix waiver as Attachment 3e(2).)*

    (3) ☐ All heirs at law are adults and have waived bond. *(Affix waiver as Attachment 3e(3).)*

    (4) ☒ Sole personal representative is a corporate fiduciary or an exempt government agency.

  f. (1) ☒ Decedent died intestate.

    (2) ☐ Copy of decedent's will dated:     ☐ codicil dated   *(specify for each):*

        are affixed as Attachment 3f(2). *(Include typed copies of handwritten documents and English translations of foreign-language documents.)*

        ☐ The will and all codicils are self-proving (Prob. Code, § 8220).

    (3) ☐ The original of the will and/or codicil identified above has been lost. *(Affix a copy of the lost will or codicil or a written statement of the testamentary words or their substance in Attachment 3f(3), and state reasons in that attachment why the presumption in Prob. Code, § 6124 does not apply.)*

  g. **Appointment of personal representative** *(check all applicable boxes):*

    (1) Appointment of executor or administrator with will annexed:

        (a) ☐ Proposed executor is named as executor in the will and consents to act.

        (b) ☐ No executor is named in the will.

        (c) ☐ Proposed personal representative is a nominee of a person entitled to Letters. *(Affix nomination as Attachment 3g(1)(c).)*

        (d) ☐ Other named executors will not act because of  ☐ death  ☐ declination  ☐ other reasons *(specify):*

        ☐ Continued in Attachment 3g(1)(d).

    (2) Appointment of administrator:

        (a) ☒ Petitioner is a person entitled to Letters. *(If necessary, explain priority in Attachment 3g(2)(a).)*

        (b) ☐ Petitioner is a nominee of a person entitled to Letters. *(Affix nomination as Attachment 3g(2)(b).)*

        (c) ☒ Petitioner is related to the decedent as *(specify):* Spouse

    (3) ☐ Appointment of special administrator requested. *(Specify grounds and requested powers in Attachment 3g(3).)*

    (4) ☐ Proposed personal representative would be a successor personal representative.

  h. Proposed personal representative is a

    (1) ☒ resident of California.

    (2) ☐ nonresident of California *(specify permanent address):*

    (3) ☒ resident of the United States.

    (4) ☐ nonresident of the United States.

**PETITION FOR PROBATE**
**(Probate—Decedents Estates)**

| | | **DE-111** |
|---|---|---|
| ESTATE OF *(name):* | David P. Zinnel **DECEDENT** | CASE NUMBER: |

4. ☐ Decedent's will does not preclude administration of this estate under the Independent Administration of Estates Act.

5. a. Decedent was survived by *(check items (1) or (2), and (3) or (4), and (5) or (6), and (7) or (8))*

    (1) ☒ spouse.

    (2) ☐ no spouse as follows:

        (a) ☐ divorced or never married.

        (b) ☐ spouse deceased.

    (3) ☐ registered domestic partner.

    (4) ☒ no registered domestic partner. *(See Fam. Code, § 297.5(c); Prob. Code, §§ 37(b), 6401(c), and 6402.)*

    (5) ☒ child as follows:

        (a) ☒ natural or adopted.

        (b) ☐ natural adopted by a third party.

    (6) ☐ no child.

    (7) ☐ issue of a predeceased child.

    (8) ☒ no issue of a predeceased child.

  b. Decedent ☐ was ☒ was not survived by a stepchild or foster child or children who would have been adopted by decedent but for a legal barrier. *(See Prob. Code, § 6454.)*

6. *(Complete if decedent was survived by (1) a spouse or registered domestic partner but no issue (only a or b apply), or (2) no spouse, registered domestic partner, or issue. (Check the **first** box that applies):*

  a. ☒ Decedent was survived by a parent or parents who are listed in item 8.

  b. ☐ Decedent was survived by issue of deceased parents, all of whom are listed in item 8.

  c. ☐ Decedent was survived by a grandparent or grandparents who are listed in item 8.

  d. ☐ Decedent was survived by issue of grandparents, all of whom are listed in item 8.

  e. ☐ Decedent was survived by issue of a predeceased spouse, all of whom are listed in item 8.

  f. ☐ Decedent was survived by next of kin, all of whom are listed in item 8.

  g. ☐ Decedent was survived by parents of a predeceased spouse or issue of those parents, if both are predeceased, all of whom are listed in item 8.

  h. ☐ Decedent was survived by no known next of kin.

7. *(Complete only if no spouse or issue survived decedent.)*

  a. ☐ Decedent had no predeceased spouse.

  b. ☐ Decedent had a predeceased spouse who

    (1) ☐ died not more than 15 years before decedent and who owned an interest in **real property** that passed to decedent,

    (2) ☐ died not more than five years before decedent and who owned **personal property** valued at $10,000 or more that passed to decedent, *(If you checked (1) or (2), check only the **first** box that applies):*

        (a) ☐ Decedent was survived by issue of a predeceased spouse, all of whom are listed in item 8.

        (b) ☐ Decedent was survived by a parent or parents of the predeceased spouse who are listed in item 8.

        (c) ☐ Decedent was survived by issue of a parent of the predeceased spouse, all of whom are listed in item 8.

        (d) ☐ Decedent was survived by next of kin of the decedent, all of whom are listed in item 8.

        (e) ☐ Decedent was survived by next of kin of the predeceased spouse, all of whom are listed in item 8.

    (3) ☐ neither (1) nor (2) apply.

8. Listed on the next page are the names, relationships to decedent, ages, and addresses, so far as known to or reasonably ascertainable by petitioner, of (1) all persons mentioned in decedent's will or any codicil, whether living or deceased; (2) all persons named or checked in items 2, 5, 6, and 7; and (3) all beneficiaries of a trust named in decedent's will or any codicil in which the trustee and personal representative are the same person.

**PETITION FOR PROBATE**
(Probate—Decedents Estates)

**DE-111**

| ESTATE OF *(name)*: | David P. Zinnel | CASE NUMBER: |
|---|---|---|
| | DECEDENT | |

8. | Name and relationship to decedent | Age | Address |
|---|---|---|
| Jennifer Zinnel - Spouse | 52 | 6939 Lisa Marie Way<br>Carmichael, CA 95608 |
| Joshua Zinnel - Son | Minor | 6939 Lisa Marie Way<br>Carmichael, CA 95608 |
| Katelynn Zinnel - Daughter | Minor | 6939 Lisa Marie Way<br>Carmichael, CA 95608 |
| Lester Keith Zinnel | 81 | 2459 Lakewood Drive<br>Prescott, AZ 86301 |

☐ Continued on Attachment 8.

9. Number of pages attached: ___1___

Date: 3.23.2023

K. Greg Peterson, Esq.
_____
(TYPE OR PRINT NAME OF ATTORNEY )

▶ _____
(SIGNATURE OF ATTORNEY ) *

* (Signatures of all petitioners are also required. All petitioners must sign, but the petition may be verified by any one of them (Prob. Code, §§ 1020, 1021; Cal. Rules of Court, rule 7.103).)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 3.23.2023

Jennifer Zinnel      JENNIFER ZINNEL
_____
(TYPE OR PRINT NAME OF PETITIONER)

▶ _____
(SIGNATURE OF PETITIONER)

_____
(TYPE OR PRINT NAME OF PETITIONER)

▶ _____
(SIGNATURE OF PETITIONER)

Signatures of additional petitioners follow last attachment.

DE-111 [Rev. July 1, 2017]

**PETITION FOR PROBATE**
**(Probate—Decedents Estates**

Page 4 of 4

**Personal Representative Nomination**

Petitioner is the Decedent's surviving spouse and hereby nominates licensed professional fiduciary Michael Brumbaugh of MBI Consulting, who has agreed to serve, as the Administrator for the Estate of David Zinnel.

1  K. Greg Peterson, Esq. (SBN: 118287)
2  K. GREG PETERSON, A PROFESSIONAL LAW CORPORATION
   455 Capitol Mall, Suite 325
3  Sacramento, California 95814
   Telephone:   (916) 443-3010
4  Facsimile:   (916) 492-2680
   Email:       greg@kgregpeterson.com
5
6  Attorney for Petitioner, JENNIFER ZINNEL

7
8                SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                       COUNTY OF SACRAMENTO

10                                    )  Case No.: 34-2016-00200990
                                      )
11                                    )  PETITION TO APPOINT SUCCESSOR
    IN THE MATTER OF:                 )  TRUSTEE OF THE CASTANA TRUST
12                                    )  DATED MARCH 4, 2009[PROBATE
        The Castana Trust, dated      )  CODE 17200(b)(10)]
13      March 4, 2009                 )
                                      )
14                                    )  Date: _____ 8-30 ,2023
                                      )
15                                    )  Time: 9:00am
16  _____)  Dept.: 129

17
18       Petitioner, JENNIFER ZINNEL, herewith petitions this Court to appoint a
19  successor trustee of the Castana Trust, as follows.

20                    I.    BACKGROUND FACTS
21       1.    The Castana Trust ("**Trust**") was established by ARDITH LOUISE FERRIS
22  on March 4, 2009. A true and correct copy of the Trust is attached hereto as **Exhibit A.**
23       2.    Ardith Louise Ferris was the original trustee of the Trust.
24       3.    Ardith Louise Ferris had two sons, DAVID P. ZINNEL and STEVE K.
25  ZINNEL. Petitioner is informed and believes that their father, LESTER KEITH ZINNEL,
26  divorced Ardith Louise Ferris on or before 1992, which is when he is believed to have
27  remarried. For that reason, and according to the Trust, Ardith Louise Ferris was
28  unmarried at the time the Trust was created.

---

                                    -1-
         PETITION TO APPOINT SUCCESSOR TRUSTEE [PROBATE CODE 17200(b)(10)]

**EXHIBIT 6**

1      4.    Ardith Louise Ferris died on September 21, 2016, and her son, Steve K.

2  Zinnel, became the successor trustee pursuant to Section 7.1 of the Trust.

3      5.    On April 6, 2017, this Court entered an Order Removing Trustee in this

4  action, removing Steve K. Zinnel as trustee of the Trust and appointing David P. Zinnel

5  as successor trustee of the Trust. A true and correct copy of the Order Removing

6  Trustee is attached hereto as **Exhibit B.**

7      6.    On October 14, 2022, David P. Zinnel died intestate, and the Trust currently

8  has no acting or named successor trustee. A true and correct copy of the Certificate of

9  Death of David P. Zinnel is attached hereto as **Exhibit C.**

10      7.    Petitioner was David P. Zinnel's wife at the time of his death and has filed a

11  Petition for Letters of Administration with this Court concurrently with this Petition. In her

12  Petition for Letters of Administration Petitioner has requested that MICHAEL

13  BRUMBAUGH be appointed Administrator of the estate of David P. Zinnel. Petitioner

14  and her two minor children, JOSHUA ZINNEL and KATELYNN ZINNEL, are the only

15  heirs who would be entitled to any distribution of assets from the intestate estate of David

16  P. Zinnel.

17      II.    <u>PROPOSED SUCCESSOR TRUSTEE – MICHAEL BRUMBAUGH</u>

18      8.    Petitioner requests that this Court appoint Michael Brumbaugh, who is a

19  California Licensed Professional Fiduciary (License # 875) as the successor trustee of

20  the Trust.

21      9.    Petitioner is informed and believes that Michael Brumbaugh has served this

22  Court as a Court-Appointed Referee and Receiver in many different matters, and as a

23  Trustee and Administrator of various trust and probate estates. His qualifications are set

24  forth in his Declaration which is being submitted concurrently with this Petition. As

25  indicated in his Declaration, Mike Brumbaugh has agreed to serve as Successor Trustee

26  of the Trust if appointed by this Court.

27      III.    <u>STIPULATION OF STEVE K. ZINNEL, BENEFICIARY</u>

28



C. GREG PETERSON
A PROFESSIONAL LAW CORPORATION

PETITION TO APPOINT SUCCESSOR TRUSTEE [PROBATE CODE 17200(b)(10)]

10.    Besides the Estate of David P. Zinnel, the only other named beneficiary of the Trust is Steve K. Zinnel, and Steve K. Zinnel has stipulated to the appointment of Michael Brumbaugh as successor trustee of the Trust. A Stipulation Re Appointment of Successor Trustee signed by Steve K. Zinnel is being filed concurrently with this Petition.

### IV.    REMAINING ADMINISTRATION OF TRUST

11.    The Trust assets are to be distributed to the two sons of Ardith Louise Ferris who are Steve K. Zinnel and David P. Zinnel. Because David is now deceased his share of the Trust estate will have to be administered in accordance with the Petition for Letters of Administration filed by Petitioner, and Petitioner is expected to ultimately benefit from that administration.

12.    There are two pieces of real property that are held by the office of the trustee of the trust and titled in the name of the Trust:

    a.    1302 Emerald St., Onawa, IA 51040; and

    b.    2428 Glenfaire Dr., Rancho Cordova, CA 95670.

13.    The only other significant asset of the Trust is the remaining balance of a TD Ameritrade IRA ("IRA account"). Pursuant to the terms of a settlement of the Federal Garnishment Action referenced below that was entered into on the record on June 3, 2022, between, among others, Steve K. Zinnel, David P. Zinnel, and the UNITED STATES OF AMERICA, and due to the fact of death of David P. Zinnel thereafter, the transfer of the IRA account to the Trust is being withheld pending further order of the US District Court for the Eastern District of California in the following case: United States of America vs. Steven Zinnel Case No. 2:21-mc-00098 TLN AC ("**Federal Garnishment Action**"). Specifically, the court in the Federal Garnishment Action is waiting for a successor trustee of the Trust to be appointed by this Court, and so that the IRA account can be distributed to the Trust.

14. Once the IRA account has been distributed to the Trust and a first and final accounting prepared, Petitioner is informed and believes that Michael Brumbaugh will file his first and final account, report and plan for distribution.

-3-

PETITION TO APPOINT SUCCESSOR TRUSTEE [PROBATE CODE 17200(b)(10)]

C.GREG PETERSON
A PROFESSIONAL LAW CORPORATION

1

V.    POINTS AND AUTHORITIES

2    15.    Petitioner, as an ultimate beneficiary of the Trust, may petition this Court to

3    appoint a trustee.  Prob C 17200(b)(10).

4

5

VI.    PERSONS ENTITLED TO NOTICE

6    Jennifer Zinnel - Petitioner/wife
7    6939 Lisa Marie Way
     Carmichael, CA 95608                    Steve K. Zinnel - Beneficiary/brother
8                                            11 Verdin Lane
                                             Aliso Viejo, CA 92656
     Katelynn Zinnel - Minor child/heir
9    6939 Lisa Marie Way
     Carmichael, CA 95608                    Michael Brumbaugh - Proposed
10                                           Successor Trustee
                                             P.O. Box 3100
11   Joshua Zinnel - Minor child/heir        Fair Oaks, CA 95628
     6939 Lisa Marie Way
12   Carmichael, CA 95608

13

VII.    PRAYER FOR RELIEF

14    WHEREFORE, Petitioner JENNIFER ZINNEL herewith prays for the following

15   relief from this Court and that this Court determines as follows:

16    1.    That all parties entitled to notice of this matter have been properly served

17   and provided with notice of these proceedings;

18    2.    That the Castana Trust, dated March 4, 2009, be determined to be a valid

19   and existing trust;

20    3.    That due to the death of the acting trustee, David P. Zinnel, that private

21   fiduciary Michael Brumbaugh be appointed to serve as the successor trustee of the

22   Castana Trust, dated March 4, 2009;

23    4.    That an accounting of the Trust shall be filed at the time Michael

24   Brumbaugh submits his first and final account, report and proposed plan of distribution;

25   and

26    5.    For such other and further relief as this Court deems just and necessary.

27   ///

28   ///

PETITION TO APPOINT SUCCESSOR TRUSTEE [PROBATE CODE 17200(b)(10)]

KGP

C.GREG PETERSON
A PROFESSIONAL LAW CORPORATION

1   Dated: March __ , 2023

2                                           Respectfully submitted,

3                                           K. GREG PETERSON, a Professional
                                            Law Corporation

4                                           By: _____

5                                                K. Greg Peterson, Esq., Attorney for
                                            JENNIFER ZINNEL, Petitioner

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



-5-

<u>VERIFICATION</u>

I, JENNIFER ZINNEL, Petitioner, declare:

I have read the foregoing PETITION TO APPOINT SUCCESSOR TRUSTEE [PROBATE CODE 17200(b)(10)] and know the contents thereof. I believe that the same is true of my own knowledge, except to those matters which are therein stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct and that this verification was executed on __*3.23*__, 2023.

Jennifer Zinnel

---

PETITION TO APPOINT SUCCESSOR TRUSTEE [PROBATE CODE 17200(b)(10)]

**EXHIBIT A**

05 03 2017 1200_1046426_1363

# CASTANA TRUST

# ARTICLE ONE

# CREATION OF TRUST

1.1 Parties. This trust agreement is made by Ardith Louise Ferris (the "settlor" and "trustee") of Sacramento County, California. The settlor hereby transfers and assigns to the trustee certain property (the "trust estate"), in trust, to be held, administered, and distributed as provided in this instrument.

1.2. Names of Trusts. The trusts created by this instrument shall be known collectively as the Castana Trust, and each separate trust created under this instrument shall be referred to by adding the name or designation of that separate trust as it appears in the appropriate section of this instrument.

1.3. Effective Date. This agreement shall be effective immediately on execution by all the parties.

1.4. Marital Status. The settlor is unmarried.

1.5. Identification of Living Children. The settlor has two living children:

| Name | Date of Birth |
|------|---------------|
| Steve K. Zinnel | 12/31/63 |
| David P. Zinnel | 2/18/70 |

Page 1

CASTANA TRUST

05 03 2017 1200_1046426_1364

1.6. <u>No Deceased Children.</u> The settlor has no deceased children.

1.7. <u>Definitions of Child, Children, and Issue.</u> As used in this instrument, the terms "child" and "children" refer to all persons referred to in California *Probate Code* § 26, as in effect at the time of execution of this instrument, and the term "issue" refers to all persons referred to in California *Probate Code* § 50, as in effect at the time of execution of this instrument.

## ARTICLE TWO
## TRUST ESTATE

2.1. <u>Definition of Trust Estate.</u> All property subject to this instrument from time to time is referred to as the "trust estate" and shall be held, administered, and distributed as provided in this instrument. The trustee shall hold, administer, and distribute the property described in any schedules of property (which are attached hereto and made a part of this trust instrument), any other property that may be hereafter subject to this trust, and the income and proceeds attributable to all such property, in accordance with the provisions of this instrument.

2.2. <u>Additions to Trust.</u> From time to time, the trustee may accept additions to this trust from any source. All such additions shall become part of the trust estate and shall be held, administered, and distributed in accordance with the terms of this instrument. That additional property shall become part of the trust estate on written acceptance of it by the trustee. Any additions to the trust shall be made by designating in writing the property to be added. However, the titling of any account, deed, or similar asset in the name of the trustee, as trustee of this trust, or any alternate or successor trustee acting under this instrument, shall be deemed to be a transfer to this trust. Any designation by a third

party, whether by will, deed, account title designation, or similar transfer, shall also be a transfer to the trust estate.

## ARTICLE THREE

## RIGHTS AND POWERS OF SETTLOR

3.1. <u>Power of Revocation and Amendment.</u> Any trust created by this instrument may be amended, revoked, or terminated by the settlor, in whole or in part, at any time during her lifetime. After the settlor's death, any trust created by this instrument shall be irrevocable and not subject to amendment.

3.2. <u>Method of Revocation or Amendment.</u> Any amendment, revocation, or termination of any trust created by this instrument shall be made by written instrument signed by the settlor and delivered to the trustee. An exercise of the power of amendment substantially affecting the duties, rights, and liabilities of the trustee shall be effective only if agreed to by the trustee in writing.

3.3. <u>Delivery of Property After Revocation.</u> After any revocation or termination, the trustee shall promptly deliver the designated property to the settlor.

3.4. <u>Trustee's Retention of Assets on Revocation.</u> In the event of any revocation of all or part of the trust, the trustee shall be entitled to retain sufficient assets to reasonably secure the payment of liabilities the trustee has lawfully incurred in administering the trust and any fees that have been earned by the trustee, until such time as those liabilities have been discharged and fees paid, unless the settlor indemnifies the trustee against loss or expense.

3.5. <u>Settlor's Power to Borrow From Trust Estate.</u> Notwithstanding any other provision in this instrument, during the settlor's lifetime, the settlor may borrow from the income or principal of the trust estate, with or without security, such amounts on such terms as the

05 03 2017 1200_1046426_1366

settlor specifies in a signed writing filed with the trustee.

3.6. <u>No Exercise of Rights and Powers of Settlor By Others.</u> The rights and powers of the settlor as provided in this instrument, including any power to amend, revoke, or terminate any trust created by this instrument, are personal to the settlor and may not be exercised by any other person or entity.

## ARTICLE FOUR

## DISTRIBUTIONS DURING SETTLOR'S LIFE

4.1. <u>Payment of Income During Settlor's Life.</u> So long as the settlor is living, the trustee shall pay to or apply for the benefit of the settlor all of the net income of the trust, in monthly or other convenient installments (but not less often than annually) as the settlor and the trustee may agree on from time to time.

4.2. <u>Distributions of Principal During Settlor's Lifetime.</u> From time to time during the settlor's lifetime, the trustee shall distribute to or apply for the benefit of the settlor as much of the principal of the trust as the trustee, in the trustee's discretion, deems proper for the settlor's comfort, welfare, and happiness. In exercising discretion, the trustee shall give the consideration that the trustee deems proper to all other income and resources then readily available to the settlor for use for these purposes and that are then known to the trustee. All decisions of the trustee regarding payments under this section, if any, are within the trustee's discretion and shall be final and incontestable by anyone.

4.3. <u>Distributions of Principal at Request of Settlor.</u> During the settlor's lifetime, the trustee shall distribute to the settlor such amounts from the principal of the trust, up to the whole thereof, as the settlor may from time to time request of the trustee in writing.

4.4. <u>Requests in Behalf of the Settlor Unable to Do So Personally.</u> If, at any time, the settlor is unable personally to make a request of the trustee to withdraw principal of the trust, the

Page 4

CASTANA TRUST

settlor's right to make the request may be exercised for or in her behalf by an attorney in fact who, at the time of the exercise, is duly appointed and acting for the settlor under a valid and enforceable durable power of attorney executed by the settlor under the Uniform Durable Power of Attorney Act, or any successor statute. If there is no such attorney in fact, then the trustee shall have the discretion to make any principal distribution to or for the benefit of the settlor that the settlor could have requested personally if she were able to do so. In making any principal distribution under this section (whether pursuant to a request by an attorney in fact or not), the trustee shall pay as much of the principal as the trustee, in the trustee's discretion, deems necessary for the settlor's health, education, support, and maintenance. The trustee shall have discretion to determine when the settlor is unable personally to request principal payments from the trustee for purposes of this section.

4.5. <u>Trustee's Power to Make Gifts at Direction of Settlor.</u> During the settlor's lifetime, the trustee shall distribute such sums of trust principal to such person or persons who are the natural objects of the settlor's bounty, as the settlor may direct in writing. In the event that the settlor is unable to direct the trustee in writing under this section due to incapacity, such direction may be made on the settlor's behalf by a duly authorized attorney in fact acting under a valid durable power of attorney executed by the settlor under the Uniform Durable Power of Attorney Act (or successor statute); provided, however, that the amount of such gifts pursuant to the direction of an attorney in fact to any one person in any one year shall not exceed the annual amount excluded from gift tax under Section 2503(b) of the Internal Revenue Code (or successor statute).

CASTANA TRUST

05 03 2017 1200_1046426_1368

# ARTICLE FIVE

## DISTRIBUTIONS AFTER SETTLOR'S DEATH

5.1. <u>Payment of Death Taxes, Debts, and Expenses on Statement From Personal Representative.</u> After the settlor's death, on receipt by the trustee of a written statement from the personal representative of the settlor's estate requesting that the trustee pay death taxes, debts, and expenses (as defined in Article Eight), with respect to any property in the settlor's estate, the trustee shall pay, either directly or to the personal representative, any amounts requested by the personal representative for those purposes, in the manner specified below. The trustee may rely on the personal representative's statement and shall not be liable for any act or omission by the personal representative in protesting or failing to protest the legality, propriety, or amount of the death taxes, debts, or expenses. If there is no personal representative, the trustee shall make the payments directly. Payments of debts and expenses shall be made by the trustee from the trust estate. All death taxes payable by reason of the settlor's death shall also be paid by the trustee from the trust estate.

5.2. <u>Trustee's Power to Defer Division or Distribution.</u> Whenever the trustee is directed to divide any part of the trust estate or distribute trust assets on the death of the settlor, the trustee may, in the trustee's discretion, defer actual division or distribution for such reasonable period of time as is needed to effectively identify, take possession of, value, divide, and distribute the assets of the trust. During this time of deferral, the trustee may manage the trust assets through a single administrative trust. The ability of the trustee to delay division or distribution shall not affect the vesting of interests, which shall be as of the date of death.

CASTANA TRUST

05 03 2017 1200_1046426_1369

5.3. <u>Distribution of specific trust assets.</u> On the settlor's death, the trustee is directed to distrib

the following specific assets:

See Exhibit 1 attached hereto.

Exhibit 1 attached hereto, which may be amended from time to time at the Settlor's sole discretion. To be effective and operative, the attached "Exhibit" 1 must be signed and dated by Ardith Ferris as the Settlor and Trustee. In the event of a conflict, the most recently signed and dated "Exhibit 1" is operative.

5.4. <u>Disposition of Remaining Trust Estate.</u> On the settlor's death, the remaining trust estate

shall be disposed of:

(a) If any children of the settlor survive her, the trustee shall divide the trust property into as many shares of equal market value as are necessary to create one share for each of the settlor's children who survive her and one share for each of the settlor's children who predecease her but who leave issue surviving her, as limited by subparagraph (f) **below.**

(b) Each share created for a deceased child shall be distributed to the then-living issue of that deceased child in the manner provided in California *Probate Code* § 246. If an individual issue of a deceased child has reached the age of 25 years at the death of the settlor, the trustee shall distribute that issue's share outright to that issue; if an individual issue of a deceased child has not reached the age of 25 years at the death of the settlor, the trustee shall continue to hold, administer, and distribute that issue's share in a separate trust for that issue according to the terms set forth in Article Six applicable to the Separate Share Trust for Issue.

Page 7

CASTANA TRUST

05 03 2017 1200_1046426_1370

(c) If none of the children of the settlor survive her, but the settlor leaves issue surviving, the trustee shall distribute the trust property to those issue, who are to take that property in the manner provided in California *Probate Code* § 246. If an individual issue has reached the age of 25 years at the death of the settlor, the trustee shall distribute that issue's share outright to that issue; if an individual issue has not reached the age of 25 years at the death of the settlor, the trustee shall continue to hold, administer, and distribute that issue's share in a separate trust for that issue according to the terms set forth in Article Six applicable to the Separate Share Trust for Issue.

(d) If none of the issue of the settlor survive her, the trust property shall be distributed outright to the settlor's heirs.

(e) Any business owned by settlor, regardless of the form of the business (i.e., sole proprietorship, Corporations, Limited Liability Companies) shall be immediately distributed free of trust to Settlor's heirs.

## ARTICLE SIX
## DISPOSITIVE PROVISIONS OF TRUST CREATED
## AFTER SETTLOR'S DEATH

6.1. <u>Spendthrift Clause:</u> The interests of the beneficiaries under this instrument are not transferable by voluntary or involuntary assignment or by operation of law, and shall be free from the claims of creditors and from attachment, execution, bankruptcy, and other

---

05 03 2017 1200_1046426_1371

legal process, to the maximum extent permitted by law. If any such transfer is made or attempted by or against any beneficiary, all further trust payments of income or principal or both to that beneficiary (and any right of that beneficiary to such payments) shall be suspended for a period of time or indefinitely (but in no case for longer than the term of the trust) as the trustee determines. In lieu of payments to that beneficiary, the trustee may apply so much of the trust income or principal or both to which the beneficiary would otherwise be entitled as the trustee deems necessary for the beneficiary's education and support. All trust income (to which the beneficiary would otherwise be entitled) not so applied shall in the discretion of the trustee be accumulated and added to trust at such time or times as the trustee deems proper.

## ARTICLE SEVEN

### TRUSTEE

7.1. <u>Settlor's Power to Designate Successor Trustees.</u> Initially, Settlor designates Steve K. Zinnel, Settlor's son as her Successor Trustee. However, at any time, the settlor may designate any suitable person or entity to act as a successor trustee if the trustee dies, becomes incapacitated, or is otherwise unable or unwilling to continue to act as trustee or co-trustee. Any designation under this section shall be made by a signed writing delivered to the person or entity designated as successor trustee or co-trustee. If more than one designation is made under this section, only the most recent designation shall be valid.

7.2. <u>Not Used.</u>

7.3. <u>Successor Trustees.</u> If the office of trustee becomes vacant by reason of death, incapacity, or any other reason, and no successor trustee or co-trustees have been designated under any

**Page 9**

CASTANA TRUST

other provision of this trust instrument, a new trustee or co-trustee shall be appointed by the court.

7.4. Definition of Trustee. Reference in this instrument to "the trustee" shall be deemed a reference to whoever is serving as trustee or co-trustees, and shall include alternate or successor trustees or co-trustees, unless the context requires otherwise.

7.5. Removal and Replacement of Trustee by Settlor. The settlor shall have the power, at any time and for any reason, with or without cause, to remove any trustee acting under this instrument, and notwithstanding any other provision of this instrument, designate another trustee to replace the removed trustee. Removal shall be effected by giving a written notice of removal to the trustee to be removed and to the designated successor. The removal shall become effective on the delivery to the settlor of a written acceptance of the trust by the successor trustee, and the settlor shall promptly notify the trustee being removed of the receipt of that acceptance.

7.6. Waiver of Bond. No bond or undertaking shall be required of any individual who serves as a trustee under this instrument.

7.7. Procedure for Resignation. Any trustee may resign at any time, without giving a reason for the resignation, by giving written notice, at least ninety (90) days before the time the resignation is to take effect, to the settlor, if living, to any other trustee then acting, to any persons authorized to designate a successor trustee, to all trust beneficiaries known to the trustee (or, in the case of a minor beneficiary, to the parent or guardian of that beneficiary) and to the successor trustee. A resignation shall be effective on written acceptance of the trust by the successor trustee.

7.8. General Powers of Trustee. To carry out the purposes of the trusts created under this instrument, and subject to any limitations stated elsewhere in this instrument, the trustee

CASTANA TRUST

05 03 2017 1200_1046426_1373

shall have all of the following powers, in addition to all of the powers now or hereafter conferred on trustees by law:

(a) With or without court authorization, sell (for cash or on deferred payments, and with or without security), convey, exchange, partition, and divide trust property; grant options for the sale or exchange of trust property for any purpose, whether the contract is to be performed or the option is to be exercised within or beyond the term of the trust; and lease trust property for any purpose, for terms within or extending beyond the expiration of the trust, regardless of whether the leased property is commercial or residential and regardless of the number of units leased.

(b) Engage in any transactions with the personal representative of the estate of the settlor that are in the best interest of any trusts created in this instrument.

(c) Manage, control, improve, and maintain all real and personal trust property.

(d) Subdivide or develop land; make or obtain the vacation of plats and adjust boundaries, or adjust differences in valuation on exchange or partition by giving or receiving consideration; and dedicate land or easements to public use with or without consideration.

(e) Make ordinary or extraordinary repairs or alterations in buildings or other trust property, demolish any improvements, raze existing party walls or buildings, and erect new party walls or buildings, as the trustee deems advisable.

(f) Employ and discharge agents and employees, including but not limited to attorneys, accountants, investment and other advisers, custodians of assets, property managers, real estate agents and brokers, and appraisers, to advise and assist the trustee in the management of any trusts created under this trust instrument, and compensate them from the trust property.

**CASTANA TRUST**

(g)   With respect to securities held in trust, exercise all the rights, powers, and privileges of an owner, including, but not limited to, the power to vote, give proxies, and pay assessments and other sums deemed by the trustee necessary for the protection of the trust property; participate in voting trusts, pooling agreements, foreclosures, reorganizations, consolidations, mergers, and liquidations, and, in connection therewith, deposit securities with and transfer title to any protective or other committee under such terms as the trustee deems advisable; exercise or sell stock subscription or conversion rights; and accept and retain as investments of the trust any securities or other property received through the exercise of any of the foregoing powers.

(h)   Hold securities or other trust property in the trustee's own name or in the name of a nominee, with or without disclosure of the trust, or in unregistered form, so that title may pass by delivery.

(i)   Deposit securities in a securities depository that is either licensed or exempt from licensing.

(j)   Borrow money for any trust purpose from any person or entity, including one acting as trustee hereunder, on such terms and conditions as the trustee deems advisable, and obligate the trust for repayment; encumber any trust property by mortgage, deed of trust, pledge, or otherwise, whether for terms within or extending beyond the term of the trust, as the trustee deems advisable, to secure repayment of any such loan; replace, renew, and extend any such loan or encumbrance; and pay loans or other obligations of the trust deemed advisable by the trustee.

(k)   Procure and carry, at the expense of the trust, insurance in such forms and in such

05 03 2017 1200_1046426_1375

amounts as the trustee deems advisable to protect the trust property against damage or loss, and to protect the trustee against liability with respect to third persons.

(l) Enforce any obligation owing to the trust, including any obligation secured by a deed of trust, mortgage, or pledge held as trust property, and purchase any property subject to a security instrument held as trust property at any sale under the instrument.

(m) Extend the time for payment of any note or other obligation held as an asset of, and owing to, the trust, including accrued or future interest, and extend the time for repayment beyond the term of the trust.

(n) Pay or contest any claim against the trust; release or prosecute any claim in favor of the trust; or, in lieu of payment, contest, release, or prosecution, adjust, compromise, or settle any such claim, in whole or in part, and with or without consideration.

(o) At trust expense, prosecute or defend actions, claims, or proceedings of whatever kind for the protection of the trust property and of the trustee in the performance of the trustee's duties, and employ and compensate attorneys, advisers, and other agents as the trustee deems advisable.

7.9. Power to Retain Trust Property. The trustee shall have the power to retain property received into the trust at its inception or later added to the trust, as long as the trustee considers that retention in the best interests of the trust or in furtherance of the goals of the settlor in creating the trust, as determined from this trust instrument, but subject to the standards of the prudent investor rule as set forth in the California *Uniform Prudent Investor Act*, as amended from time to time.

---

CASTANA TRUST

05 03 2017 1200_1046426_1376

7.10. <u>Trustee's Power to Invest Property.</u> Subject to the standards of the prudent investor rule as stated in the California Uniform Prudent Investor Act, as amended from time to time, the trustee shall have the power to invest and manage the trust assets as a prudent investor would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust.

7.11. <u>Power Over Unproductive Property.</u> The trustee shall have the power to retain or acquire unproductive or underproductive property.

7.12. <u>Power to Operate Business.</u> The trustee shall have the power to hold and operate any business or enterprise that is or becomes trust property, on such terms and for such a time as the trustee, in the trustee's discretion, deems advisable; to purchase, acquire, invest in, or otherwise participate in, any business or other enterprise on behalf of the trust; or to sell, dissolve, liquidate, or terminate any such business. The trustee shall also have the power to incorporate, reorganize, or otherwise change the form of a business or enterprise that is part of the trust, through merger or consolidation of two or more enterprises or otherwise, and to participate in that business or enterprise as a sole proprietor, as a general or limited partner, as a shareholder, or in any other capacity. Any operation, sale, purchase, acquisition, investment in, or dissolution or liquidation of a business interest, in good faith, shall be at the risk of the trust, and without liability on the part of the trustee for any resulting losses. The trustee shall also have the power to contribute capital or loan money to the business or enterprise on such terms and conditions as the trustee deems advisable.

7.13. <u>Power to Operate Farm or Ranch.</u> The trustee shall have the power to continue to hold, operate, sell, purchase, acquire, invest in, or liquidate any farming or ranch property, or any interest in farming or ranching property, whether organized as a sole proprietorship,

05 03 2017 1200_1046426_1377

general or limited partnership, corporation, or otherwise, on such terms and for such time as the trustee, in the trustee's discretion, deems advisable. Any such operation, sale, purchase, acquisition, investment, or liquidation, in good faith, shall be at the risk of the trust and without liability on the part of the trustee for any resulting losses. The trustee shall have all powers necessary or appropriate to carry out the management of such farming and ranching property. The trustee shall also have the power to incorporate any farming or ranching property, or any interest therein, and to hold the stock as a trust asset; to borrow money for any purpose related to the operation, or the acquisition or disposition, of any such farming or ranching interests; and to employ agents in the management and operation of that property. The net profits and losses from the farming and ranching operations conducted by the trust shall be computed in accordance with recognized methods of accounting for comparable activities. The net profits from these activities shall become trust income. The net losses from these activities shall not reduce other trust income for the fiscal or calendar year during which they occur, but shall be carried into subsequent fiscal or calendar years and reduce the net profits of the business for those years.

7.14. <u>Power to Combine Trust Assets.</u> Each trust created under this instrument shall constitute a separate trust and be administered accordingly; however, the assets of all of the trusts may be combined for bookkeeping purposes and held for the trust beneficiaries without physical division into separate trusts until time of distribution.

7.15 <u>Early Termination of Trusts.</u> The trustee shall have the power, in the trustee's discretion, to terminate any trust created under this trust instrument whenever the fair market value of the trust falls below twenty-five thousand dollars ($25,000), or becomes so small in relation to the costs of administration as to make continuing

05 03 2017 1200_1046426_1378

administration uneconomical. Continuing administration shall be uneconomical if the trustee determines that, with reference to the trust fee schedules then in effect for corporate fiduciaries in the area in which the trust is being administered, the trust would be subject to the minimum trust administration fees of those fiduciaries, regardless of the value of the trust. On termination, the trustee shall distribute the principal and any accrued or undistributed net income to the income beneficiaries in proportion to their shares of the income. If no fixed amount of income is payable to specific beneficiaries, the trustee shall distribute the principal and any accrued or undistributed net income in equal shares to those beneficiaries who would then be entitled to income payments from the trust.

7.16. <u>Division or Distribution in Cash or Kind.</u> In order to satisfy a pecuniary gift or to distribute or divide trust assets into shares or partial shares, the trustee may distribute or divide those assets in kind, or divide undivided interests in those assets, or sell all or any part of those assets and distribute or divide the property in cash, in kind, or partly in cash and partly in kind. Property distributed to satisfy a pecuniary gift under this instrument shall be valued at its fair market value at the time of distribution.

7.17. <u>Payments to Legally Incapacitated Persons.</u> If at any time any trust beneficiary is a minor, or it appears to the trustee that any trust beneficiary is incapacitated, incompetent, or for any other reason not able to receive payments or make intelligent or responsible use of the payments, then the trustee, in lieu of making direct payments to the trust beneficiary, may make payments to the beneficiary's conservator or guardian; to the beneficiary's custodian under the Uniform Gifts to Minors Act or Uniform Transfers to Minors Act of any state; to one or more suitable persons as the trustee deems proper, such as a relative of or a person residing with the beneficiary, to be used for the beneficiary's benefit; to any other person, firm, or agency for services rendered or to be rendered for

CASTANA TRUST

05.03 2017 1200_1046426_1379

the beneficiary's assistance or benefit; or to accounts in the beneficiary's name with financial institutions. The receipt of payments by any of the foregoing shall constitute a sufficient acquittance of the trustee for all purposes.

7.18. Trustee's Liability. No trustee shall be liable to any interested party for acts or omissions of that trustee, except those resulting from that trustee's willful misconduct or gross negligence. This standard shall also apply regarding a trustee's liability for the acts or affected by that event.

7.19. Written Notice to Trustee. Until the trustee receives written notice of any death other event on which the right to payments from any trust may depend, the trustee shall incur no liability for disbursements made in good faith to persons whose interests may have been omissions of any co-trustee, predecessor trustee, or agent employed by the trustee.

7.20. Duty to Account. The trustee shall render accounts at least annually, at the termination of a trust, and on a change of trustees, to the persons and in the manner required by law.

## ARTICLE EIGHT

## CONCLUDING PROVISIONS

8.1. Perpetuities Savings Clause. Notwithstanding any other provision of this instrument, every trust created by this instrument shall terminate no later than twenty-one (21) years after the death of the last survivor of the Settlor's issue who are alive at the creation of the trust. For purposes of this perpetuities savings clause, a trust shall be deemed to have been created on the date the trust becomes irrevocable or the date of the death of the settlor, whichever occurs first. If a trust is terminated under this section, the trustee shall

CASTANA TRUST

distribute all of the principal and undistributed income of the trust to the income beneficiaries of the trust in the proportion in which they are entitled (or eligible, in the case of discretionary payments) to receive income immediately before the termination. If that proportion is not fixed by the terms of the trust, the trustee shall distribute all of the trust property to the persons then entitled or eligible to receive income from the trust outright in a manner that, in the trustee's opinion, will give effect to the intent of the settlor in creating the trust. The trustee's decision is to be final and incontestable by anyone.

8.2. <u>Simultaneous Death.</u> If any beneficiary under this instrument and the settlor die under circumstances in which the order of their deaths cannot be established by clear and convincing evidence, the settlor shall be deemed to have survived the beneficiary, and the provisions of this instrument shall be construed accordingly.

8.3. <u>Survivorship Requirement.</u> For the purposes of this instrument, a beneficiary shall be deemed not to have survived the settlor if that beneficiary dies within six months after the settlor's death.

8.4. <u>No-Contest Clause.</u> If any beneficiary under this instrument, singularly or in combination with any other person or persons, directly or indirectly contests this instrument, any amendment to this instrument, or the will of the settlor in whole or in part, or opposes, objects to, or seeks to invalidate any of the provisions of this instrument or the will of the settlor, or seeks to succeed to any part of the estate of the settlor other than in the manner specified in this instrument or in the will of the settlor, then the right of that person to take any interest given to him or her by this instrument or any amendment to this instrument shall be void, and any gift or other interest in the trust property to which the beneficiary would otherwise have been entitled shall pass as if he or she had predeceased the settlor without issue. Settlor specifically exempts petitions under

CASTANA TRUST

'05 03 2017 1200_1046426_1381

California *Probate Code* §s 9860, 17200 or 17200.1 from the effect of this clause.

8.5. Definitions of Death Taxes, Debts, and Expenses. As used in this instrument, the following definitions apply:

(a)  The term "death taxes" shall mean all inheritance, estate, succession, and other similar taxes that are payable by any person on account of that person's interest in the estate of the settlor or by reason of the settlor's death, including penalties and interest, but excluding the following: (i) any additional tax that may be assessed under Internal Revenue Code Section 2032A; and (ii) any federal or state tax imposed on any generation-skipping transfer, as that term is defined in the federal tax laws, unless that generation-skipping transfer tax is payable directly out of the assets of a trust created by this instrument.

(b)  The term "debts and expenses" shall include the following: (i) all costs, expenses of litigation, counsel fees, or other charges that the trustee incurs in connection with the determination of the amount of the death taxes, interest, or penalties referred to in subsection (a) of this section; and (ii) legally enforceable debts, funeral expenses, expenses of last illness, and administration and property expenses.

8.6. Definition of Incapacity. As used in this instrument, "incapacity" or "incapacitated" means a person operating under a legal disability such as a duly established conservatorship, or a person who is unable to do either of the following:

(a)  Provide properly for that person's own needs for physical health, food, clothing, or shelter; or

(b)  Manage substantially that person's own financial resources, or resist fraud or undue

Page 19

CASTANA TRUST

05 03 2017 1200_1046426_1382

influence.

8.7. Definition of Education. As used in this instrument, the term "education" refers to the following:

(a)  Education at public or private elementary, junior high, middle, or high schools, including boarding schools;

(b)  Undergraduate, graduate, and postgraduate study in any field, whether or not of a professional character, in colleges, universities, or other institutions of higher learning;

(c)  Specialized formal or informal training in music, the stage, the handicrafts, or the arts, whether by private instruction or otherwise; and

(d)  Formal or informal vocational or technical training, whether through programs or institutions devoted solely to vocational or technical training, or otherwise.

8.8. Captions. The captions appearing in this instrument are for convenience of reference only, and shall be disregarded in determining the meaning and effect of the provisions of this instrument.

8.9. Severability Clause. If any provision of this instrument is invalid, that provision shall be disregarded, and the remainder of this instrument shall be construed as if the invalid provision had not been included.

8.10. California Law to Apply. All questions concerning the validity, interpretation, and administration of this instrument, including any trusts created under this instrument, shall be governed by the laws of the State of California, regardless of the domicile of any trustee or beneficiary.

8.11. Distribution to Issue. If a division of property is to be made under this instrument among the issue of an individual, who is referred to in this section as the Designated Ancestor,

CASTANA TRUST

05 03 2017 1200_1046426_1383

that division shall be made in the manner set forth in California *Probate Code* § 246. Accordingly, that division shall be made at the generation of the Designated Ancestor's children, regardless of whether any of those children survive the Designated Ancestor. The property shall be divided into as many equal shares as there are children of the Designated Ancestor who survive the Designated Ancestor (if any) plus deceased children of the Designated Ancestor who leave issue who survive the Designated Ancestor. Each child of the Designated Ancestor who survives the Designated Ancestor shall receive one such equal share. The equal share of each deceased child of the Designated Ancestor who leaves issue who survive the Designated Ancestor shall in turn be divided among that deceased child's issue who survive the designated ancestor in the manner described in this section as if the deceased child were the Designated Ancestor as to that share.

8.12. <u>Gifts to Heirs.</u> For any gift to "heirs" of the settlor that is made in this instrument, those heirs shall be determined as if the settlor had died intestate at the time for distribution prescribed in this instrument, and the identity and shares of those heirs shall be determined according to the California laws of succession that concern separate property not acquired from a previously deceased spouse and that are in effect at the time the settlor is deemed to have died.

## ARTICLE NINE

### SIGNATURE AND EXECUTION

9.1. <u>Execution.</u> I certify that I have read the foregoing trust agreement and that it correctly states the terms and conditions under which the trust estate is to be held, administered, and

05 03 2017 1200 1046426_1384

distributed. The settlor approves this trust agreement in all particulars. The trustee approves and accepts the trusts provided for in this trust agreement.

Executed on March 4, 2009 at Gold River, California.

SETTLOR

Ardith Louise Ferris, Settlor

TRUSTEE

Ardith Louise Ferris, Trustee

05 03 2017 1200_1046426_1385

## California All-Purpose Acknowledgment

State of California    )

                ) SS

County of Calaveras )

On March 4, 2009, before me, Jayleyne Goltz, a notary public in and for the State of California, personally appeared Ardith Louise Ferris, personally who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public

J. JAYLEYNE GOLTZ
COMM. # 1831925
NOTARY PUBLIC - CALIFORNIA
CALAVERAS COUNTY
COMM. EXPIRES JAN. 18, 2013

# EXHIBIT 1

## DISTRIBUTION OF SPECIFIC TRUST ASSETS OF
## CASTANA TRUST

Pursuant to paragraph 5.3 of the Total Trust, initially established on March 4, 2009, on the settlor's death, the trustee is directed to distribute the following specific assets:

None at this time.

I certify that this "Exhibit 1", distributing specific assets, shall be effective immediately on execution by me and that any former "Exhibit 1" distributing specific assets are hereby expressly revoked.

Executed on March 4, 2009 at Gold River, California.

SETTLOR

_____

Ardith Louise Ferris, Settlor

TRUSTEE

_____

Ardith Louise Ferris, Trustee

---

Page 1

DISTRIBUTION OF SPECIFIC TRUST ASSETS

EXHIBIT B



FILED/ENDORSED

APR - 6 2017

By _____ Deputy Clerk

1  David P. Zinnel
   Carmichael, CA 95608
2  916.944.3830

3
   David P. Zinnel, IN PRO PER
4

5        SUPERIOR COURT OF THE STATE OF CALIFORNIA

6            FOR THE COUNTY OF SACRAMENTO

7  In re Castana Trust,              No. 34-2016-00200990
   Established March 4, 2009
8                                     **ORDER REMOVING TRUSTEE**

9

10

11

12  The petition of David P. Zinnel, as a beneficiary of Castana Trust, for removal of Steve K. Zinnel as

13  trustee, for appointment of successor trustee. After hearing the petition and hearing the evidence, the

14  court finds that all notices of hearing have been given as required by law, that all allegations of the

15  petition are true, that good cause, namely that Steve K. Zinnel is unfit to administer the trust, exists

16  for removal of Steve K. Zinnel.

17

18  **IT IS ORDERED THAT**

19    1. Steve K. Zinnel, trustee of the Castana Trust, is removed.

20    2. David P. Zinnel is appointed as successor trustee of the Castana Trust to serve without bond.

21
      3. Steve K. Zinnel is ordered to turn over all assets and books and records of the Castana Trust
22
         to David P. Zinnel, as successor trustee.
23

24

25  Date: 4/6/17

26                                              STEVEN M. GEVERCER
                                         Judge / Commissioner of the Superior Court of
27
                                         California, County of Sacramento
28

# EXHIBIT C

STATE OF CALIFORNIA
CERTIFICATION OF VITAL RECORD

# SACRAMENTO COUNTY
SACRAMENTO, CALIFORNIA

CERTIFICATE OF DEATH

STATE FILE NUMBER: 3052022240077

LOCAL REGISTRATION NUMBER: 3202234013275

1. NAME OF DECEDENT—FIRST (Given): **DAVID**
2. MIDDLE: **PAUL**
3. LAST (Family): **ZINNEL**

4. DATE OF BIRTH: **9/14/2022**  5. AGE: 52  6. SEX: M

7. DATE OF DEATH: **10/14/2022**  8. HOUR: **2015**

BIRTH STATE/FOREIGN COUNTRY: TX

11. MARITAL STATUS: MARRIED

12. DECEDENT'S RACE: CAUCASIAN

EDUCATION: SOME COLLEGE

17. USUAL OCCUPATION: **PROJECT MANAGER**  18. KIND OF BUSINESS: **ELECTRICAL**

RESIDENCE — STREET: **6939 LISA MARIE WAY**

22. CITY: **CARMICHAEL**  23. COUNTY: **SACRAMENTO**  24. ZIP CODE: **95608**  YEARS IN COUNTY: 22  STATE: **CA**

INFORMANT'S NAME: **JENNIFER LYNN ZINNEL, SPOUSE**  RELATIONSHIP/ADDRESS: **6939 LISA MARIE WAY, CARMICHAEL CA 95608**

FATHER/PARENT — FIRST: **JENNIFER**  MIDDLE: **LYNN**  LAST: **HUNTER**

MOTHER/PARENT — FIRST: **LESTER**  MIDDLE: **KEITH**  LAST: **ZINNEL**  BIRTH STATE: IA

— FIRST: **ARDITH**  MIDDLE: **LOUISE**  LAST: **FERRIS**  IA

DISPOSITION DATE: **10/28/2022**  PLACE OF FINAL DISPOSITION: **RES: JENNIFER ZINNEL, 6939 LISA MARIE WAY, CARMICHAEL CA 95608**

TYPE OF DISPOSITION(S): **CREMATE/RESIDENCE**  SIGNATURE OF EMBALMER: **F. LYNTA HARRIS**  LICENSE: **EMB8876**

NAME OF FUNERAL ESTABLISHMENT: **LOWEST COST CREMATION AND BURIAL**  LICENSE: FD2056  SIGNATURE OF LOCAL REGISTRAR: **OLIVIA KASIRYE MD**  DATE: **10/26/2022**

PLACE OF DEATH: **ROADWAY HIGHWAY**

COUNTY: **SACRAMENTO**  FACILITY ADDRESS OR LOCATION WHERE FOUND: **AUBURN BLVD AND WALNUT DRIVE**  CITY: **CITRUS HEIGHTS**

107. CAUSE OF DEATH — IMMEDIATE CAUSE: **MULTIPLE TRAUMATIC INJURIES**

SECS: 2022-06060

DUE TO:

OTHER SIGNIFICANT CONDITIONS: **NONE**

WAS OPERATION PERFORMED: **NO**

INJURY DATE: **10/14/2022**  HOUR: 2008

PLACE OF INJURY: **OTHER: ROADWAY/HIGHWAY**

DESCRIBE HOW INJURY OCCURRED: **THE DECEDENT WAS A HELMETED MOTORCYCLIST THAT WAS STRUCK BY A SUV**

LOCATION OF INJURY: **AUBURN BLVD AND WALNUT DRIVE, CITRUS HEIGHTS, CA 95610**

SIGNATURE OF CORONER / DEPUTY CORONER: **ALLYSON ROGERS**  DATE: **10/18/2022**  TYPE NAME, TITLE: **ALLYSON ROGERS, DEP CORONER**

STATE REGISTRAR

CERTIFIED COPY OF VITAL RECORD
STATE OF CALIFORNIA, COUNTY OF SACRAMENTO

This is a true and exact reproduction of the document officially registered and placed on file in the office of the Sacramento County Clerk/Recorder.

DATE ISSUED: FEB 2 2 2023


DONNA ALLRED, COUNTY CLERK/RECORDER
SACRAMENTO COUNTY, CALIFORNIA

*002120418*

This copy is not valid unless prepared on an engraved border displaying the date, seal and signature of the County Clerk/Recorder.

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE



1 | K. Greg Peterson, Esq. (SBN: 118287)
2 | K. GREG PETERSON, A PROFESSIONAL LAW CORPORATION
   | 455 Capitol Mall, Suite 325
3 | Sacramento, California 95814
   | Telephone: (916) 443-3010
4 | Facsimile: (916) 492-2680
   | Email: greg@kgregpeterson.com
5 |
6 | Attorney for Petitioner, JENNIFER ZINNEL
7 |
8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA
9 | COUNTY OF SACRAMENTO

| | |
|---|---|
| | Case No.: 34-2016-00200990 |
| IN THE MATTER OF: | STIPULATION RE: APPOINTMENT OF SUCCESSOR TRUSTEE OF THE CASTANA TRUST DATED MARCH 4, 2009 |
| The Castana Trust, dated March 4, 2009 | |
| | Date: _____ 8-30 _____, 2023 |
| | Time: 9:00am |
| | Dept.: 129 |

I, STEVE K. ZINNEL, am the son of Ardith Louise Ferris, and a beneficiary of THE CASTANA TRUST DATED MARCH 4, 2009.

I herewith stipulate the appointment of MICHAEL BRUMBAUGH as Successor Trustee of the Castana Trust, dated March 4, 2009.

**IT IS SO STIPULATED**.

Dated: March 18, 2023

By: _____
       Steve K. Zinnel



K.GREG PETERSON
A PROFESSIONAL LAW CORPORATION

-1-
STIPULATION RE: APPOINTMENT OF SUCCESSOR TRUSTEE

**EXHIBIT 7**